Exhibit C

1  BUCHALTER NEMER
   A Professional Corporation
2  JAMES R. ROSE (SBN: 109726)
   KATHARINE H. FALACE (SBN: 222744)
3  1500 Railroad Avenue
   St. Helena, CA 94574
4  Tel: (707) 967-9656
   Fax: (707) 963-0771
5  Email: jrose@buchalter.com

6  Attorneys for Petitioner
   BRYANT FAMILY VINEYARD
7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF NAPA

10
   BRYANT FAMILY VINEYARD,                 CASE NO.
11
                Petitioner,                NOTICE OF BRYANT FAMILY
12                                          VINEYARD'S PETITION TO VACATE
        v.                                  ARBITRATION AWARD
13
   UNITED PARCEL SERVICE, INC.,
14                                          Date:      January 27, 2016
                Respondent.                 Time:      8:30 a.m.
15                                          Dept.:
                                            Judge:
16

17

18
       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
19
           PLEASE TAKE NOTICE THAT the Petition to Vacate Arbitration Award served and
20
   filed herewith by Petitioner BRYANT FAMILY VINEYARD, has been set for hearing on
21
   January 27, 2016, at 8:30 a.m., in Dept. _____ of the above-entitled Court, located at 1111
22
   Third Street, Napa, California.
23

24 ///

25 ///

26 ///

27 ///

28 ///

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

                                    1

1  DATED: December _____, 2015

2

3                                          BUCHALTER NEMER
                                           A Professional Corporation
4

5                                          By: _____
                                                   JAMES R. ROSE
6                                                Attorneys for Petitioner
                                                 BRYANT FAMILY VINEYARD
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A Professional Corporation
JAMES R. ROSE (SBN: 109726)
KATHARINE H. FALACE (SBN: 222744)
1500 Railroad Avenue
St. Helena, CA  94574
Tel: (707) 967-9656
Fax: (707) 963-0771
Email:  jrose@buchalter.com

Attorneys for Petitioner
BRYANT FAMILY VINEYARD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

| | |
|---|---|
| BRYANT FAMILY VINEYARD, | CASE NO. |
|         Petitioner, | PETITION TO VACATE ARBITRATION AWARD |
| v. | |
| UNITED PARCEL SERVICE, INC., | Date:     January 27, 2016 |
|         Respondent. | Time:     8:30 a.m.<br>Dept.:<br>Judge: |

I.

**INTRODUCTION**

Section 1285 of the Code of Civil Procedure allows any party to apply to vacate an arbitration award, pursuant to the grounds set forth in section 1286.2.  That section states that an arbitration award shall be vacated if it is determined that the rights of any party were substantially prejudiced by the conduct of an arbitrator.

The Arbitrator's Award, issued on the heels of a heated and highly contentious mediation in another matter involving James Rose, as counsel on the one hand, and the Arbitrator, as counsel on the other, certainly illustrates such grounds exist.  Indeed, the conduct is so pervasive;

the Award should be vacated in its entirety.  Additionally, the Award must be vacated on the grounds that the Arbitrator exceeded his power.

## II.

## PROCEDURAL STATEMENT

This dispute was arbitrated on July 21, 2015, by Richard Collier at Saint Helena, California.  On August 28, 2015, the Arbitrator issued an Award of $0 to Bryant Family Vineyard and ordered the arbitration fees to be borne equally.  (Decl. J. Rose, Exh. E).

On the same day that the Award was signed, James Rose and Richard Collier completed a "knock down, drag out" mediation in which they were opposing counsel.  The mediation did not conclude until 8:15 p.m. at night.  As such, it seems highly unlikely that the Award would have been entered subsequent to the mediation.

Although the Arbitration Award was dated August 28, 2015, it was not delivered to Petitioner until Monday, August 31, 2015, within two hours of Petitioner's counsel receiving a scathing letter from the Arbitrator regarding the conduct of the prior Friday's mediation.  (Decl. J. Rose, Exh. D).

During the disclosure process, the Arbitrator disclosed that he would be representing an adverse party in an unrelated matter against a party represented by Mr. Rose.  The agreement was that this conflict would be waived so long as the arbitration and subsequent award were completed prior to the resolution of the other matter and that the Arbitrator could maintain neutrality through the process.  (Decl. J. Rose, Exh. A).  While the arbitration concluded prior to the mediation in the unrelated matter, the Award was not issued until the day of the mediation, or in all likelihood, the Monday following the mediation's conclusion.  Such timing is all to Bryant Family Vineyard's extreme prejudice and must be vacated.

In addition to the timing of the arbitration award juxtaposed with the highly contentious mediation, at the close of the arbitration hearing, several written requests for closing argument were made by Petitioner's counsel. (Decl. J. Rose, Exh. C). The importance of closing argument was that during the evidentiary proceedings, UPS's driver was caught materially contradicting his statements to the Napa County Sheriff's Department regarding the occurrences at the winery. It was imperative that the closing argument go forward so that these material evidentiary developments that occurred during the hearing could be pointed out to the Arbitrator. After repeated written requests for closing argument, the Arbitrator declined to allow any closing argument to proceed, much to the disadvantage and prejudice of Petitioner. (Decl. J. Rose, Exh. C).

## III.

## STATEMENT OF FACTS

This matter involves the theft of 51 cases of wine from BFV. UPS does not dispute that 51 cases of wine were never delivered. The disappearance led to involvement with the FBI and eventually an investigation by the Napa County Sheriff's Department. Following the conclusion of these investigations, this action ensued.

BFV is a "small winery with only a few employees and specializes in high-end wines. The winery only makes five to six large deliveries per year to customers and the shipping dates are known to customers. Because of the small amount of shipping dates, the employees have good recollections of product shipped from the business." (Incident/Investigation Report; Napa Sheriff's Department; Case No. NSD13-004737; 11/19/2013 (hereinafter "Sheriff's Report"), Decl. J. Rose, Exh. B).

"On November 4, 2013, UPS arrived for a pre-scheduled large shipping pick up." (Sheriff's Report, Decl. J. Rose, Exh. B). The pick-up consisted of nine pallets of wine

containing cases of wine in various increments: 12 bottle cases, 6 bottle cases and small orders.

(Incident/Investigation Report; Napa Sheriff's Department; Case No. NSD13-004737;

02/04/2014; Supplement Notes (hereinafter "Supplement Notes Sheriff's Report") Decl. J. Rose,

Exh. B). Several days after the shipment left, customers who did not receive their expected wine

shipment called BFV to inquire as to the status of same. (Sheriff's Report). BFV was able to

determine that the 51 packages were all loaded on pallet number 3 and all were 6 bottle cases.

(Sheriff's Report). Pallet number 3 was loaded in the last row, near the rear of the trailer.

(Sheriff's Report).

There is no dispute between BFV and UPS that nine pallets containing cases of wine were

picked up from BFV on November 4, 2013, and that 51 parcels did not reach their intended

destination. The value of the 51 cases is $130,050.

## IV.

## DISCUSSION

California Code of Civil Procedure section 1286.2 provides the exclusive method for

vacating an award on contractual binding arbitration. Section 1286.2 (5),(6) provides in relevant

part as follows:

> (5)   "If the rights of the party were substantially prejudiced by the refusal of the
>
>       arbitrator ... to hear evidence material to the controversy or by other conduct of
>
>       the arbitrator contrary to the provisions of his title."
>
> (6)   "The arbitrator making the award ... failed to disclose within the time required for
>
>       disclosure a ground for disqualification of which the arbitrator was then aware ..."

Therefore, Bryant Family Vineyard requests a new arbitration hearing.

### A. The Arbitrator Should Have Recused Himself from the Proceedings When His Ability to Remain Neutral Became Compromised.

Under California law, an arbitrator's obligation to disclose personal background facts is

1  based upon a low threshold standard.  An arbitrator's failure to make required disclosures

2  constitutes a form of "corruption," providing a ground for vacatur of an arbitration award.

3  *Michael v. Aetna Life & Casualty Insur. Co.* (2001) 88 Cal.App.4th 925.   The disclosure

4  requirement does not require actual bias.  Instead, the test is where a reasonable person would

5  entertain doubts whether the arbitrator was impartial.  *Ceriale v. AMCO Insurance Co.* (1996) 48

6  Cal.App.4th 500.

7

8        Here, a reasonable person would certainly call into question the Arbitrator's ability to be

9  fair and impartial.

10        The Arbitrator should have recused himself when it became apparent as a result of the

11  highly contentious mediation that resulted in a very unfavorable result to the Arbitrator's client.

12  As the United States Supreme Court ruled in *Commonwealth Corp. v. Casualty Co.* (1968) 393

13  U.S. 145, 159, "we should, if anything be even more scrupulous to safeguard the impartiality of

14  arbitrators than judges, since the former have completely full rein to decide the law as well as the

15  facts and are not subject to appellate review."

16

17        The ramifications of an arbitrator's wide discretion is amply demonstrated in the instant

18  case, where Bryant Family Vineyard was denied all relief, despite having proven that California

19  state law applied.

20

21        At a jury trial, attorneys have the opportunity to voir dire potential jurors and/or can rely

22  upon the Code of Judicial Conduct to assure that judges make frank and full disclosures.

23  Arbitrators, by contrast, are impelled to disclosure only upon penalty that their awards would be

24  vacated.  Here, it is clear that the Award should be vacated.  The only reason for not awarded

25  BFV damages was to punish BFV's counsel.  After determining as a matter of law that California

26  law applied and finding that the cases were missing, a damage award was compulsory.  The

27  Arbitrator's failure to render same was simply a result of bias.

28

**B. The Award Should Be Vacated Because the Arbitrator Exceeded His Powers.**

BFV also submits that the Award should be vacated by the Arbitrator here exceeded his powers.

Despite limited judicial review of arbitration awards, a court may vacate or correct an award under certain circumstances. In one instance, the award may be vacated where "[t]he rights of the party were substantially prejudiced misconduct of a neutral arbitrator." CCP 1286.2(a)(3). An arbitrator may not base an award on extrinsic evidence not presented to the arbitrator. *Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, 811. An arbitrator may not decide issues not covered by the arbitration agreement, and may not grant relief for breach of contract that bears no rational relationship to the contract's terms. *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367; *Delta Lines, Inc. v. International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966. Arbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal. *Hoso Foods, Inc. v. Columbus Club Inc.* (2010) 190 Cal.App.4th 881, 889.

Because arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process. *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1165. Except where "the parties 'have conferred upon the arbiter the unusual power of determining his own jurisdiction' the courts retain the ultimate authority to overturn awards as beyond the arbitrator's powers, whether for an unauthorized remedy or decision on an unsubmitted issue." *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367.

By failing to apply California law to Bryant Family Vineyard's negligence claim, the Award violated well-defined public policy. UPS contend at the hearing that "UPS never received the Wine; thus, UPS cannot be held liable for the loss of the Wine." To support this claim, UPS

cites to no statute or case law, but simply claimed it was "axiomatic."   UPS's claims, however, were contradicted by its own statements to the Napa County Sheriff's Department.  To be sure, while UPS maintained that "On November 4, 2013, UPS picked up nine pallets of wine; the 51 cases of wine were not among the nine pallets of wine picked up by UPS," the Shipper Manifest Records, by Mr. Melvin's own admission, contained the 51 packages.

Further, during the hearing, Robert Sturge, UPS's truck driver that picked-up the wine in question, was caught directly contradicting his prior sworn testimony to the Napa County Sheriff's Department.  This contradiction resulted in him admitting that the missing pallet, that he had previously claimed was picked up from BFV, was not in fact loaded onto the UPS truck.  Mr. Sturge's attempt to cover-up the fact the pallet was received by him at BFV was a tacit admission that the pallet had been loaded on the UPS truck and went missing after he left BFV.

Moreover, the admission proved BFV's claim for negligence and breach of contract as UPS admitted that the pallet was loaded onto its driver's truck in its prior statements to the Napa County Sheriff's Department.  For the Arbitrator to find that BFV did not prove its claim directly ignores this admission.  Further, such a conclusion by the Arbitrator illustrates a blatant abuse of power and warrants the Court to vacate the Award.

///

///

///

///

///

///

///

///

## V.

## CONCLUSION

For all of these reasons, the Award should be vacated in full, and a new arbitration should be ordered.

DATED: December ___, 2015

BUCHALTER NEMER
A Professional Corporation

By: _____
JAMES R. ROSE
Attorneys for Petitioner
BRYANT FAMILY VINEYARD

Mozilla

BUCHALTER NEMER
A Professional Corporation
JAMES R. ROSE (SBN: 109726)
KATHARINE H. FALACE (SBN: 222744)
1500 Railroad Avenue
St. Helena, CA 94574
Tel: (707) 967-9656
Fax: (707) 963-0771
Email: jrose@buchalter.com

Attorneys for Petitioner
BRYANT FAMILY VINEYARD

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF NAPA

| | |
|---|---|
| **BRYANT FAMILY VINEYARD,**<br><br>    **Petitioner,**<br><br>v.<br><br>**UNITED PARCEL SERVICE, INC.,**<br><br>    **Respondent.** | CASE NO.<br><br>**DECLARATION OF JAMES R. ROSE IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD**<br><br>**Date:**     **January 27, 2016**<br>**Time:**     **8:30 a.m.**<br>**Dept.:**<br>**Judge:** |

I, JAMES R. ROSE, declare as follows:

1.     I am an attorney licensed to practice before all courts in the State of California, and am the attorney of record for BRYANT FAMILY VINEYARD ("Petitioner") in this action.

2.     I am a partner at Buchalter Nemer.  Except where I indicate otherwise, I have first-hand knowledge of the contents of this Declaration, or of the records of Buchalter Nemer containing the information set out herein, except as to those matters stated herein on my information and belief, and as to those matters, I believe my information and belief to be true and correct.  If called as a witness I could and would be competent to testify thereto if called as a witness.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

1

**DECLARATION OF JAMES R. ROSE**

3.     On or about July 29, 2015, on behalf of Petitioner, I submitted a Demand for Arbitration with the American Arbitration Association.

4.     At the time Richard Collier was selected as the neutral arbitrator for this matter, I had been engaged in a case in Marin County entitled *The Estate of John Francis George III*, Case No. PR 1403357.  The case involved a dispute between the three daughters of the deceased, who I represented, in claims adverse to Linda McKenzie, the decedent's widow and stepmother to the three daughters.

4.     I did not know at the time I selected Richard Collier that he was the attorney representing Linda McKenzie.

5.     During the course of the pre-arbitration hearings I became aware that Richard Collier was in fact representing Linda McKenzie.

6.     Arbitrator Richard Collier assured me that he could remain neutral and impartial and wished to remain as the arbitrator.  I agreed to allow Richard Collier to remain as the neutral arbitrator provided he could maintain his neutrality, which goes without saying.

7.     In response to my communication in this regard, the Arbitrator assured me in writing that he could maintain his neutrality, and based upon such representations, I agreed to allow him to remain as arbitrator, provided he could in fact maintain neutrality.  (True and correct copies of the email exchange between my office and Mr. Collier regarding this matter are attached hereto and incorporated herein by reference as **Exhibit A**.)

8.     The arbitration hearing which was scheduled on July 21, 2015, approximately 38 days in advance of the scheduled mediation in the Marin County case.

9.     During the arbitration, one of UPS's key employees, Robert Sturge, the truck driver who picked up the wine at Petitioner's winery, testified that he was told at the time that he picked up the wine by Petitioner's employees that there were in fact 10 pallets of wine, but due to

the fact that there was not enough room on the truck, he would have to hold back one pallet, and as a result he only loaded 9 pallets.

10.     Upon hearing this testimony, and in reviewing the Sheriff's report on the matter which was submitted into evidence in the arbitration, I realized that the testimony directly contradicted his statements to the Sheriff regarding the assertion that there were in fact 10 pallets to be picked up.  (A true and correct copy of the Sheriff's Report is attached hereto and incorporated herein by reference as **Exhibit B**.)

11.     At the close of the arbitration, I requested oral argument.  The Arbitrator indicated it could be either oral or in writing.  The Arbitrator then took all evidence to review and later indicated that he was prepared to render a decision.

12.     Following the arbitration, I notified the Arbitrator in writing of my request for closing argument.  In response, the Arbitrator refused to allow closing argument on the matter.  Closing argument was critical in that I needed to point out this new evidence that came up during the arbitration.  Without closing argument, I was not able to point out these inconsistencies between the sworn testimony of the truck driver at the arbitration compared to the truck driver's statements to the Napa County Sheriff's Department.

13.     I requested three times to have the opportunity to go forward with oral argument.  For no good cause, the Arbitrator refused and continued to refuse closing argument.  (True and correct copies of the email chain between the undersigned and the arbitrator is attached hereto and incorporated herein by reference as **Exhibit C**.)

14.     On August 28, 2105, I attended a mediation in the Marin County action where the Arbitrator represented the opposing side.  The mediation commenced at 9:30 a.m. at JAMS in San Francisco.  The arbitration lasted until 8:15 p.m. that evening without a break.  At the close of the mediation, a mediation agreement was entered into and signed by all parties.

15.     During the process of the mediation the relationship between the Arbitrator and the Arbitrator's client, and the undersigned and his clients became extremely contentious and volatile, resulting in the mediation agreement that the Arbitrator's client was expressly dissatisfied in.

16.     The following Monday, August 31, 2015, I received an email from the Arbitrator regarding my clients' conduct at the mediation and a number of other matters.  I received this correspondence at 12:50 p.m. on August 31, 2015.  (A true and correct copy of the email is attached hereto and incorporated herein by reference as **Exhibit D**.)

17.     Less than two hours later, I received the Arbitrator's Award which was dated October 28, 2015.  However, I seriously question that it was actually delivered to AAA on that date since AAA submitted the Arbitrator's Award at 2:36 p.m. on August 31, 2015.  (A true and correct copy of the transmittal email, letter and Arbitrator's Award are attached hereto and incorporated herein by reference as **Exhibit E**.)

18.     It is apparent that the Arbitrator's Award was prepared subsequent to the mediation at a time when the Arbitrator could no longer in good faith maintain his neutrality.

19.     For the foregoing reasons, it is respectfully requested that the Arbitrator's Award be vacated so that this matter may be arbitrated before a new neutral arbitrator.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___ day of December, 2015 at St. Helena, California.

_____
JAMES R. ROSE

# EXHIBIT A

**James Rose**

| | |
|---|---|
| **From:** | Richard Collier <RCollier@cwclaw.com> |
| **Sent:** | Friday, April 10, 2015 8:23 AM |
| **To:** | jamesroselaw@sbcglobal.net; BJO@diepenbrockcotter.com |
| **Cc:** | AAA Terri Martinez |
| **Subject:** | Case No. 01-14-0001-1154 |

With apologies for the late notice, I need to postpone the hearing set for 10:30 this morning.  There are two  reasons.  First, I have been recovering from surgery on my spine, and while the recovery is going well, I am on a high antibiotic regime that every now and again gets out of whack.  That happened late yesterday.  I won't get into details, but I cannot get into my office today (I have read everything, but I don't have it here) and I am not sure I have the stamina for a hearing on such an important motion.

Second, I have an additional disclosure to make, and I want to give the attorneys and the AAA time to consider it.  After my appointment, and after the initial briefing, I learned that Mr. Rose had been associated in as counsel in a disputed estate proceeding pending in Marin County in which I and my firm represent a party.  We represent the surviving spouse, Linda McKenzie George, of the decedent, Frank George.  Mr. Rose is now co-counsel for Mr. George's three adult children from a prior marriage.  While the parties are attempting to work cooperatively, it is difficult at this time to predict how things will develop.  While I am confident in my ability to keep the matters separate, I think whether I continue to serve as the arbitrator needs your consideration.

Let me suggest that counsel inform Ms. Martinez by 5:00 p.m. Tuesday April 14th whether there is an objection to my continuing.  If there is, the AAA will address it.  If there isn't, I will contact counsel through Ms. Martinez to reschedule the hearing.

Thank you.

1

**EXHIBIT B**

## Incident/Investigation Report

| Agency: | | |
|---|---|---|
| Napa Sheriff's Department | Case Number: NSD13-004737 | Date: 08/20/2014 08:56:22 |

### Incident Information

| Date/Time Reported | Date/Time Occurred | Date/Time Found | Officer |
|---|---|---|---|
| 11/19/2013 08:58 | 11/19/2013 08:58 | 11/19/2013 08:58 | (250204) CARLISLE, CHRIS |
| **Incident Location** | | | **Supervising Officer** |
| 1567 SAGE CANYON RD, ST_HELENA, CA | | | (250054) BROBST, BRETT |

### Charges

| 1 | Charge Type | Description | | | Statute | UCR | ☐ Att |
|---|---|---|---|---|---|---|---|
| | State | FEL - GRAND THEFT - ALL OTHER | | | 487 PC | 23H | ☒ Com |
| **Alcohol, Drugs or Computers Used** | | **Location Type** | **Premises Entered** | **Forced Entry** | **Weapons** | | |
| ☐ Alcohol  ☐ Drugs  ☐ Computers | | COMMERCIAL/OFFICE | | ☐ Yes  ☒ No | I. | | |

### Victims

| Seq. # | Type | Injuries | | Residency Status | Ethnicity |
|---|---|---|---|---|---|
| 1 | BUSINESS | None | | | |

| Name(Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|
| BRYANT FAMILY WINERY | | | | |

| Address | Home Phone |
|---|---|
| 1567 SAGE CANYON RD, ST_HELENA, CA 94573 | |

| Employer Name/Address | Business Phone |
|---|---|
| / | |

| Victim of Crimes | Drivers License | Cell Phone |
|---|---|---|
| 1 | - | |

### Other Persons Involved

| Name Code | Seq. # | Name (Last, First, M) | Race | Sex | DOB |
|---|---|---|---|---|---|
| Reporting Party | 1 | ALEXANDER, TODD | W | M | |

| Address | Drivers License | Home Phone |
|---|---|---|
| 1567 SAGE CANYON RD, ST_HELENA, CA 94573 | - | (707) 963-0480 |

| Employer Name/Address | Cell Phone | Business Phone |
|---|---|---|
| BRYANT FAMILY WINERY    / ST HELENA | | |

| Name Code | Seq. # | Name (Last, First, M) | Race | Sex | DOB |
|---|---|---|---|---|---|
| Involved Party | 1 | MELVIN, MICHAEL | | M | |

| Address | | |
|---|---|---|

NAPA SHERIFF'S DEPARTMENT
CONTROLLED DOCUMENT
NOT TO BE DUPLICATED
RELEASED TO
RELEASED BY
DATE

| Employer Name/Address | Cell Phone | Business Phone |
|---|---|---|
| UPS    / 1601 ATLAS ROAD, RICHMOND CA | | (810) 262-2490 |

## Incident/Investigation Report

| Agency: | | |
|---|---|---|
| Napa Sheriff's Department | Case Number: NSD13-004737 | Date: 08/20/2014 08:56:22 |

### Property

| Prop ID 162097 | Description PACKAGES OF WINE BOTTLES, | | Serial Number | | Make/Model |
|---|---|---|---|---|---|
| Owner BRYANT FAMILY WINERY | | | License / State | | Color |
| Status STOLEN/ETC. | Status Officer (250204) CARLISLE, CHRIS | | Quantity 51.00 | Units of Measure | Value $130050.00 |
| Gun Type | Caliber | Finish | Grip | | Gun Stock |
| Condition | Gun Test ☐ Yes ☒ No | Test Type | Sight Test ☐ Yes ☒ No | | Sight Type |
| Property Notes | | | | | |

### Notes/Narratives

On 11/19/13, at approximately 0930 hrs., I met with Todd Alexander at Bryant Family Winery located at 1567 Sage Canyon Rd, St. Helena. Alexander is the manager for the winery and asked to report a theft of wine. Alexander told me a large shipment of the company wine was loaded onto a UPS truck and went missing somewhere between after leaving the Bryant Family Winery and reaching the distribution hub in Richmond, Ca. The total loss of the wine is $130,050.00. Alexander delayed shortly in formally reporting the wine stolen because he wanted to confer with the owner and UPS to determine there was not a shipping error of sorts first. Alexander reported the following information.

Bryant Family Winery is a small winery with only a few employees and specializes in high end wines. The winery is located on a hill over looking Lake Hennessey and is not readily visible to the public. The winery only makes five to six large deliveries per year to customers and the shipping dates are known to customers. Because of the small amount of employees and the small amount of shipping dates, the employees have good recollections of product shipped from the business. Alexander has worked at the winery as the winemaker and recently as the interim manager for about three and a half years. They previously used Fed-Ex for their shipping but shipped to UPS during the last year. During Alexander's tenure, there has never been a loss of wine during shipping or otherwise.

On 11/4/13, at about 1600 hrs., UPS arrived for a pre-scheduled large shipping pick up. Alexander was present and assisted with the shipment processing and loading. UPS sent a large freight truck for the delivery. The driver left his second cargo trailer unhooked and parked in a dirt pull out along Hwy 128 near the base of the driveway. The delivery consisted of nine individual pallets and a total of 642 packages. The packages were pre-wrapped, labeled and secured on the individual pallets. Alexander assisted with labeling the packages prior to the delivery pickup. He used the UPS program to produce the individual labels and a label was placed on each of the 642 packages. The system rendered an automatic receipt for each label as a receipt for the business. Although the individual package receipts the nine pallets did not have a separate label. UPS does not scan the packages in when they are loaded onto a truck. The individual box labels serve as a receipt. UPS also does not provide a bill of lading at the time of the pickup. Alexander observed fork lift operator Joe Welch, load all nine pallets onto the UPS truck. The driver did not help with the loading and was busy texting on his cell phone during the loading process. Alexander described the UPS driver as a black male adult who was "squatty" in stature.

NAPA SHERIFF'S DEPARTMENT DOCUMENT NOT TO BE DUPLICATED CONTROLLED DOCUMENT RELEASED BY

| Agency:<br>Napa Sheriff's Department | Incident/Investigation Report |
|---|---|
| | Case Number: NSD13-004737          Date: 08/20/2014 08:56:23 |

## Notes/Narratives

Several days after the shipment left, customers who did not receive their expected wine shipment called to inquire. Alexander was able to determine 51 packages from the delivery never reached their intended recipients. All 51 of the packages had previously been loaded onto the same pallet on 11/4/13 and all were six bottle packages. He confirmed all of the other pallets reached their destination.

Alexander confirmed with Welch about the loading of all nine pallets. Welch also recalled where he loaded the pallet onto the truck and also recalled he had labeled the pallet "3" (3 of 9) prior to loading it. Welch is certain of which cases were on the pallets because he uses the UPS label sheet when he packages and wraps the pallets and then numbers the pallet. He loaded eight of the pallets in pairs of two in the truck and the last was toward the rear and in the middle of the last two pallets. He recalls pallet "3" was in the last row of two, near the rear of the trailer and he believes on the right side.

Alexander called UPS to investigate the missing pallet of wine and spoke with security manager Michael Melvin. Melvin told him that UPS uses a program called Telematix which tracks GPS locations of their trucks. Melvin told him that after leaving Bryant Family Winery, the UPS truck went to nearby David Arthur winery where the driver picked up 50 individual cases of wine for delivery. The driver then connected to his parked trailer on Hwy 128 and drove to the UPS hub in Richmond, Ca. Melvin reported there were no unusual stops or behavior by the GPS tracking however, Melvin did not explain in detail. Melvin also told Alexander that he (Melvin) had interviewed the driver, but again did not provide any details to Alexander. Melvin did tell Alexander that the driver disclosed he knew the wine shipment was valuable.

Alexander said the business does not have any working surveillance cameras and that there are no cameras near where the driver connectd to his second trailer.

Alexander said he originally called the FBI to report the theft because he did not know it was a local matter. The FBI referred him to ST. Helena PD who in turn referred him to Napa SO for reporting. Initially, Dep. Sharon Fong responded and took notes but then did not take a report because Alexander wanted to confer with the owner first and UPS.

Alexander provided me with copies of all the receipts for the wine that was delivered successfully and the missing pallet of wine. I later provided these to Det. Hancock for follow up.

I spoke with Det. Hancock by phone who requested I refer this report to him for follow up.

Recommendation: Refer to Det. Hancock for follow up.

NAPA SHERIFF'S DEPARTMENT
CONTROLLED DOCUMENT
NOT TO BE DUPLICATED
RELEASED TO _____
RELEASED BY _____
DATE _____

**Agency:**
Napa Sheriff's Department

# Incident/Investigation Report

**Case Number:** NSD13-004737

**Date:** 08/20/2014 08:56:23

## Notes/Continuation

NAPA SHERIFF'S DEPARTMENT
CONTROLLED DOCUMENT
NOT TO BE DUPLICATED

RELEASED TO *Davis*

RELEASED BY

DATE

## Incident/Investigation Report

**Agency:**
Napa Sheriff's Department

**Case Number:** NSD13-004737

**Date:** 08/20/2014 08:56:23

## Supplement Information

| Supplement Date | Supplement Type | Supplement Officer |
|---|---|---|
| 02/04/2014 16:44:31 | SUPPLEMENTAL | (250057) HANCOCK, TODD |
| Contact Name | | Supervising Officer |
| | | (250057) HANCOCK, TODD |

## Supplement Notes

Investigation summary:
On 11/14/13, I received a phone call from FBI Agent Sara Irwin, who told me that she had received a report of a large scale wine theft from Bryant Family Vineyards, located at 1567 Sage Canyon Road in unincorporated Napa County. I discussing the details of the report with Agent Irwin, it became apparent that the jurisdiction of the reported crime fell entirely within the purview of the Napa County Sheriff's Department and I advised her that I would be assuming any further investigation.

I spoke with Bryant Family Winery winemaker Todd Alexander and confirmed with him that approximately $130,000.00 of wine had gone missing from a shipment sent via UPS from the winery on November 4, 2013. Alexander said he was initially confused about which law enforcement jurisdiction to report the crime, which prompted the initial call to the FBI. Alexander told me that on November 4th, Bryant Family Vineyards shipped their wine club orders, which consisted of 9 loaded pallets, holding a total of 563 individual parcels, destined to be delivered to individual purchasers throughout the country. UPS was contracted to process the shipment, and all nine pallets were loaded onto a large UPS truck on the afternoon of Nov 4. After several days, Bryant Family began receiving queries from customers who had not received their expected shipments. Alexander determined that 51 parcels had not been delivered. He advised that all 51 missing parcels had been loaded onto and were the entire contents of a single pallet.

At my request, Deputy Carlisle responded to Bryant Family Winery on Sage Canyon Road and received the details of the incident from Todd Alexander (see Carlisle narrative).

I met with the Bryant Family Sales and Marketing manager, Carrie Mullen, at the winery. She advised that she had been employed by Bryant for about 4 months, previously having worked at Chappellet Winery for 3 years. She advised that the November Bryant shipment was entirely her responsibility and was her first shipment. She said she took painstaking efforts to set the shipment up. She used a point of sale software program which integrates with UPS shipping to arrange each individual shipment, then printed out the individual invoice for each shipment, printed out the UPS shipping label and personally matched each to ensure accuracy. She then arranged the shipments into batches and assisted in packing each pallet with the correct parcels. The parcels themselves were of different sizes, depending on the individual orders, with some 12 bottle cases, other 6-packs, and smaller orders. She said the missing wine consisted of 51 individual orders, all 6-bottle packages, and all 51 were packed onto a single pallet. She showed me duplicates of the 51 missing parcels. I noted the addresses were all in the southwest US, primarily southern California. She advised that all of the missing wine had been replaced and sent to their respective owners. She advised that only the 51 parcels from the one pallet were missing. All of the other parcels on the other 8 pallets were delivered successfully.

I met with Michael Melvin the UPS Northern California Security Manager. He identified the driver of the UPS truck assigned to the Bryant shipment on 11/4 as Robert Sturge. He said that Sturge had worked for UPS as a driver for over 20 years and had never had any theft or security complaints. Melvin explained that UPS did not scan the individual parcels at the point where the driver picks them up and assumes that the shipper accurately arranges the parcels per the invoice placed online. When the truck arrives at the distribution center in Richmond a Dimensional Scanner is used as

| **Agency:**<br>Napa Sheriff's Department | **Incident/Investigation Report**<br>Case Number: NSD13-004737 | Date: 08/20/2014 08:56:23 |
|---|---|---|

the parcels are hand off-loaded onto a conveyer belt. This scanner is designed to scan the volume of the parcels in order to accurately bill the shipper. While the scanner also captures bar codes on the parcels, it cannot "see" the bar codes which are obscured, which produces numbers which do not reflect the actual manifest. The parcels are each scanned individually at the point where they are loaded onto the next conveyance after being sorted by hand to approximate geographical destination.   With regard to the Bryant Nov 4 shipment, when matched to the manifest of 655 parcels shipped by Bryant, 620 packages were scanned at off-load by the dimensional scanner, which picked up box sizes and interpreted the numbers: 513 actual bar codes were captured by the scanner.  610 actual packages showed being delivered.  None of the 51 parcels on the pallet in question were ever recorded at any point in the UPS system (other than being on the initial manifest created by Bryant (Mullen).

He explained that the procedure to offload trailers involved a "feeder" driver who was directed to pick up designated trailers and take them to loading bays.  At that time a supervisor and the driver would open the door and inspect the contents.  An off-loader would then be assigned to enter the trailer and manually place each parcel onto a conveyor belt which was rolled into the trailer, removing the pallet shrink wrap if needed.  Once off-loaded, the supervisor re-inspects the trailer to make sure nothing is missed.  In the case of the Bryant/Arthur shipment, the shipment was off-loaded by Milagro Soto and the inspecting supervisor was Frederick Morris.  Morris reports 9 empty pallets in the trailer after unloading.

Melvin advised that the truck used for the Bryant shipment was equipped with GPS tracking.  The relevant timeline is as follows:

1530:Arrived at pullout, Sage Canyon Road near Bryant Family Winery driveway.
1539:Arrived at Bryant Family Winery, 1567 Sage Canyon Road
1628:Depart Bryant
1645:Arrive David Arthur Winery, 1519 Sage Canyon Road
1709: Depart David Arthur
1718:Returned to pullout at bottom of driveway.
1724: Depart, enroute to Richmond UPS facility.
1844:Arrive Richmond UPS facility.

The driveways of 1567 and 1519 Sage canyon are close together at the beginning of the driveways on Sage Canyon, however each driveway is several miles long and the wineries are at the tops of steep grades.
Per UPS records, all of the David Arthur wine that was also on the truck was accounted for and delivered.

I interviewed the UPS driver, Robert Sturge.  Sturge said that on Nov 4, he had been at the Napa UPS "feeder" facility, having completed a mornings pickups.  At about 1300hrs., the dispatcher advised him that he would be assigned to pick up two shipments from wineries in northern Napa Valley.  He was told to pick up a set of two trailers as the Bryant winery shipment included 18 pallets and the David Arthur winery had two additional pallets.  He was provided the addresses and contact information.  He had never been to either location in the past.

Sturge arrived at the driveway to Bryant Family Winery, 1567 Sage Canyon Road at about 1:30.  He stopped at a dirt turnaround nearby and disconnected the rear trailer as he would be unable to pull the entire set up the steep and narrow driveway.  His intention was to put 10 pallets in each trailer, even though that entailed multiple trips.  When ready, he called "Joe" at Bryant Family, who met him at the foot of the driveway and gave him a walkie-talkie.  Joe then helped Sturge make it up the one lane driveway by driving ahead to ensure the road was clear.

Once at the winery, Sturge learned that there were only 9 pallets and was not provided an explanation for the difference in what he had expected to pick up.  Joe carried each pallet, via forklift, from the winery to the truck and Sturge used a pallet jack to arrange the load in the truck.  Sturge said the entire load consisted of 7 full pallets and 2 half pallets.  He

| Agency:<br>Napa Sheriff's Department | Incident/Investigation Report |
|---|---|
| | Case Number: NSD13-004737    Date: 08/20/2014 08:56:23 |

asked Joe how many total packages had been loaded and said Joe replied "between 500 and 540". Sturge said all 9 of the pallets were "shrink wrapped". He described the configuration of the load as 4 rows of 2 pallets and the last row with a single pallet. Once loaded, he drove directly to David Arthur, where he met an employee. David Arthur did not have a forklift, so Sturge and the employee removed the shrink wrap from the two pallets and loaded the parcels by hand into the back of the truck. Sturge said the David Arthur packages were placed behind the Bryant pallets blocking them in and stacked to a height of 4-5 feet. Sturge then left, drove back to the staged trailer at the dirt turnaround and re-attached the second trailer. He then drove straight to the Richmond UPS facility where he dropped the two trailers in the lot as directed. He did not stop enroute and did not open the trailers or have anything to do with the contents after he dropped them off in Richmond.

I met with Joe Welch, a cellar worker at Bryant Family Winery. He stated that he was on duty on November 4th when the UPS shipment was prepared. When the truck arrived he loaded 9 pallets into the trailer. He explained that the missing wine was on pallet #3, which was placed in the 4th row (near the back) of the load, with the 9th pallet behind it.

I met with Tanner Sneed and Laura Long at David Arthur Winery. They were both present on November 4th and assisted with loading their wine into the back of the UPS truck, corroborating the statement given by Robert Sturge. Both Sneed and Long remembered seeing the 9 pallets of Bryant wine loaded in the back of the truck in the configuration previously described and said that when they were finished loading the two pallets of loose David Arthur wine, the back of the truck was full and the Bryant wine was completely blocked in. They both noted that they had never seen the UPS driver before and that he was not their normal driver.

Case status:

No unusual quantities of 2010 Bryant Family Cabernet wine has been observed in normal auction/re-sale venues. Per Bryant Family, sufficient quantities of reserves were on hand to replace the missing customer orders.

Suspended. No further leads.

# EXHIBIT C

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Gleffe, Jolene on behalf of Rose, James R. |
| **Sent:** | Wednesday, August 05, 2015 11:25 AM |
| **To:** | 'VirginiaAmaro@adr.org' |
| **Cc:** | Hoyland, Robert; 'Brian O'Connor'; Falace, Katharine H. |
| **Subject:** | RE: Bryant Family Vineyard V. United Parcel Service (UPS) - Case 01-14-0001-1154 |

Dear Virginia:

At the conclusion of the arbitration before Richard Collier, it was my understanding that the parties were going to be given the opportunity for closing argument.  That matter was specifically discussed with Richard Collier.

Can you please inquire as to the status of our ability to provide closing argument.  I think it would be important for both sides to present argument to the arbitrator regarding the case.

Respectfully submitted.

Very truly yours,


James R. Rose
BuchalterNemer, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574 Direct Dial: (707) 967-9656 | Direct Fax: (707) 963-0771 jrose@buchalter.com | www.buchalter.com


Attached please find correspondence related to the captioned matter.
Thank you.
AAA Virginia Amaro
Manager of ADR Services
American Arbitration Association
T:559 490 1872
F:855 270 8400
45 E River Park Place W, Suite 308
Fresno, CA 93720
http://www.adr.org
Jeffrey Garcia, Vice President
Western Case Management
The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

## Gleffe, Jolene

| | |
|---|---|
| **From:** | AAA Virginia Amaro <VirginiaAmaro@adr.org> |
| **Sent:** | Monday, August 10, 2015 4:29 PM |
| **To:** | Rose, James R. |
| **Cc:** | Hoyland, Robert; Brian O'Connor; Falace, Katharine H. |
| **Subject:** | RE: Bryant Family Vineyard V. United Parcel Service (UPS) - Case 01-14-0001-1154 |

Dear Parties,

We are in receipt of the email below from Claimant. At this time we request the comments of Respondent to the below email.

Thank you.

va/bs


AAA Virginia Amaro
Manager of ADR Services
American Arbitration Association
T:559 490 1872
F:855 270 8400
45 E River Park Place W, Suite 308
Fresno, CA 93720
http://www.adr.org
Jeffrey Garcia, Vice President
Western Case Management
The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.
-----Original Message-----
From: Gleffe, Jolene [mailto:jgleffe@buchalter.com] On Behalf Of Rose, James R.
Sent: Wednesday, August 05, 2015 11:25 AM
To: AAA Virginia Amaro
Cc: Hoyland, Robert; Brian O'Connor; Falace, Katharine H.
Subject: 8-5-15 AAA forwards email to Arbitrator Collier RE: Bryant Family Vineyard V. United Parcel Service (UPS) - Case 01-14-0001-1154

Dear Virginia:

At the conclusion of the arbitration before Richard Collier, it was my understanding that the parties were going to be given the opportunity for closing argument.  That matter was specifically discussed with Richard Collier.

Can you please inquire as to the status of our ability to provide closing argument.  I think it would be important for both sides to present argument to the arbitrator regarding the case.

Respectfully submitted.

Very truly yours,

James R. Rose
BuchalterNemer, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574 Direct Dial: (707) 967-9656
| Direct Fax: (707) 963-0771 jrose@buchalter.com | www.buchalter.com

Attached please find correspondence related to the captioned matter.
Thank you.
AAA Virginia Amaro
Manager of ADR Services
American Arbitration Association
T:559 490 1872
F:855 270 8400
45 E River Park Place W, Suite 308
Fresno, CA 93720
http://www.adr.org
Jeffrey Garcia, Vice President
Western Case Management
The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only
for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited
except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me
immediately by reply email and destroy all copies of the transmittal. Thank you.
Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a
communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or
copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete
this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation.
For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Richard Collier <RCollier@cwclaw.com> |
| **Sent:** | Thursday, August 13, 2015 10:14 AM |
| **To:** | Rose, James R.; Robert.Hoyland@alston.com; Brian O'Connor (BJO@diepenbrockcotter.com) |
| **Subject:** | AAA Case # 01-14-0001-1154 |
| | |
| **Importance:** | High |

Gentlemen:

'Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument.  My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings.  But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this.  Please reply to me directly, copying Ms. Amaro at the AAA.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com

===============================================

This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

===============================================

1

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Gleffe, Jolene on behalf of Rose, James R. |
| **Sent:** | Thursday, August 13, 2015 2:08 PM |
| **To:** | Robert.Hoyland@alston.com; Brian O'Connor (BJO@diepenbrockcotter.com) |
| **Subject:** | RE: AAA Case # 01-14-0001-1154 |

Gentlemen:

It is my recollection that at the close of evidence on the arbitration that we had agreed to come back for closing arguments.  Perhaps my recollection is different than your recollection or Richard Collier's recollection.  I would like closing arguments just because I think it is a proper way of concluding any arbitration or trial.  I would request that you agree to the closing arguments.

If you have any questions, please call.

Very truly yours,

Jim

James R. Rose
**BuchalterNemer**, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574
Direct Dial: (707) 967-9656 | Direct Fax: (707) 963-0771
jrose@buchalter.com | www.buchalter.com

**From:** Richard Collier [mailto:RCollier@cwclaw.com]
**Sent:** Thursday, August 13, 2015 10:14 AM
**To:** Rose, James R.; Robert.Hoyland@alston.com; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** AAA Case # 01-14-0001-1154
**Importance:** High

Gentlemen:

1

Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument.  My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings.  But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this.  Please reply to me directly, copying Ms. Amaro at the AAA.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com
=================================================

This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

=================================================

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Hoyland, Robert <Robert.Hoyland@alston.com> |
| **Sent:** | Thursday, August 13, 2015 2:26 PM |
| **To:** | Richard Collier; Rose, James R.; Brian O'Connor (BJO@diepenbrockcotter.com) |
| **Subject:** | RE: AAA Case # 01-14-0001-1154 |

Gentlemen:

My recollection is quite clear. After both sides rested, Mr. Collier stated that he was not closing the hearing at that time. He had planned for a two-day arbitration and had rented a room in the hotel across the street for two days. He intended to bring the material presented at the hearing to his room and review it. He stated that he might need extra time to review the material and make a decision; therefore, he was leaving the hearing open, and if he had any questions or if he needed any further briefing, he would contact us.

There was no mention of closing arguments, nor was there any plan to meet in person or by telephone. The message was clear. If Mr. Collier had any questions or if he needed any further briefing, he would contact us. The hearing remained open for two weeks. I checked my email and voice mail regularly during that time, and Mr. Collier never asked any questions nor requested any briefing.

**Robert "Doc" Hoyland**
404-881-4653

**From:** Richard Collier [mailto:RCollier@cwclaw.com]
**Sent:** Thursday, August 13, 2015 1:14 PM
**To:** Rose, James R. (jrose@buchalter.com); Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** AAA Case # 01-14-0001-1154
**Importance:** High

Gentlemen:

Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument.  My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings.  But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this.  Please reply to me directly, copying Ms. Amaro at the AAA.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com

============================================
This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error,

1

please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

==================================================

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Gleffe, Jolene on behalf of Rose, James R. |
| **Sent:** | Thursday, August 13, 2015 4:11 PM |
| **To:** | 'Hoyland, Robert'; Richard Collier; Brian O'Connor (BJO@diepenbrockcotter.com) |
| **Subject:** | RE: AAA Case # 01-14-0001-1154 |

Gentlemen:

I apologize for the confusion on this matter, but I do have a recollection of discussing closing argument, and Mr. Doc Hoyland stating that he would love to come back to the Napa Valley for such an event. I am denying the recollection of events of everyone else. I will defer to the arbitrator on this matter.

Very truly yours,

Jim Rose

James R. Rose
**BuchalterNemer**, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574
Direct Dial: (707) 967-9656 | Direct Fax: (707) 963-0771
jrose@buchalter.com | www.buchalter.com

**From:** Hoyland, Robert [mailto:Robert.Hoyland@alston.com]
**Sent:** Thursday, August 13, 2015 2:26 PM
**To:** Richard Collier; Rose, James R.; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** RE: AAA Case # 01-14-0001-1154

Gentlemen:

My recollection is quite clear. After both sides rested, Mr. Collier stated that he was not closing the hearing at that time. He had planned for a two-day arbitration and had rented a room in the hotel across the street for two days. He intended to bring the material presented at the hearing to his room and review it. He stated that he might need extra time to review the material and make a decision; therefore, he was leaving the hearing open, and if he had any questions or if he needed any further briefing, he would contact us.

There was no mention of closing arguments, nor was there any plan to meet in person or by telephone. The message was clear. If Mr. Collier had any questions or if he needed any further briefing, he would contact us. The hearing remained open for two weeks. I checked my email and voice mail regularly during that time, and Mr. Collier never asked any questions nor requested any briefing.

**Robert "Doc" Hoyland**
404-881-4653

**From:** Richard Collier [mailto:RCollier@cwclaw.com]
**Sent:** Thursday, August 13, 2015 1:14 PM
**To:** Rose, James R. (jrose@buchalter.com); Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** AAA Case # 01-14-0001-1154
**Importance:** High

Gentlemen:

Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument. My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings. But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this. Please reply to me directly, copying Ms. Amaro at the AAA.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com

=================================================

This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

=================================================

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

Gleffe, Jolene

| | |
|---|---|
| **From:** | Richard Collier <RCollier@cwclaw.com> |
| **Sent:** | Thursday, August 13, 2015 4:24 PM |
| **To:** | Rose, James R.; Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com) |
| **Cc:** | VirginiaAmaro@adr.org |
| **Subject:** | RE: AAA Case # 01-14-0001-1154 |

My main concern in keeping the hearings open was to allow me the opportunity to get further briefing if I felt I needed it after reviewing the extensive trial exhibits, and I believe that Mr. Hoyland volunteered to come to California again if I felt I needed additional hearings in addition to or rather than briefs.  After reviewing the Exhibits in some detail, I felt comfortable closing the hearings, which I did August 4th.  I believe I still have adequate time to complete the Award and have it reviewed by the AAA within the 30 day period from August 4th.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com
================================================
This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.
================================================


**From:** Gleffe, Jolene [mailto:jgleffe@buchalter.com] **On Behalf Of** Rose, James R.
**Sent:** Thursday, August 13, 2015 4:11 PM
**To:** Hoyland, Robert; Richard Collier; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** RE: AAA Case # 01-14-0001-1154

Gentlemen:

I apologize for the confusion on this matter, but I do have a recollection of discussing closing argument, and Mr. Doc Hoyland stating that he would love to come back to the Napa Valley for such an event.  I am denying the recollection of events of everyone else.  I will defer to the arbitrator on this matter.

Very truly yours,

Jim Rose


James R. Rose
**BuchalterNemer**, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574

1

Direct Dial: (707) 967-9656 | Direct Fax: (707) 963-0771
jrose@buchalter.com | www.buchalter.com

**From:** Hoyland, Robert [mailto:Robert.Hoyland@alston.com]
**Sent:** Thursday, August 13, 2015 2:26 PM
**To:** Richard Collier; Rose, James R.; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** RE: AAA Case # 01-14-0001-1154

Gentlemen:

My recollection is quite clear. After both sides rested, Mr. Collier stated that he was not closing the hearing at that time. He had planned for a two-day arbitration and had rented a room in the hotel across the street for two days. He intended to bring the material presented at the hearing to his room and review it. He stated that he might need extra time to review the material and make a decision; therefore, he was leaving the hearing open, and if he had any questions or if he needed any further briefing, he would contact us.

There was no mention of closing arguments, nor was there any plan to meet in person or by telephone. The message was clear. If Mr. Collier had any questions or if he needed any further briefing, he would contact us. The hearing remained open for two weeks. I checked my email and voice mail regularly during that time, and Mr. Collier never asked any questions nor requested any briefing.

**Robert "Doc" Hoyland**
404-881-4653

**From:** Richard Collier [mailto:RCollier@cwclaw.com]
**Sent:** Thursday, August 13, 2015 1:14 PM
**To:** Rose, James R. (jrose@buchalter.com); Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** AAA Case # 01-14-0001-1154
**Importance:** High

Gentlemen:

Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument.  My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings.  But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this.  Please reply to me directly, copying Ms. Amaro at the AAA.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com

================================================
This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

=================================================

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

## Gleffe, Jolene

| | |
|---|---|
| **From:** | Rose, James R. |
| **Sent:** | Friday, August 14, 2015 10:21 AM |
| **To:** | Hoyland, Robert |
| **Cc:** | Brian O'Connor (BJO@diepenbrockcotter.com) |
| **Subject:** | Re: AAA Case # 01-14-0001-1154 |

This will be the first time in 33 years of practicing law that I have been denied a request for closing argument.
Jim

Sent from my iPhone

On Aug 13, 2015, at 2:40 PM, Hoyland, Robert <Robert.Hoyland@alston.com> wrote:

> Jim,
>
> The issues have been briefed thoroughly. I don't see the need for closing argument.
>
> **Robert "Doc" Hoyland**
> 404-881-4653
>
> **From:** Gleffe, Jolene [mailto:jgleffe@buchalter.com] **On Behalf Of** Rose, James R.
> **Sent:** Thursday, August 13, 2015 5:08 PM
> **To:** Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com)
> **Subject:** RE: AAA Case # 01-14-0001-1154
>
> Gentlemen:
>
> It is my recollection that at the close of evidence on the arbitration that we had agreed to come back for closing arguments. Perhaps my recollection is different than your recollection or Richard Collier's recollection. I would like closing arguments just because I think it is a proper way of concluding any arbitration or trial. I would request that you agree to the closing arguments.

1

If you have any questions, please call.

Very truly yours,

Jim


James R. Rose
**BuchalterNemer**, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574
Direct Dial: (707) 967-9656 | Direct Fax: (707) 963-0771
jrose@buchalter.com | www.buchalter.com

**From:** Richard Collier [mailto:RCollier@cwclaw.com]
**Sent:** Thursday, August 13, 2015 10:14 AM
**To:** Rose, James R.; Robert.Hoyland@alston.com; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** AAA Case # 01-14-0001-1154
**Importance:** High

Gentlemen:

Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument.  My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings.  But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this.  Please reply to me directly, copying Ms. Amaro at the AAA.

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com

===============================================
This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

===============================================


Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your

cooperation. For additional policies governing this e-mail, please see
http://www.buchalter.com/about/firm-policies/.

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Rose, James R. |
| **Sent:** | Thursday, August 13, 2015 5:00 PM |
| **To:** | Richard Collier |
| **Cc:** | Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com); VirginiaAmaro@adr.org |
| **Subject:** | Re: AAA Case # 01-14-0001-1154 |

That's acceptable. I did just notice a typo on my previous email, it was intended to say that I was "not" questioning anyone's recollection on the matter. Sorry about that.

Jim Rose

Sent from my iPhone

On Aug 13, 2015, at 4:24 PM, Richard Collier <RCollier@cwclaw.com> wrote:

> My main concern in keeping the hearings open was to allow me the opportunity to get further briefing if I felt I needed it after reviewing the extensive trial exhibits, and I believe that Mr. Hoyland volunteered to come to California again if I felt I needed additional hearings in addition to or rather than briefs. After reviewing the Exhibits in some detail, I felt comfortable closing the hearings, which I did August 4th. I believe I still have adequate time to complete the Award and have it reviewed by the AAA within the 30 day period from August 4th.
>
> Richard J. Collier
> Cooper, White & Cooper LLP
> 201 California Street, 17th Floor
> San Francisco, CA 94111
> Direct: (415) 765-6220
> Main: (415) 433-1900
> Fax: (415) 433-5530
>
> www.cwclaw.com
>
> ================================================
>
> This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.
>
> ================================================

**From:** Gleffe, Jolene [mailto:jgleffe@buchalter.com] **On Behalf Of** Rose, James R.
**Sent:** Thursday, August 13, 2015 4:11 PM
**To:** Hoyland, Robert; Richard Collier; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** RE: AAA Case # 01-14-0001-1154

Gentlemen:

I apologize for the confusion on this matter, but I do have a recollection of discussing closing argument, and Mr. Doc Hoyland stating that he would love to come back to the Napa Valley for such an event. I am denying the recollection of events of everyone else. I will defer to the arbitrator on this matter.

Very truly yours,

Jim Rose

James R. Rose
**BuchalterNemer**, A Professional Corporation | 1500 Railroad Avenue | St. Helena, CA 94574
Direct Dial: (707) 967-9656 | Direct Fax: (707) 963-0771
jrose@buchalter.com | www.buchalter.com

---

**From:** Hoyland, Robert [mailto:Robert.Hoyland@alston.com]
**Sent:** Thursday, August 13, 2015 2:26 PM
**To:** Richard Collier; Rose, James R.; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** RE: AAA Case # 01-14-0001-1154

Gentlemen:

My recollection is quite clear. After both sides rested, Mr. Collier stated that he was not closing the hearing at that time. He had planned for a two-day arbitration and had rented a room in the hotel across the street for two days. He intended to bring the material presented at the hearing to his room and review it. He stated that he might need extra time to review the material and make a decision; therefore, he was leaving the hearing open, and if he had any questions or if he needed any further briefing, he would contact us.

There was no mention of closing arguments, nor was there any plan to meet in person or by telephone. The message was clear. If Mr. Collier had any questions or if he needed any further briefing, he would contact us. The hearing remained open for two weeks. I checked my email and voice mail regularly during that time, and Mr. Collier never asked any questions nor requested any briefing.

**Robert "Doc" Hoyland**
404-881-4653

---

**From:** Richard Collier [mailto:RCollier@cwclaw.com]
**Sent:** Thursday, August 13, 2015 1:14 PM
**To:** Rose, James R. (jrose@buchalter.com); Hoyland, Robert; Brian O'Connor (BJO@diepenbrockcotter.com)
**Subject:** AAA Case # 01-14-0001-1154
**Importance:** High

Gentlemen:

Ms. Amaro forwarded to me Mr. Rose's email of August 5th in essence asking me to reopen the hearings to allow for closing argument. My recollection regarding my keeping the hearings open is different, but if the parties through their counsel all agree, I will of course reopen the hearings. But I need to know very promptly, because the time for me to prepare my award is running.

Thank you for your attention to this. Please reply to me directly, copying Ms. Amaro at the AAA.

2

Richard J. Collier
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Direct: (415) 765-6220
Main: (415) 433-1900
Fax: (415) 433-5530

www.cwclaw.com

================================================

This communication (including any attachments) contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the communication. If you have received the communication in error, please advise the sender by reply e-mail and delete the communication. Nothing in this communication should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.

================================================

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

3

**EXHIBIT D**

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Richard Collier <RCollier@cwclaw.com> |
| **Sent:** | Monday, August 31, 2015 12:50 PM |
| **To:** | Rose, James R. |
| **Subject:** | Estate of George |

I write to you in great consternation.  Linda called me yesterday evening to report that she had been called by a friend in Marin, someone who knows Victoria, who said that Victoria has been going around telling people two stories that are false.  First, Victoria was repeating the allegation in your mediation statement that Frank signed the life insurance beneficiary designation forms when he was in hospital and highly medicated.  I hope Martin Quinn explained to the people in your room, as we had asked him to do, that Frank's office calendar shows that he was working on March 12th, attending an IME in Palo Alto and going to an appointment with his optician in San Francisco.  He was functioning at quite a high level.  Second, Victoria was making the accusation that Linda signed the deeds for Toyon Drive using the Power of Attorney knowing that that was inappropriate.  Again, I hope Martin explained, as we demonstrated to him, that Linda did what she did on the instruction of her attorney, the one who prepared all the deeds <u>and the power of attorney itself!</u>  The accusation is simply groundless.

We did not include a non-disparagement clause or a confidentiality provision in the Settlement Agreement because we thought all the parties were adult and discrete enough not to make baseless accusations in public or otherwise share family and mediation confidences .  It seems we were wrong, and those provisions will be included in the long-form agreement.  In the meantime, I would appreciate your advising your clients to comport themselves as if those two provisions were already in effect.

Linda agreed to a generous allocation of estate assets in order to avoid a battle in court which would have embroiled her family and Frank's friends.  Linda is also extremely mindful of Frank's words to her about his decision not to put his daughters through a court battle when they went with their mother to Arizona.  Linda even showed great kindness in agreeing to share Frank's ashes to which she is without question entitled.  Linda was willing to concede on money, but she and we will not tolerate the continued defamation of her character now that the clear facts are on the table.  Again, I would appreciate your sending this email to your clients and cautioning them appropriately.

Thank you.

Richard J. Collier
Cooper, White & Cooper LLP
Direct Dial: 415-765-6220

1

# EXHIBIT E

## Gleffe, Jolene

| | |
|---|---|
| **From:** | VirginiaAmaro@adr.org |
| **Sent:** | Monday, August 31, 2015 2:36 PM |
| **To:** | Gleffe, Jolene |
| **Subject:** | Bryant Family Vineyard V. United Parcel Service (UPS) - Case 01-14-0001-1154 |
| **Attachments:** | CM118.pdf; Award 1154.pdf |

Attached please find correspondence related to the captioned matter.
Thank you.
AAA Virginia Amaro
Manager of ADR Services
American Arbitration Association
T:559 490 1872
F:855 270 8400
45 E River Park Place W, Suite 308
Fresno, CA 93720
http://www.adr.org
Jeffrey Garcia, Vice President
Western Case Management
The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.



AMERICAN
ARBITRATION
ASSOCIATION°   | INTERNATIONAL CENTRE
                 FOR DISPUTE RESOLUTION°

Western Case Management Center
Jeffrey Garcia
Vice President
45 E River Park Place West, Suite 308
Fresno, CA 93720
Telephone: (877) 528-0880
Fax: (855) 433-3046

August 31, 2015

James R. Rose, Esq.
BuchalterNemer
1500 Railroad Avenue
St. Helena, CA 94574
Via Fax to: (707)963-0771

Brian J. O'Connor, Esq.
Diepenbrock & Cotter, LLP
1545 River Park Dr.
Suite 201
Sacramento , CA 95815
Via Email to: BJO@diepenbrockcotter.com

Case Number: 01-14-0001-1154

Bryant Family Vineyard
-vs-
United Parcel Service (UPS)

Dear Parties:

By direction of the arbitrator we herewith transmit to you the duly executed Award in the above matter. This
serves as a reminder that there is to be no direct communication with the arbitrator. All communication shall be
directed to the AAA.

At this time we have verified with the arbitrators that they have submitted all requests for compensation and
expenses in this matter. Accordingly, we have conducted a final reconciliation of the. If a party had any unused
compensation deposits, we have issued a refund check that should arrive in the mail shortly.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding.
Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and
will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances
the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and
payable to the AAA even after the final award is issued, and regardless of the arbitrator's apportionment of
these costs between the parties in the award.

Please note, in the normal course of our administration, the AAA may maintain certain documents in our
electronic records system. Such electronic records are not routinely destroyed and do not constitute a complete
case file.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

/s/
Virginia J Amaro
Manager of ADR Services
Direct Dial: (559) 490-1872
Email: VirginiaAmaro@adr.org
Fax: (855) 433-3046

cc:
Jody Gleffe
Katharine Falace
Robert Hoyland, Esq.

Arbitrator, Richard J. Collier, Esq.

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

---

**01-14-0001-1154**

**In the Matter of the Arbitration between**

**Bryant Family Vineyard,**
**Claimant**

**and**

**United Parcel Service,**
**Respondent.**

---

## AWARD

Having been designated in accordance with the arbitration agreement between the parties, the Arbitrator, Richard J. Collier, now finds and awards as follows:

A hearing was held before the Arbitrator on July 21, 2015. Claimant was represented by James Rose, Esq.; Respondent was represented by Robert Hoyland, Esq. and by Brian J. O'Connor, Esq. Having heard the testimony of witnesses called by Claimant and Respondent and reviewed the extensive Exhibits admitted into evidence, including deposition transcripts, I now make the following Final Award.

### Summary of Claims and Responses

On November 4, 2013, Respondent UPS picked up from Claimant Bryant Family Vineyard a large, pre-scheduled shipment of wine. At issue in this proceeding are 51 boxes of wine, out of more than 600, which never reached their shipping destinations. Claimant asserts that the 51 boxes were lost by or stolen from UPS during shipment. Respondent asserts that the 51 boxes were not included in the shipment.

In the course of this proceeding, Claimant asserted several claims under California law based on its allegations concerning the incident: breach of contract

and negligence for UPS' failure to scan the boxes when they were picked up from the winery, and conversion of the wine. In response, Respondent averred that all the claims were preempted by federal law (and therefore should be dismissed) and that the damages sought by Claimant are limited by the UPS Tariff applicable to this shipment.

### Discussion

### 1. The Claims Are Not Preempted

For purposes of this proceeding, I find that the claims asserted are not preempted by federal law. The missing boxes were primarily for shipment within California, and the Carmack Amendment to the Interstate Commerce Act does not apply to intrastate shipments. Moreover, the Federal Aviation Administrative Act of 1994 does not apply because, notwithstanding the broad scope of the Act, the claims in this proceeding do not relate to Respondent's "price, route or service."

### 2. The Claims Are Subject to the UPS Tariff

For purposes of this proceeding, I find that Bryant Family Vineyard's claims, if proved, are subject to the UPS Tariff (Respondent's Exhibit A). If federal law applies, the cases cited by Respondent in its Trial Brief at Section III (page 7) control to make the Tariff enforceable. If California law controls, Civil Code section 2174 makes the Tariff enforceable as a "special contract".

Claimant argues that Respondent's conversion of the missing wine makes the Tariff unenforceable. I find that Claimant has failed to carry its burden of proof in establishing that UPS converted the wine. Neither side in fact came close to showing, much less proving, what happened to the 51 boxes. The Shipper Manifest Records (Respondent's Exhibit C) appear to indicate that 51 boxes were "scrubbed" from the shipment, but that raises as many questions about where the boxes ended up as the testimony and documents left me with. The evidence certainly does not support that there was willful or intentional misconduct on the part of UPS with respect to the missing boxes of wine.

### 3. Claimant Has Failed to Prove its Claims for Breach of Contract and Negligence

Joe Welch, the Facilities Manager for Bryant Family Vineyard, testified that UPS had picked up shipments in March and April of 2013 from Claimant, that on those occasions UPS had not scanned the boxes to be shipped (unlike FedEx which

Claimant had had handle its shipments before switching to UPS), and that he had not expected UPS to scan the November shipment.

If this testimony does not estop Claimant from asserting claims based on UPS' alleged failure to scan the boxes to be shipped, it certainly undercuts a claim that that failure breached a contract with Claimant or a duty to Claimant.

### Conclusion

I find that Claimant has failed to prove its claims and therefore award $0 to Claimant.

The Administrative fees of the AAA totaling $2,600.00 are to be borne equally. The Compensation of Arbitrator totaling $12,820.50 is to be borne equally. Therefore, United Parcel Service shall pay to Bryant Family Vineyard an amount of $1,300.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Bryant Family Vineyard.

This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are denied.


Dated: August 28, 2015                    Richard J. Collier, Arbitrator

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

---

**01-14-0001-1154**

**In the Matter of the Arbitration between**

**Bryant Family Vineyard,**
**Claimant**

**and**

**United Parcel Service,**
**Respondent.**

---

## AWARD

Having been designated in accordance with the arbitration agreement between the parties, the Arbitrator, Richard J. Collier, now finds and awards as follows:

A hearing was held before the Arbitrator on July 21, 2015. Claimant was represented by James Rose, Esq.; Respondent was represented by Robert Hoyland, Esq. and by Brian J. O'Connor, Esq. Having heard the testimony of witnesses called by Claimant and Respondent and reviewed the extensive Exhibits admitted into evidence, including deposition transcripts, I now make the following Final Award.

### Summary of Claims and Responses

On November 4, 2013, Respondent UPS picked up from Claimant Bryant Family Vineyard a large, pre-scheduled shipment of wine. At issue in this proceeding are 51 boxes of wine, out of more than 600, which never reached their shipping destinations. Claimant asserts that the 51 boxes were lost by or stolen from UPS during shipment. Respondent asserts that the 51 boxes were not included in the shipment.

In the course of this proceeding, Claimant asserted several claims under California law based on its allegations concerning the incident: breach of contract

1

and negligence for UPS' failure to scan the boxes when they were picked up from the winery, and conversion of the wine.  In response, Respondent averred that all the claims were preempted by federal law (and therefore should be dismissed) and that the damages sought by Claimant are limited by the UPS Tariff applicable to this shipment.

### Discussion

**1.    The Claims Are Not Preempted**

For purposes of this proceeding, I find that the claims asserted are not preempted by federal law.  The missing boxes were primarily for shipment within California, and the Carmack Amendment to the Interstate Commerce Act does not apply to intrastate shipments.  Moreover, the Federal Aviation Administrative Act of 1994 does not apply because, notwithstanding the broad scope of the Act, the claims in this proceeding do not relate to Respondent's "price, route or service."

**2.    The Claims Are Subject to the UPS Tariff**

For purposes of this proceeding, I find that Bryant Family Vineyard's claims, if proved, are subject to the UPS Tariff (Respondent's Exhibit A).  If federal law applies, the cases cited by Respondent in its Trial Brief at Section III (page 7) control to make the Tariff enforceable.  If California law controls, Civil Code section 2174 makes the Tariff enforceable as a "special contract".

Claimant argues that Respondent's conversion of the missing wine makes the Tariff unenforceable.  I find that Claimant has failed to carry its burden of proof in establishing that UPS converted the wine.  Neither side in fact came close to showing, much less proving, what happened to the 51 boxes.  The Shipper Manifest Records (Respondent's Exhibit C) appear to indicate that 51 boxes were "scrubbed" from the shipment, but that raises as many questions about where the boxes ended up as the testimony and documents left me with.  The evidence certainly does not support that there was willful or intentional misconduct on the part of UPS with respect to the missing boxes of wine.

**3.    Claimant Has Failed to Prove its Claims for Breach of Contract and Negligence**

Joe Welch, the Facilities Manager for Bryant Family Vineyard, testified that UPS had picked up shipments in March and April of 2013 from Claimant, that on those occasions UPS had not scanned the boxes to be shipped (unlike FedEx which

Claimant had had handle its shipments before switching to UPS), and that he had not expected UPS to scan the November shipment.

If this testimony does not estop Claimant from asserting claims based on UPS' alleged failure to scan the boxes to be shipped, it certainly undercuts a claim that that failure breached a contract with Claimant or a duty to Claimant.

## Conclusion

I find that Claimant has failed to prove its claims and therefore award $0 to Claimant.

The Administrative fees of the AAA totaling $2,600.00 are to be borne equally. The Compensation of Arbitrator totaling $12,820.50 is to be borne equally. Therefore, United Parcel Service shall pay to Bryant Family Vineyard an amount of $1,300.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Bryant Family Vineyard.

This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are denied.


Dated: August 28, 2015                    Richard J. Collier, Arbitrator

1  BUCHALTER NEMER
   A Professional Corporation
2  JAMES R. ROSE (SBN: 109726)
   KATHARINE H. FALACE (SBN: 222744)
3  1500 Railroad Avenue
   St. Helena, CA 94574
4  Tel: (707) 967-9656
   Fax: (707) 963-0771
5  Email: jrose@buchalter.com

6  Attorneys for Petitioner
   BRYANT FAMILY VINEYARD
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF NAPA

10

11 BRYANT FAMILY VINEYARD,               CASE NO.

12          Petitioner,                  [PROPOSED] ORDER

13    v.

14 UNITED PARCEL SERVICE, INC.,          Date:    January 27, 2016
                                         Time:    8:30 a.m.
15          Respondent.                  Dept.:

16

17

18

19

20      This matter came on regularly for hearing on Petitioner's Petition to Vacate Arbitration

21 Award on January 27, 2016, at 8:30 a.m. in Dept. _____ of the above Court.   James R. Rose

22 appeared on behalf of Petitioner Bryant Family Vineyards and _____

23 appeared on behalf of Respondent UNITED PARCEL SERVICE, INC.

24      The Court, having read and considered the papers filed and good cause appearing therefor,

25      IT IS HEREBY ORDERED that:

26      Petitioner's Petition to Vacate Arbitration Award is granted.

27

28 ///

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY
                                      1
                              PROPOSED ORDER

1  DATED: _____

2

3

4            JUDGE OF THE SUPERIOR COURT

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    BUCHALTER NEMER
     A Professional Corporation
2    JAMES R. ROSE (SBN: 109726)
     KATHARINE H. FALACE (SBN: 222744)
3    1500 Railroad Avenue
     St. Helena, CA 94574
4    Tel: (707) 967-9656
     Fax: (707) 963-0771
5    Email: jrose@buchalter.com

6    Attorneys for Petitioner
     BRYANT FAMILY VINEYARD
7

8                      SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                                  COUNTY OF NAPA

10                                          │    CASE NO.

11   BRYANT FAMILY VINEYARD,                │
                                            │
12           Petitioner,                    │    PROOF OF SERVICE
                                            │
13   v.                                     │
                                            │
14   UNITED PARCEL SERVICE, INC.,           │
                                            │
15           Respondent.                    │

16

17

18           I am employed in the County of Napa, State of California.  I am over the age of 18 and

19   not a party to the within action.  My business address is at BUCHALTER NEMER, A

20   Professional Corporation, 1500 Railroad Avenue, St. Helena, CA 94574.

21           On the date set forth below, I served the foregoing document described as:

22   **NOTICE OF BRYANT FAMILY VINEYARD'S PETITION TO VACATE
     ARBITRATION AWARD**
23
     **PETITION TO VACATE ARBITRATION AWARD**
24
     **DECLARATION OF JAMES R. ROSE IN SUPPORT OF PETITION TO VACATE
25   ARBITRATION AWARD**

26   **[PROPOSED] ORDER**

27

28

BUCHALTER NEMER
A Professional Corporation
    Napa Valley

                                            1
                                    **PROOF OF SERVICE**

1   on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof

2   in a sealed envelope as follows:

3   Virginia Amaro
American Arbitration Associates
4   Manager of ADR Services
45 E. River Park Place W
5   Suite 308
Fresno, CA  93720
6   Email:  VirginiaAmaro@adr.org

7   Brian J. O'Connor, Esq.
Diepembrock & Cotter, LLP
8   1545 River Park Drive
Suite 201
9   Sacramento, CA  95815
Email:  BJO@diepenbrockcotter.com

10

11

12

13   ☑   **BY MAIL**   I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service.  The
14   correspondence will be deposited in an envelope with the United States Postal Service this day in the ordinary course of business for mailing to the address(es) shown above.  The envelope was
15   sealed and placed for collection and mailing with the United States Postal Service at St. Helena, California, following ordinary business practices.

16   ☑   **BY EMAIL**   On December  _10_ , 2015, I personally electronically served from my
17   electronic address jgleffe@buchalter.com in "PDF" format, the document(s) described above, to the individual stated above to her known email/electronic address as shown above.  The
18   transmission was reported as complete and without error.  (FRCP 5(b)(2)(E) and CRC §2.251, *et seq.*)

19

20   ☑   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on December  _10_ , 2015,
21   at St. Helena, California.

22   I declare that I am employed in the office of a member of the bar of this court at whose direction
23   the service was made.  Executed on December _10_, 2015, at St. Helena, California.

24

25

26   _____
JOLENE GLEFFE

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

**PROOF OF SERVICE**