BUCHALTER NEMER
A Professional Corporation
JAMES R. ROSE (SBN: 109726)
JAMES B. WRIGHT (SBN: 063241)
55 2nd Street, Ste. 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
Email:  jrose@buchalter.com
           jwright@buchalter.com

Attorneys for Petitioner
BRYANT VINEYARDS, LTD. dba
BRYANT FAMILY VINEYARD

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYANT VINEYARDS, LTD., a California corporation, dba BRYANT FAMILY VINEYARD,<br><br>Petitioner,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>Respondent. | CASE NO. 3:16-cv-00125-JST<br><br>**PETITIONER BRYANT VINEYARD, LTD.'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD**<br><br>**[MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JAMES R. ROSE IN SUPPORT THEREOF]**<br><br>**[F. R. Civ. P., Rule 15(a)(1)(B)]** |

Petitioner Bryant Vineyards, Ltd. dba Bryant Family Vineyard ("Bryant") alleges as follows:

### Introductory Allegation

1.      This is an action to vacate a contractual arbitration award pursuant to California Code of Civil Procedure § 1286.2(a)(6) based upon arbitrator bias and partiality in connection with a final arbitration award (the "Final Award").  The arbitrator prepared and AAA served the Final Award notwithstanding the arbitrator's undisclosed bias toward Bryant's counsel, Mr. Rose. The arbitrator's bias arose from an entirely different lawsuit in which the arbitrator was acting as a lawyer and an advocate for his client and was opposed in that lawsuit by Mr. Rose and his

clients.  The arbitrator's bias occurred during the pendency of the arbitration proceedings and before Bryant was served with his Final Award.

2.     The Final Award involves a dispute over an intrastate shipment by UPS of Bryant wine valued at approximately $130,000.  UPS took possession of the wine in St. Helena, California, but failed to deliver the missing wine to its San Diego, California destination.

## Jurisdiction and Venue

3.     Bryant is a small family owned winery located in the Napa Valley, which annually produces a limited quantity of premium wine.  Bryant Family Vineyard is a dba of Bryant Vineyards, Ltd., an entity organized and existing pursuant to the laws of the State of California with its principal place of business in St. Louis, Missouri.

4.     Bryant is informed and believes and alleges thereon that Respondent United Parcel Service, Inc. ("UPS") is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Atlanta, Georgia.

5.     This Court has removal jurisdiction pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446.  Venue of this action is based on 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Charging Allegations

6.     UPS requires parties which ship goods via UPS to agree to the terms and conditions of a UPS Tariff/Terms and Conditions of Service – United States (the "UPS Tariff").  A true and correct copy of the UPS Tariff, which Bryant is informed and believes and thereon alleges applies to the shipment of wine in this matter, is attached hereto as **Exhibit "A."**

7.     On November 4, 2013, Bryant delivered possession to UPS of nine pallets consisting of 642 cases of Bryant wine, included among which was one pallet containing 51 cases of wine.  UPS was to deliver that pallet from St. Helena to San Diego, California.  The UPS driver took possession of the nine pallets from Bryant at the Bryant winery in St. Helena.  UPS failed to deliver the one pallet containing 51 cases of wine to its intended destination in San Diego, California and the wine has disappeared.  As a bailee, UPS was strictly liable for loss of

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

2

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST**

BN 20128400V4

1   the missing wine.  California Civil Code § 2194; *Franklin v. Southern Pac. Co.*, 203 Cal. 680,

2   686-687 (1928); *BBD Transp. Co. v. Buller*, (1975) 49 Cal.App.3d 124, 128 (1975).

3       8.      GPS sensors on the UPS delivery truck show that it stopped after leaving the

4   Bryant winery long enough for someone to offload the missing pallet of wine.  However, the UPS

5   driver testified in the underlying arbitration proceedings that Bryant never loaded the missing

6   pallet of wine on his truck.  Directly contradicting his testimony, the UPS driver had informed the

7   Napa Sheriff's Department on two occasions that Bryant <u>had</u> loaded the wine on his truck.

8   Bryant's counsel in cross examination of the driver impeached the driver who admitted that he

9   had taken possession of the missing wine.  After UPS failed to deliver the ninth pallet to its

10  intended destination, Bryant submitted a claim to UPS for approximately $130,000 as the value of

11  the missing wine.  UPS denied Bryant's claim.

12      9.      The UPS Tariff requires that UPS and Bryant resolve all disputes by arbitration

13  through the American Arbitration Association ("AAA") and pursuant to the AAA Commercial

14  Arbitration Rules (the "AAA Rules").  A true and correct copy of what Bryant is informed and

15  believes and thereon alleges are the applicable AAA Rules is attached hereto as **Exhibit "B."**

16      10.     On or about August 4, 2014, based on the dispute over the missing wine, Bryant

17  commenced an arbitration proceeding with AAA titled *In the Matter of the Arbitration between*

18  *Bryant Family Vineyard, Claimant, and United Parcel Service, Respondent*, America Arbitration

19  Association, Commercial Arbitration Tribunal, Case No. 01-14-0001-1154.

20      11.     AAA thereafter designated attorney Richard Collier as the neutral arbitrator.  Mr.

21  Collier provided the parties' counsel, James Rose for Bryant and Bryan O'Connor for UPS, with

22  initial neutrality disclosures, which indicated no conflicts, bias or partiality.  Bryant and UPS

23  accepted Mr. Collier as the neutral AAA arbitrator.

24      12.     On April 10, 2015, Mr. Collier made an additional conflict disclosure to counsel

25  for the parties, namely that his law firm had represented and he would now represent Linda

26  McKenzie, the surviving spouse of her deceased husband, John Francis George, and the

27  stepmother of Mr. Rose's clients, the three daughters of the deceased, in a legal action titled

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST**

BN 20128400V4

*Estate of John Francis George III, Deceased,* Marin County Superior Court Case No. PR 1403357 (the "*Estate of George* matter"). A true and correct copy of Mr. Collier's April 10, 2015 email disclosure is attached hereto as **Exhibit "C."** Mr. Collier's client was contesting a testamentary devise which gave Ms. McKenzie the husband's life insurance proceeds and his three daughters the balance of his estate. Mr. Collier's client was seeking one-third of the estate on the basis that she was a disinherited spouse.

13. Mr. Collier assured the parties that he could and would be impartial in the UPS/Bryant arbitration, notwithstanding his handling of the *Estate of George* matter as counsel adverse to Mr. Rose. Based upon Mr. Collier's assurance that he would remain impartial, Bryant did not object to his continuing to act as the neutral arbitrator. However, Mr. Collier agreed that, if the *George Estate* matter became contentious or confrontational, Mr. Collier would recuse himself from the arbitration proceedings. Mr. Collier acceptance of those terms was consistent with his ongoing obligations under the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (the "Ethics Standards") to disclose conflicts of interest, bias and partiality if and when they arise during the arbitration proceedings.

14. After hearing testimony and taking evidence in the Bryant/UPS matter on July 21, 2015, Mr. Collier closed the arbitration hearings on August 4 and had 30 days under the AAA Rules to issue his award.

15. However, before AAA served Mr. Collier's award in the Bryant/UPS arbitration, the *George Estate* matter went to a JAMS mediation on Friday August 28, 2015 in San Francisco, California. The mediation started at 9:30 a.m. and continued until 8:15 p.m. that night. The parties settled at the end of the day and signed a settlement agreement.

16. On Monday, August 31 at 12:50 p.m., Mr. Collier sent Mr. Rose an angry email that begins "I write to you in great consternation" and which states that Mr. Collier's client believed that Mr. Rose's clients had been slandering her. A true and correct copy of Mr. Collier's August 31 email is attached hereto as **Exhibit "D."** Mr. Rose called Mr. Collier to discuss the email, whereupon Mr. Collier angrily complained that he and his client thought that Mr. Rose had

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST**

been "gloating" about the settlement at the JAMS offices on the evening of August 28. Mr. Rose attempted to explain that he and his clients were pleased to have settled a rancorous family dispute, and they were not "gloating" over the settlement. Mr. Collier seemed not to accept the explanation and advised that his client would not perform the settlement agreement unless additional terms were added.

17.     Bryant is informed and believes and alleges thereon that at some time before or during the August 28 mediation in the *George Estate* matter, Mr. Collier was no longer neutral regarding Mr. Rose and had a duty to disclose his bias in the UPS/Bryant arbitration.

18.     In the afternoon after Mr. Rose spoke to Mr. Collier on August 31, AAA emailed Mr. Collier's "Final Award" to Mr. Rose's office that afternoon. The Final Award gives Bryant "$0" on its claim against UPS. A true and correct copy of the Final Award is attached hereto as **Exhibit "E."**

19.     Although the Award is hand-dated "August 28," Messrs. Rose and Collier were in an all-day JAMS mediation on August 28 which started early that morning and ended late that night. To verify the date the Final Award was signed, Counsel for Bryant asked Mr. Collier and AAA for emails establishing the date and time Mr. Collier sent his Award to AAA. Neither Mr. Collier not AAA has responded. Bryant is informed and believes and alleges thereon that UPS made the same request of AAA and Mr. Collier and received the same non-response.

20.     California Code of Civil Procedure § 1281.85 provides that neutral arbitrators "shall comply with the ethics standards for arbitrators adopted by the Judicial Council pursuant to this section. … These standards shall be consistent with the standards established for arbitration in the judicial arbitration program and may expand but may not limit the disclosure and disqualification requirements established by this chapter."

21.     In compliance with Section 1281.85, the California Judicial Council adopted Ethics Standards, effective July 2002 and amended January 1, 2003 and thereafter, which provide generally that:

> An arbitrator's duty to disclose the matters described in subdivisions (d) and (e) of this standard is a continuing duty,

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD – CASE NO. 3:16-CV-00125-JST**

applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding. [Standard 7, amended effective July 1, 2014; emphasis supplied.]

22.     Ethics Standard 7provides that an "arbitrator must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial, including, but not limited to the following:

(d)(15) *Any other matter that*:

(A) Might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial;

(B) Leads the proposed arbitrator to believe there is a substantial doubt as to his or her capacity to be impartial, including, but not limited to, bias or prejudice toward a party, lawyer, or law firm in the arbitration; or

(C) Otherwise leads the arbitrator to believe that his or her disqualification will further the interests of justice."   [Italics in original.]

23.     AAA Rule R-18(a) also provides that "Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for: (i) partiality …"

## FIRST CLAIM FOR RELIEF
### (To Vacate Arbitration Award)

24.     Bryant incorporates by this reference each and every foregoing allegation as though set forth in full herein.

25.     Bryant is informed and believes and alleges thereon that the arbitrator's handling of the *George Estate* matter rendered him incapable of being impartial and unbiased in the Bryant/UPS arbitration proceedings.  Although his Final Award is dated August 28, Mr. Collier was in a thirteen (13) hour mediation on August 28, and his and AAA's refusal to verify the timing of the Final Award makes that date subject to question.

26.     By Monday, August 31, when Mr. Collier emailed Mr. Rose "in great consternation" and accused him later that morning of "gloating," Mr. Collier knew or should have known that he was no longer impartial, and he had a duty to advise the parties of that fact before

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST

BN 20128400V4

AAA served his Final Award later that day.  Whether he was actually biased or not, a reasonable person could entertain a doubt that he was biased, and on that standard he owed both parties a duty of disclosure.

27.     By permitting AAA to issue his Final Award after his angry tirade on August 31, Mr. Collier violated Code of Civil Procedure § 1286.2(a)(6)(A) and his award must be vacated.

28.     Bryant filed a Petition to Vacate and a Notice of Hearing on the Final Award in the Napa County Superior Court on December 10, 2015 and timely served the Petition and Notice on UPS's counsel that same day by mail and email.

29.     In response, UPS' counsel requested an extension of time to respond to the Petition, advising Mr. Rose that he only had ten (10) days to respond plus two days for email service.  Mr. Rose granted UPS an extension of time to respond.

30.     UPS filed a Notice of Removal to this Court on January 13, 2016.

WHEREFORE, Bryant prays for the following relief.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Bryant Family Vineyard prays for relief as follows:

1.  For an order vacating the Final Award and ordering a rehearing of Bryant's claim against UPS before a different and neutral arbitrator;

2.  For Bryant's costs of suit; and

3.  For such other relief as the Court deems just and proper.

DATED: February 11, 2016

BUCHALTER NEMER
A Professional Corporation


By:_____/s/ James B. Wright_____
          JAMES B. WRIGHT
       Attorneys for Petitioner
      BRYANT FAMILY VINEYARD

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST

BN 20128400V4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION AND MOTION TO VACATE ARBITRATION AWARD**

I.      **INTRODUCTION**

Neutral arbitrators have a duty to remain impartial and unbiased.  When they breach that duty, their awards <u>must</u> be vacated.  California Code of Civil Procedure § 1286.2(a)(6).  Here, the arbitrator breached his duty to remain impartial when contentious litigation for his client in another matter intervened during the pendency of the arbitration proceedings.

Because of Mr. Collier's angry outbursts over the *Estate of George* matter – in which he is an advocate, not a neutral – a reasonable person could entertain a doubt that Mr. Collier could be impartial in the Bryant/UPS matter.  Although there are limited grounds for vacating an arbitration award under California law, bias mandates that a reviewing Court vacate an award and order a rehearing before a neutral arbitrator.

II.     **DISCUSSION**

    A.      <u>**A Neutral Arbitrator Has An Ongoing Duty of Impartiality**</u>

A neutral arbitrator must "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." California Code of Civil Procedure § 1289.1(a).  AAA Rule R-18(a) provides that "Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for: (i) partiality …"

The duty to provide neutrality disclosures continues until the conclusion of the arbitration proceedings.  The California Judicial Council's Ethics Standards for Neutral Arbitrators in Contractual Arbitration (the "Ethics Standards") provide that:

> An arbitrator's duty to disclose the matters described in subdivisions (d) and (e) of this standard <u>is a continuing duty</u>, applying from service of the notice of the arbitrator's proposed nomination or appointment <u>until the conclusion of the arbitration proceeding</u>. [Ethics Standard 7, amended effective July 1, 2014; emphasis supplied.]

California Code of Civil Procedure § 1289.1(a)(2) requires disclosure of "Any matter required to be disclosed by the Judicial Council pursuant to this chapter." *See, Gray v. Chiu*, 212

8

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

Cal.App.4th 1355, 1364 (2013) ("*Gray*").  Ethics Standard 7 defines here what an "arbitrator must disclose ... including, but not limited to the following:

(d)(15) *Any other matter that*:

(A) <u>Might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial;</u>

(B) Leads the proposed arbitrator to believe there is a substantial doubt as to his or her capacity to be impartial, including, but not limited to, bias or prejudice toward a party, lawyer, or law firm in the arbitration; or

(C) <u>Otherwise leads the arbitrator to believe that his or her disqualification will further the interests of justice.</u>"   [Italics in original; underlining supplied.]

Mr. Collier had a duty to disclose his bias as a result of handling the *Estate of George* matter before serving his Final Award.

**B.**     **A Court *Shall* Vacate an Award for Arbitrator Bias or Partiality**

California Code of Civil Procedure § 1286.2(a)(6) provides that the Court "<u>shall</u> vacate the award if the Court determines any of the following: An arbitrator making the award ... (A) failed to disclose within the time required a ground for disqualification of which the arbitrator was then aware..."  Emphasis supplied.

Determining under Code of Civil Procedure § 1289.1(a) whether a reasonable person might doubt Mr. Collier's impartiality "involves an objective test that focuses on a reasonable person's perception of bias and does not require actual bias." *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP*, 201 Cal.App. 4th 1299, 1311 (2013) ("*Jeffer*") When an arbitrator violates his duty of neutrality and disclosure, the Court <u>must</u> vacate an arbitrator's award, even though there has been no showing of actual bias or prejudice. *Jeffer*, 219 Cal.App. 4th at 1311, citing *Haworth v. Superior Court*, 50 Cal.4th 372, 385–386 (2010) ("*Haworth*"); Code of Civil Procedure § 1286.2(a)(6).[1]

In *Jeffer*, the arbitrator, Judge Eli Chernow, failed to disclose that he had listed one of the

---

[1] "'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.'" *Haworth.* at p. 389.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

BN 20128400V4

1  attorneys in the arbitration as a reference on the Judge's resume ten years before he issued the

2  arbitration award.  Based on the reasonable person standard, the Court of Appeal in *Jeffer* found

3  that omission violated the arbitrator's neutrality disclosure obligations:

> 4  The question is not whether Judge Chernow actually was biased,
> but whether a reasonable person aware of the facts reasonably could
> 5  entertain a doubt that he could be impartial in this case. ( *Haworth*,
> *supra*, 50 Cal.4th at pp. 385–386, 112 Cal.Rptr.3d 853, 235 P.3d
> 6  152.) We conclude that the answer is yes. *Jeffer* at 1313.

7  Here, the evidence establishes that Mr. Collier's client was furious at a settlement reached

8  while Mr. Collier represented her in a mediation, and she refused to perform that agreement (and

9  to this day still has not performed).  Rose Decl. at ¶¶ 8-9.  Mr. Collier responded to her anger by

10  emailing Mr. Rose in consternation and engaging in an angry and accusatory phone call with Mr.

11  Rose.  As the California Supreme Court stated:  "'An impression of possible bias in the

12  arbitration context means that one could reasonably form a belief that an arbitrator was biased *for*

13  *or against a party for a particular reason*." *Haworth*, 50 Cal. 4th at 389; emphasis in original.

14  A reasonable person could conclude that Mr. Collier's representation adverse to Mr. Rose

15  in the *Estate of George* matter affected Mr. Collier's neutrality in the Bryant/UPS arbitration.  As

16  the California Supreme Court held in *Haworth*.  Whether Mr. Collier was actually biased is

17  irrelevant; it is enough that a reasonable person looking at the undisputed facts could "entertain a

18  doubt that he could be impartial in this case." *Haworth*, 50 Cal. 4th at 389.

19  By failing to disclose his bias, Mr. Collier deprived Bryant of its belief that a neutral

20  arbitrator had made an impartial decision not tainted by bias from another lawsuit in which

21  Bryant was not even a participant.  A reasonable person could conclude that the Final Award,

22  which AAA served after Mr. Collier's tirade, was tainted with Mr. Collier's bias toward Mr.

23  Rose.

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

10

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST**

BN 20128400V4

III.    **CONCLUSION**

     Petitioner Bryant Family Vineyard respectfully requests that the Court vacate Mr. Collier's Award and order the parties to a rehearing before a neutral arbitrator.

DATED:  February 11, 2016

BUCHALTER NEMER
A Professional Corporation


By:_____/s/ James B. Wright_____
                   JAMES B. WRIGHT
                   Attorneys for Petitioner
                   BRYANT FAMILY VINEYARD

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

BN 20128400V4

## DECLARATION OF JAMES R. ROSE IN SUPPORT OF PETITION AND
## MOTION TO VACATE ARBITRATION AWARD

James R. Rose declares as follows:

1.      I am a shareholder of Buchalter Nemer, counsel for Petitioner, and am an attorney at law licensed to practice before the Courts of the State of California. I am licensed to practice law in the Northern, Eastern and Central Districts of the Federal courts in the State of California. I am one of the attorneys of record for Bryant Family Vineyard ("Bryant") in the above-entitled action. I have personal knowledge of the matters stated herein, except for those matters set forth on my information and belief. As to those matters, I believe that my information and belief are true and correct. If called as a witness, I could and would testify competently to the matters set forth herein.

2.      In the arbitration proceedings between Bryant and UPS, I represented Bryant, Brian O'Connor represented UPS, and Richard Collier was the AAA designated arbitrator. At the outset of the proceedings, Mr. Collier declared to the parties that he had no disqualifying conflicts, bias or partiality. Bryant and UPS accepted Mr. Collier as the neutral AAA arbitrator.

3.      On April 10, 2015, Mr. Collier made an additional conflict disclosure, namely that his law firm, Cooper White and Cooper, had been (and he personally would henceforth be) representing Linda McKenzie, the surviving spouse of her deceased husband, John Francis George, in a legal action titled *Estate of John Francis George III, Deceased*, Marin County Superior Court Case No. PR 1403357 (the "*Estate of George* matter"). A true and correct copy of Mr. Collier's April 10, 2015 email disclosure is attached to Bryant's Amended Petition to Vacate as **Exhibit "C."**

4.      Ms. McKenzie was the stepmother of my clients, who were the three daughters of the deceased. Mr. Collier's client sought one-third of the estate on the basis that she was a disinherited spouse. My clients contended that her husband had devised her the proceeds of his life insurance policy which was a testamentary devise, she was therefore not a disinherited spouse, and she was entitled to nothing other than what her husband had provided for.

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST**

5.      In or around April 2015, Mr. Collier assured me that he could and would be impartial in the UPS/Bryant arbitration.  However, I told Mr. Collier that, if the *George Estate* matter became contentious or confrontational, he would have to recuse himself from the arbitration proceedings.  Mr. Collier agreed with those terms, which I understand is consistent with his ongoing obligations under the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (the "Ethics Standards") to disclose conflicts of interest, bias and partiality if and when they arise during an arbitration proceeding.  Based upon Mr. Collier's assurance that he would remain impartial, I did not object to his continuing to act as the neutral arbitrator.

6.      After hearing testimony and taking evidence in the Bryant/UPS matter on July 21, 2015, Mr. Collier closed the arbitration hearings on August 4 and had 30 days under the AAA Rules to issue his award.

7.      However, before AAA served Mr. Collier's award in the Bryant/UPS arbitration, the *George Estate* matter went to a JAMS mediation on Friday August 28, 2015 in San Francisco, California.  The mediation started at 9:30 a.m. and continued until 8:15 p.m. that night.  The mediation was rancorous.  For example, because JAMS put the parties in adjacent conference rooms, my clients and I could hear Ms. McKenzie screaming at Mr. Collier in the adjacent conference room over the course of the day.  Nevertheless, the parties settled at the end of the day and signed a settlement agreement.

8.      Three days later, on Monday, August 31 at 12:50 p.m., Mr. Collier sent me an angry email that begins "I write to you in great consternation" and which states that Mr. Collier's client believed that Mr. Rose's clients had been slandering her.  A true and correct copy of Mr. Collier's August 31 email is attached to Bryant's Amended Petition to Vacate as **Exhibit "D."** After receipt of his email, I called Mr. Collier to discuss the matter, whereupon Mr. Collier angrily complained that he and his client thought that I and my clients had been "gloating" about the settlement at the JAMS offices on the evening of August 28.  I told him that my clients and I were simply pleased to end what had been a rancorous dispute and that no one was gloating or showing him or his client any disrespect.

13

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

BN 20128400V4

9.      Mr. Collier appeared not to accept my explanation and responded that Ms. McKenzie would not perform the settlement agreement unless additional conditions were added which the parties had not discussed or negotiated the prior Friday. I told him that her refusal to perform was unacceptable because the parties had a signed settlement agreement. To this day, however, Ms. McKenzie has not performed her obligations under the settlement agreement.

10.     At some time before or during the August 28 mediation in the *George Estate* matter, Mr. Collier had become biased toward me. This bias is borne out by his email and my phone call with him on August 31, 2015. I believe that Mr. Collier had a duty to disclose that bias to me and to UPS's counsel before permitting AAA to serve his Final Award in the Bryant/UPS matter.

11.     On the afternoon of August 31, after I spoke to Mr. Collier, AAA emailed Mr. Collier's "Final Award" to my office. A true and correct copy of the Final Award is attached to Bryant's Amended Petition to Vacate as **Exhibit "E."** The Final Award gives Bryant "$0" on its claim against UPS.

12.     I was very surprised at that outcome, as I believed that Bryant had established in the arbitration proceedings facts that made Bryant strictly liable for the value of the missing wine, including that Bryant had loaded the missing wine onto the UPS truck, the truck driver's testimony to the contrary was soundly impeached by his admissions in comments (twice) to the Napa County Sheriff's office that he saw the wine loaded onto his truck, and this unrebutted evidence established that UPS was a bailee with strict liability for the missing wine. Mr. Collier's sole stated basis in the Final Award for deciding otherwise was that UPS had not scanned the boxes to be shipped, which "estopped" or "undercut" Bryant's contention that UPS took delivery of the missing wine. *See*, Final Award at pp. 2-3. The Final Award makes no reference to the Bryant employees' testimony about loading the missing wine on the UPS truck, or the UPS driver's admission that his statements to the Napa Sheriff were correct.

13.     Although Mr. Collier's Final Award is hand-dated "August 28," Mr. Collier and I were in an all-day JAMS mediation that day in San Francisco, California, which ran from at 9:30

14

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
NAPA VALLEY

BN 20128400V4

a.m. to 8:15 p.m.. Mr. Collier left after 8:15 p.m. and appeared to me to be as tired and exhausted as I felt after a very emotional day of mediating an acrimonious dispute among family members. Because of that, I do not believe that Mr. Collier prepared his Final Award after the mediation concluded on August 28. Nevertheless, to verify the date the Final Award was prepared and signed, I requested that Mr. Collier and AAA provide any emails which establish the date and time Mr. Collier sent his Award to AAA. Neither Mr. Collier not AAA responded. I understand that counsel for UPS made the same request of AAA and Mr. Collier and that neither responded.

14.     Although it is possible that Mr. Collier prepared his Final Award prior to the August 28 mediation, by the end of the day on August 28, three days before AAA served the Award on me and counsel for UPS, Mr. Collier was clearly no longer an unbiased neutral. His anger and emotions on August 31, which were left over from the August 28 mediation, were palpable. He was convinced that my clients and I had somehow disrespected him and his client on August in the *Estate of George* matter. I well and truly believe that he should have disclosed that fact to me, to counsel for UPS, and to AAA before AAA served his Final Award on the parties.

15.     Even if Mr. Collier felt that he was impartial, the appearance of impropriety here is overwhelming and challenges the notion of fairness demanded by the Code of Civil Procedure, the AAA Rules, and the Judicial Council's Ethics Standards for Neutral Arbitrators in Contractual Arbitration to which parties to an arbitration proceeding are rightly entitled.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 11th day of February 2016 at St. Helena, California.


_____
        /s/ James R. Rose
        JAMES R. ROSE

**BRYANT'S AMENDED PETITION AND MOTION TO VACATE ARBITRATION AWARD –
CASE NO. 3:16-CV-00125-JST**

# EXHIBIT A

# UPS® TARIFF/TERMS AND CONDITIONS OF SERVICE — UNITED STATES

Effective January 23, 2014

## CONTENTS

1. Introduction ............................... 1

2. Terms Used ............................. 1

3. Commodities Handled and Restrictions on Service ............ 3

   3.1 Items Not Accepted for Transportation ................. 3

   3.2 Maximum Values ............. 4

   3.3 Prohibited by Law ............ 5

   3.4 Alcoholic Beverages ........ 5

   3.5 Biological Materials ......... 6

   3.6 Firearms and Ammunition 6

   3.7 Food Transport; Assumption of Legal Responsibility..... 7

   3.8 Hazardous Materials Service ............................ 7

   3.9 Dry Ice .............................. 9

   3.10 Limited Quantity/ORM-D Packages ....................... 10

   3.11 Hazardous Waste, Mercury, and Mercury-Containing Waste .............................. 10

   3.12 Live Animals ................... 10

   3.13 Perishable Commodities. 10

   3.14 Pharmaceuticals ............. 10

   3.15 Portable Electronic Devices ................................... 10

   3.16 Tobacco Products .......... 11

4. Provisions for Export and Customs Clearance of International Shipments ......... 11

   4.1 Electronic Export Information .................... 13

   4.2 Certificate of Origin ........ 13

   4.3 UPS Paperless® Invoice Service ........................... 13

   4.4 Pre-Release Notification for Import Shipments .......... 14

   4.5 Record-Keeping ............. 14

5. UPS Import Control® ............. 14

6. Right of Inspection ............... 15

7. Refusal of Service ................. 15

8. Packaging ............................. 15

9. Use of UPS-Provided Materials and Services ......................... 16

10. Use of UPS Electronic Information Systems ............. 16

11. Timely Upload of PLD .......... 16

12. ZIP Code™/Postal Code Information ............................ 16

13. P.O. Boxes ........................... 16

14. UPS Customer Center and UPS Worldwide Express Freight® Center ................................. 16

15. Third-Party Retailer ............. 17

16. UPS Access Point™ ............. 17

17. Pickup Services–Scheduled.. 17

18. UPS On-Call Pickup® Service 18

19. Saturday Pickup; Processing Fee .......................................... 18

20. Drop Shipment........................ 19

21. Delivery ................................. 19

22. Residential Delivery .............. 19

23. Delivery Attempts; UPS Access Point™ .................................... 19

24. Hold for Pickup and Hold at Location Services .................. 19

25. Shipper Release .................... 20

26. UPS carbon neutral .............. 20

27. UPS Delivery Intercept® ........ 20

28. Delivery Change Requests .... 20

29. Correction of Addresses ........ 21

30. Saturday Delivery .................. 21

31. Delivery Confirmation Services ................................................ 21

    31.1 Delivery Confirmation (domestic only) ............... 22

    31.2 Delivery Confirmation Signature Required (domestic and international) ........................................ 22

    31.3 Delivery Confirmation Adult Signature Required (domestic and international) ........................................ 22

32. UPS Next Day Air® Early A.M.® Verbal Confirmation of Delivery ................................................ 22

33. Proof of Delivery (P.O.D.) ...... 22

34. Tracking/Tracing and Refund Request Charge .................... 22

35. Special Handling of Undeliverable Shipments; Refused Shipments Returned 23

36. C.O.D. Service ...................... 23

    36.1 Preparation and Listing of C.O.D. Packages ........... 23

    36.2 Responsibility for C.O.D.s 23

    36.3 Consignee's Checks in Payment of C.O.D.s ....... 23

    36.4 C.O.D. Package of $10,000 or More ........................... 24

    36.5 Acceptance of Personal Check ............................. 24

    36.6 C.O.D. Remittance Verification ..................... 24

    36.7 Restrictions .................... 24

    36.8 Charges for C.O.D. Collections ..................... 25

    36.9 Remittance of C.O.D.s ... 25

37. UPS Returns® Services ......... 25

38. UPS Rates ............................. 26

    38.1 Daily Rates, Standard List Rates, and Retail Rates . 26

    38.2 Letter Rates ................... 27

    38.3 Pak Rates ...................... 27

    38.4 UPS 10 KG Box® and UPS 25 KG Box® Rates.......... 27

    38.5 Private Express Statutes 27

    38.6 Rates for Large Packages; Large Package Surcharge 27

    38.7 Over Maximum Limits Charge ........................... 28

    38.8 Additional Handling Charge ........................................ 28

    38.9 Oversize Pallet Handling Surcharge ..................... 28

39. Fuel Surcharge...................... 28

40. Manual Processing Charges . 29

41.  Billing Options for Domestic Shipments ..............................29

42.  Billing Options for International Shipments ..............................29

43.  Bill My Account ......................29

44.  Disbursement Fee .................30

45.  Currency Conversion Rate ....30

46.  Missing/Invalid Account Number or Refusal Fee ........................30

47.  Shipping Charge Corrections; Audit ......................................30

48.  Payment of Charges..............30

　　48.1  Invoice Adjustment .........31

　　48.2  Alternative Payment Plans ....................................31

　　48.3  Late Payment Fee ..........34

49.  UPS Service Guarantee ........34

　　49.1  Conditions ......................35

　　49.2  Exclusions ......................36

50.  Claims and Legal Actions: Individual Binding Arbitration of Claims ...................................37

　　50.1  Filing of Claims for Loss or Damage to Property .......39

50.2  Acknowledgment of Claims for Loss or Damage to Property ........................40

50.3  Time Limit for Filing Claims for Loss or Damage to Property ........................40

50.4  Investigation of Claims for Loss or Damage to Property ....................................40

50.5  Salvage..........................41

50.6  Disposition of Claims for Loss or Damage to Property ....................................41

51.  Responsibility for Loss or Damage.................................42

　　51.1  Maximum Declared Values ........................................42

　　51.2  Liability Limits................43

　　51.3  Exclusions from Liability.44

52.  Shipper Indemnification.........45

53.  Data Protection ....................46

54.  Incorporation of Terms; Waiver; Future Changes ...................46

iii

# UPS® TARIFF/TERMS AND CONDITIONS OF SERVICE — UNITED STATES

Effective January 23, 2014

## 1.    Introduction

The following contains the general terms and conditions of contract under which United Parcel Service® ("UPS") is engaged in the transportation of shipments itself and jointly through interchange with its affiliates via the services described below.

The UPS Tariff/Terms and Conditions of Service ("Terms") are effective on the date set forth above and are subject to change without prior notice. The Terms are published periodically in printed form in the UPS Rate and Service Guide ("Service Guide") and electronically on the UPS website (ups.com®). The most current and controlling version of the Terms is published at www.ups.com/terms. In tendering a shipment for service, the shipper agrees that the version of the Terms and the applicable Service Guide in effect at the time of shipping will apply to the shipment and its transportation. The Terms apply to the following services:

–UPS Air Services

–UPS Hundredweight Service® Air Services

–UPS 3 Day Select®

–UPS Hundredweight Service® UPS 3 Day Select®

–UPS Ground

–UPS Ground with Freight Pricing

–UPS Hundredweight Service® Ground

–UPS Returns® Services

"UPS Air Services" includes:

–UPS Next Day Air® Early A.M.®

–UPS Next Day Air®

–UPS Next Day Air Saver®

–UPS 2nd Day Air A.M.®

–UPS 2nd Day Air®

"UPS Hundredweight Air Services" includes:

–UPS Hundredweight Service® UPS Next Day Air®

–UPS Hundredweight Service® UPS Next Day Air Saver®

–UPS Hundredweight Service® UPS 2nd Day Air A.M.®

–UPS Hundredweight Service® UPS 2nd Day Air®

The Terms apply to the following international services:

–UPS Worldwide Express Plus®

–UPS Worldwide Express NA1®

–UPS Worldwide Express®

–UPS Worldwide Express Freight®

–UPS Worldwide Saver®

–UPS Worldwide Expedited®

–UPS 3 Day Select® from Canada

–UPS Standard™ services

## 2.    Terms Used

**–Alaska and Hawaii Rates** refer to the effective UPS Rates for shipments originating in Alaska and Hawaii published in the effective Service Guide for Alaska and Hawaii, or Retail Rates established by UPS for the service selected by the shipper that apply to the shipper and the

1

package, and are in effect at the time of shipping, plus any additional charges or rates for nonstandard service, additional or nonstandard usage, and any other additional charges referenced within the Terms or the Service Guide, or those applicable additional rates set out in any customized contracts.

–"**Business day**" means Monday through Friday except the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Day after Thanksgiving Day, Christmas Day (December 25), and New Year's Eve.

–"**Charges**" means all applicable transportation and other charges including, but not limited to, all applicable accessorial charges, brokerage service fees, surcharges, additional handling charges and late payment fees.

–"**C.O.D.**" means for all purposes Collect on Delivery.

–"**Daily Rates**", "**Standard List Rates**", and "**Retail Rates**" refer to the effective UPS Rates for shipments originating in the 48 contiguous United States established by UPS for the service selected by the shipper that apply to the shipper and the package, and are in effect at the time of shipping, plus any additional charges or rates for nonstandard service, or additional or nonstandard usage, and any other additional charges referenced within the Terms or the Service Guide, or those applicable additional rates set out in any customized contracts.

–"**Delivery**" shall be deemed to include, but not be limited to any of the following: (1) delivery to the consignee or the consignee's actual or apparent agent or representative, or pursuant to consignee's instructions, (2) delivery to the address or location specified in the UPS Shipping System or, to any person present at such address, (3) delivery to an alternate address or location, including a UPS Access Point™, (4) delivery in accordance with trade custom or usage, (5) delivery pursuant to UPS's driver release procedures, (6) delivery pursuant to UPS's Shipper Release procedures, or (7) delivery otherwise permitted under the Terms.

–"**Drop Shipment**" means any shipment tendered pursuant to a written agreement or prior arrangement between UPS and a specific shipper that permits the shipper to tender quantities of individual packages directly to UPS at a UPS pre-approved designated location.

–"**Letter Rates**" refers to the UPS Rates applicable to shipments using UPS Express® Envelope or UPS Letter packaging containing correspondence, urgent documents, or electronic media, with an actual weight of eight (8) ounces or less. ("UPS Express® Envelope" and "UPS Letter" may be referred to interchangeably.)

–"**Package**" means any container and its contents, and includes a UPS Express® Envelope, as well as any article that may be handled without packaging if the handling thereof can be accomplished in a reasonably safe and practicable manner.

–"**Perishable Commodity**" refers to a perishable commodity or a commodity requiring protection from heat or cold, including, but not limited to, live animals, foods, dry ice, flowers, biological materials.

–"**Receiver**" or "**Consignee**" refers to the party to whom the shipment is being sent.

–"**Residential**" refers to a location that is a home, including a business operating out of a home.

–"**Shipper**" refers to the party contracting with UPS for services.

–"**Shipment**" means one or more packages, or one or more pallets in UPS Worldwide Express Freight service, shipped under a single Source Document or UPS Automated Shipping System entry to one receiver.

2

–"**Third-Party Retailers**" means locations of The UPS Store®, UPS Authorized Shipping Outlet locations, and UPS Alliance Locations (located within Office Depot® and Staples® retail locations).

–"**UPS Access Point™**" is an independently owned and operated business designated by UPS where a consignee or other recipient may, where available, receive a package Delivery. Where available, packages previously manifested in a UPS Shipping System may be tendered to a UPS Access Point™.

–"**UPS Automated Shipping System**" and "**Source Document.**" Source Document means a shipping document provided by UPS for the purpose of tendering a shipment to UPS for transportation. UPS Automated Shipping System means WorldShip®, UPS CampusShip®, UPS Internet Shipping, UPS Developer Kit, iShip®, or an approved UPS Ready® solution that meets UPS requirements at the time of shipment. The term "UPS Automated Shipping System" and "Source Document," individually or collectively, are sometimes referred to by the term "UPS Shipping System."

–"**UPS Customer Center**" means a UPS facility where shippers may tender packages to UPS for transportation, and a consignee or other recipient may receive a package Delivery.

–"**UPS Rates**" refers collectively to Daily Rates, Standard List Rates, Retail Rates, Alaska and Hawaii Rates, Letter Rates, Pak Rates, and UPS 10 KG Box® and UPS 25 KG Box® Rates.

–"**UPS Returns Services**" refers collectively to Authorized Return Services, Print Return Label, Electronic Return Label, and Print and Mail Return Label, 1 UPS Pickup Attempt, 3 UPS Pickup Attempts, UPS Returns® on the Web, UPS Returns® Flexible Access, and UPS Returns® Exchange.

–"**UPS Smart Label®**" as defined here and described in the *UPS Guide to Labeling* includes but is not limited to MAXICODE, postal code bar code, current UPS Routing Code, appropriate UPS service level icon, and UPS 1Z tracking number bar code.

–"**UPS Worldwide Express Freight® Center**" means a UPS facility where shippers may tender UPS Worldwide Express Freight pallets to UPS for transportation, and a consignee or other recipient may receive pallets.

## 3.    Commodities Handled and Restrictions on Service

UPS holds itself out to transport general commodities, as usually defined, subject to the following restrictions.

### 3.1    Items Not Accepted for Transportation

No service shall be rendered in the transportation of any of the prohibited articles listed in the applicable Service Guide or the Terms.

UPS does not accept for transportation, and shippers are prohibited from shipping:

–Articles of unusual value, which shall be deemed to include, but are not limited to:

- Any package with an actual value of more than $50,000;
- Any pallet with an actual value of more than $100,000;

3

- Coins, cash, currency, bonds, postage stamps, money orders, and negotiable instruments (such as drafts, bills of exchange, or promissory notes, but excluding checks);

- Unset precious stones, and industrial diamonds;

- Any article that contains more than 50 percent by weight of gold or platinum, or any combination thereof in raw form including, but not limited to, bullion, bars, or scraps of these metals.

—Hazardous waste, defined as a solid waste that meets any of the criteria of the hazardous waste as described in 40 C.F.R. § 261.3;

—Human remains, fetal remains, human body parts, or components thereof;

—Common fireworks;

—Packages containing marijuana, as that term is defined by 21 U.S.C. § 802(16), including marijuana intended for medicinal use;

—Packages with an actual weight of more than 150 pounds, or packages that when measured to determine the billable weight exceed 108 inches in length, or exceed a total of 165 inches in length and girth [(2 x width) + (2 x height)] combined, or in the case of import shipments, exceed 130 inches in length and girth [(2 x width) + (2 x height)] combined. If found in the UPS system, they are subject to one or more of the following additional charges: Over Maximum Weight, Over Maximum Length, or Over Maximum Size. Such charges apply in addition to all other applicable charges including, but not limited to, a Large Package Surcharge;

—UPS Worldwide Express Freight® pallets that exceed maximum size or weight restrictions (which vary by origin and destination) as set forth at http://www.ups.com/palletmaximums. If found in the UPS system, they are subject to an Oversize Pallet Handling Surcharge.

—Shipments tendered to a Third-Party Retailer containing any hazardous materials requiring shipping papers, firearms, or ammunition;

—UPS Returns® Services shipments containing hazardous materials (except for Limited Quantity/Other Regulated Materials Shipments ("ORM-D") Ground packages, as set forth below), or firearms, or requiring Delivery Confirmation Services; and

—Any other items prohibited by the Service Guide, or ups.com®.

Shippers are prohibited from shipping and UPS will not accept for transportation shipments containing articles that UPS is not authorized to accept or that UPS states in the Terms that it will not accept, including when such shipments are tendered for transportation at UPS Customer Centers, UPS Worldwide Express Freight® Centers, or any Third-Party Retailer.

UPS reserves the right, but is not required, to return to the shipper any shipment containing a prohibited article. Such return will be made solely at the shipper's risk and expense.

### 3.2   Maximum Values

UPS does not accept for service packages with values as set forth below:

—Any package with an actual value of more than $50,000;

4

—Packages with a value of $1000 or more shipped via a Third-Party Retailer or UPS Access Point™ if such packages were previously manifested in a UPS Shipping System prior to drop off at the Third-Party Retailer or UPS Access Point™ or billed using Bill My Account;

—Packages previously manifested in a UPS Shipping System and tendered to a UPS driver with a value of more than $1000, unless a UPS high-value shipment summary is obtained by the shipper or person tendering the package and signed by the driver upon tender of the package;

—Packages shipped to a UPS Access Point™ with a value of more than $5000.

—Domestic packages with a value of more than $1000 returned via Print Return Label, Print and Mail Return Label, Electronic Return Label, or 1 UPS Pickup Attempt Return Services;

—International shipments with a value of more than $1000 per package or pallet returned via UPS Print Return Label, UPS Print and Mail Return Label, Electronic Return Label, 1 UPS Pickup Attempt, or 3 UPS Pickup Attempt Return Services (including via UPS Returns on the Web) unless a UPS high-value shipment summary is obtained by the shipper or person tendering the shipment and signed by the driver upon tender of the shipment;

—International UPS Import Control® shipments with a value of more than $1000 per package or pallet unless a UPS high-value shipment summary is obtained by the shipper or person tendering the shipment and signed by the driver upon tender of the shipment;

—Packages with a value of more than $500 shipped via a UPS Drop Box;

—Prepaid Letters with a value of more than $100;

—Packages with a value of more than $999 when Shipper Release is selected;

—Packages with a C.O.D. amount in excess of $500 shipped via a UPS Drop Box;

—International shipments containing jewelry (not including costume jewelry) having a value of more than $500 per package or pallet;

—UPS Worldwide Express Freight® Service shipments having a value of more than $100,000 per pallet.

### 3.3   Prohibited by Law

No service shall be rendered by UPS in the transportation of any shipment that is prohibited by applicable law or regulation of any federal, state, provincial, or local government in the origin or destination country.  It is the responsibility of the shipper to ensure that a shipment tendered to UPS, and any UPS Shipping System entry that the shipper prepares for that shipment, does not violate any federal, state, provincial, or local laws or regulations applicable to the shipment.

### 3.4   Alcoholic Beverages

Packages containing alcoholic beverages (wine, beer, or spirits) are accepted for transportation only as a contractual service and only from shippers who are licensed and authorized under applicable laws to ship alcoholic beverages. To receive service for packages containing alcoholic beverages, the shipper must enter into an approved UPS agreement for the transportation of wine, beer, or spirits, as applicable.  For all packages containing alcoholic beverages, the shipper must use Delivery Confirmation Adult Signature Required service requesting an adult signature for each package containing alcoholic beverages, and must affix a special UPS alcoholic beverages label to each package.  For all U.S. inbound import shipments containing alcoholic beverages, the receiver must be licensed and authorized to receive the alcoholic beverages.

5

UPS does not accept packages containing beer or spirits for delivery to a consumer.  It is the responsibility of the shipper to ensure that a package tendered to UPS does not violate any federal, state, or local laws or regulations applicable to the package.

UPS reserves the right to dispose of any alcoholic beverages tendered for shipment which shippers are prohibited from shipping, which UPS is not authorized to accept, which UPS states that it will not accept, or which UPS has a right to refuse.  UPS reserves the right to discontinue service to any shipper for, among other reasons, tendering a package containing alcoholic beverages that does not comply with all applicable laws or the Terms.

### 3.5    Biological Materials

UPS accepts packages containing "Biological Substance, Category B" as defined in 49 C.F.R. § 174.134, which are prepared in accordance with all aspects of 49 C.F.R. § 173.199.

Transportation of other biological materials is limited, must be prearranged, and will only be provided under the following conditions:  the shipper has received prior written authorization from UPS for the specific package tendered; and the shipper requests service in accordance with the conditions set forth in the written authorization from UPS for the package tendered.  Any package containing biological materials shall be considered a Perishable Commodity.

### 3.6    Firearms and Ammunition

UPS accepts packages containing firearms or ammunition only pursuant to the following limitations.

### 3.6.1  Firearms

UPS accepts packages containing firearms (as defined by Title 18, Chapter 44, and Title 26, Chapter 53 of the United States Code) only (a) between licensed importers, licensed manufacturers, licensed dealers, and licensed collectors (as defined in Title 18, Chapter 44 of the United States Code), and government agencies; and (b) where not otherwise prohibited by federal, state, or local law from (i) an individual to a licensed importer, licensed manufacturer, licensed dealer or licensed collector; and (ii) from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to an individual.  The shipper shall comply with and shall ensure that each shipment containing firearms complies with all federal, state, and local laws applicable to the shipper, recipient, and package, including, without limitation, age restrictions.

–The shipper must use Delivery Confirmation Adult Signature Required service for each package containing a firearm (including handguns).  UPS, in its sole discretion, may require the shipper to select a UPS Next Day Air® Service for any package containing a firearm.  Handguns (as defined by 18 U.S.C. § 921) will be accepted for transportation only via UPS Next Day Air Services.

–Firearms (including handguns) are not accepted for transportation via UPS Drop Boxes or UPS Internet Shipping, in response to a request for UPS On-Call Pickup® service, or when presented for shipment at any Third-Party Retailer.  UPS Returns® Services are not available for packages containing firearms.

–Firearm parts, which do not constitute firearms as defined under federal law (including without limitation Title 18, Chapter 44, and Title 26, Chapter 53 of the United States Code), and which otherwise comply with federal, state, and local law, will be accepted for transportation.

–Firearms (including handguns) and firearm parts are not accepted for shipment internationally.

6

See www.ups.com/content/us/en/resources/ship/packaging/guidelines/firearms.html or contact UPS for more information.

### 3.6.2 Ammunition

UPS accepts ammunition for transportation where such ammunition constitutes "cartridges, small arms," as defined in 49 C.F.R. § 173.59. The shipper shall comply with and shall ensure that each shipment containing ammunition complies with all federal, state, and local laws applicable to the shipper, recipient, and package, including, without limitation, age restrictions.

--Ammunition will be transported only when packaged and labeled in compliance with 49 C.F.R. § 172 (Hazardous Materials), and must be shipped in accordance with the UPS Guide for Shipping Ground and Air Hazardous Materials. Ammunition may not be shipped in the same package as a firearm.

--To meet the exception for Limited Quantity/ORM-D, ammunition can be shipped via UPS Ground only within the 48 contiguous United States or UPS Ground Intra-Oahu and Intra-Alaska. All other allowable ammunition shipments are accepted only on a contractual basis, and must be prepared under the rules for a fully regulated hazardous material. See further details in section 3.10 ("Limited Quantity/ORM-D Packages").

--Ammunition is not accepted for shipment internationally.

See www.ups.com/content/us/en/resources/ship/packaging/guidelines/firearms.html or contact UPS for more information.

### 3.7    Food Transport; Assumption of Legal Responsibility

Shipments containing "food," as defined in section 201(f) of the Federal Food, Drug, and Cosmetic Act, will be accepted for transportation only according to the following terms. Shipper assumes all responsibility with respect to establishing and maintaining all records required under 21 C.F.R. Part 1 Subpart J §§ 1.326-1.363. In so doing, shipper assumes the legal responsibility under 21 C.F.R. § 1.363 for establishing and maintaining records that would otherwise be required to be maintained by UPS. Shipper agrees its records will comply with 21 C.F.R. § 1.352 and shall identify the immediate recipient of the transported food; the origin and destination points of shipment; the date the shipment is received and the date released; the number of packages shipped; a description of the freight describing the type of food received and released; and the route of movement. Shipper agrees expressly to make all records required by 21 C.F.R. § 1.352 available to FDA as required by 21 C.F.R. § 1.361. Shipper commits, and recognizes that it has the responsibility, to ensure that all such records are maintained consistent with the record retention requirements provided in 21 C.F.R. § 1.360 and the record availability requirements provided in 21 C.F.R. § 1.363. Shipper agrees that within 45 days of the date of shipment, Shipper will obtain or request from UPS any information needed from UPS to satisfy Shipper's responsibility to establish and maintain records. Shipper recognizes that the foregoing obligations with respect to establishing and maintaining records cannot be terminated. Shipper expressly agrees to immediately assume responsibility to establish and maintain records as provided in this paragraph, regardless of any FDA-designated compliance date for any provision of 21 C.F.R. Part 1 Subpart J.

### 3.8    Hazardous Materials Service

Hazardous Materials, defined as those materials regulated under Title 49 of the Code of Federal Regulations (49 C.F.R.) (excluding Limited Quantity/Other Regulated Materials Shipments ("ORM-D") Ground packages, as referenced below), and Dangerous Goods, defined as those

materials regulated by the International Civil Aviation Organization (ICAO) and published in the International Air Transport Association (IATA) Dangerous Goods Regulations (collectively referred to as "Hazardous Materials," or "Dangerous Goods," or "International Dangerous Goods"), are accepted for transportation only as a contractual service and in accordance with the UPS Guide for Shipping Ground and Air Hazardous Materials, or the UPS Guide for Shipping International Dangerous Goods.  To receive Hazardous Materials or Dangerous Goods service, the shipper must sign and agree to the provisions set forth in an approved UPS agreement relating specifically to the transportation of Hazardous Materials, Dangerous Goods, or International Dangerous Goods ("Hazardous Materials Agreement").  Contact UPS for specific information, including a list of "Common Items That May Be Classified as Hazardous Materials."

An additional charge will be assessed for each Hazardous Materials shipment.  UPS may also assess an additional surcharge for packages or pallets containing certain types of Hazardous Material.  Applicable surcharges are described at ups.com.

It is the shipper's responsibility to determine if a shipment contains a Hazardous Material and to properly classify, label, mark, and package it in accordance with applicable governmental regulations.  When required, the shipper is responsible for ensuring that all of its employees involved in the preparation of Hazardous Materials for transport are properly trained, tested, and certified in accordance with 49 C.F.R. Part 172.700 through 172.704, or with IATA (Section 1.5) and for ensuring that a program exists for the retraining, testing, and certification as required by these rules.

All packaging used by the shipper for the transportation of Hazardous Materials, when required by regulation, must pass UN performance testing in accordance with 49 C.F.R. Part 178.602 through 178.609 or IATA (Section 6.0).

The shipper must use a software system, such as the most current version of WorldShip® that is acceptable to UPS for the preparation of documents for shipping Hazardous Materials, or an alternative method determined by UPS in its reasonable discretion to perform the same functions.  UPS will provide shippers, upon request, a list of vendors who provide acceptable software systems.

UPS reserves the right to refuse to accept, to return, or to dispose of, in compliance with applicable laws and regulations, any Hazardous Material that it determines not to have been prepared in accordance with the UPS Guide for Shipping Ground and Air Hazardous Materials, the UPS Guide for Shipping International Dangerous Goods, and all applicable governmental laws and regulations.  The shipper agrees to reimburse UPS for any costs or expenses incurred as a result of any improperly packed or prepared Hazardous Materials which shipper tenders to UPS.  In addition, the shipper agrees to reimburse UPS for any costs or expenses incurred by UPS if Hazardous Materials tendered by the shipper are refused by the shipper upon return or cannot otherwise be delivered for any reason including, but not limited to, wrong delivery address or refusal of receiver to accept delivery.

UPS reserves the right, in its sole discretion and without prior notice to the shipper, to dispose of any international shipment containing Dangerous Goods refused by the receiver or which for any other reason cannot be delivered.  Shipper shall be responsible for all disposal fees.

The shipper agrees to indemnify, defend, and hold harmless UPS, its parent corporation, and affiliated companies, their officers, directors, employees, agents, and their successors and assigns, from all claims, demands, expenses (including reasonable attorney's and consultants' fees), liabilities, causes of action, enforcement procedures, and suits of any kind or nature brought by a governmental agency or any other person or entity arising from or relating to the transportation of a Hazardous Materials shipment, from the shipper's breach of the Hazardous

Materials Agreement or the Terms, or from the shipper's non-compliance with governmental laws or regulations applicable to the transportation of Hazardous Materials whether such action is brought by a governmental agency or other person or entity. Under no circumstances shall UPS be liable for special, incidental, or consequential damages arising from the transportation of a Hazardous Materials shipment.

Pursuant to 49 C.F.R. Part 173.30, in the event the shipper loads any UPS vehicle, the shipper agrees to segregate Hazardous Materials in accordance with 49 C.F.R. Part 177.848 and properly secure Hazardous Materials in accordance with 49 C.F.R. Part 177.834.

UPS does not accept Hazardous Materials in any amounts that require placarding under 49 C.F.R. Part 172, Subpart F. The shipper agrees not to tender Hazardous Materials to UPS in any amount for a single vehicle that would require placarding in accordance with 49 C.F.R. Part 172, Subpart F.

UPS reserves the right to discontinue or terminate service immediately with respect to the transportation of Hazardous Materials if the shipper fails to comply with any provisions of the Terms, or any applicable government regulations (including Limited Quantity/ORM-D shipments that are tendered without the proper shipping documentation). If a shipper tenders an undeclared Hazardous Materials shipment to UPS, UPS shall not be liable for the shipment in the event of loss, damage, delay, or misdelivery, nor shall UPS be liable for any special, incidental, or consequential damages.

If the shipper ships Hazardous Materials from more than one location, and the shipper fails to comply with any provisions of the Terms, the Hazardous Materials Agreement, or any governmental regulations, UPS may, in its sole discretion, terminate all of the shipper's shipment locations or limit such termination to those locations where the failure to comply occurred.

Shippers are prohibited from shipping and UPS will not accept for transportation shipments containing any Hazardous Materials requiring shipping papers (defined as those materials regulated under Title 49 of the Code of Federal Regulations) or Dangerous Goods requiring Shipper's Declaration for Dangerous Goods documents, when such shipments are presented for shipment at UPS Customer Centers, or Third-Party Retailers. Hazardous Materials requiring shipping papers cannot be picked up via UPS On-Call Pickup® service, or retrieved via any UPS Returns® Service, except as a contractual service.

Additional terms applicable to the shipment of Hazardous Materials are set forth in the UPS Guide for Shipping Ground and Air Hazardous Materials, and the UPS Guide for Shipping International Dangerous Goods, the terms of which are each incorporated here by this reference and available at http://www.ups.com/content/us/en/resources/ship/hazardous.

### 3.9   Dry Ice

Packages containing dry ice (carbon dioxide, solid) as a refrigerant, but no other Hazardous Materials, are accepted for transportation within the United States via UPS Ground and UPS Air Services (provided such packages are prepared in accordance with all applicable governmental regulations) without a Hazardous Materials Agreement. Packages containing Hazardous Materials that use dry ice (carbon dioxide, solid) as a refrigerant are accepted for transportation within the United States via UPS Ground and Air Services only as a contractual service. Any package containing dry ice will be considered a Perishable Commodity. Packages containing dry ice may be tendered for shipment at locations of The UPS Store®, where such services are available. A contract is required for all international shipments of dry ice.

### 3.10   Limited Quantity/ORM-D Packages

Limited Quantity/ORM-D packages are accepted for transportation without Hazardous Materials shipping papers and without a contract, only within the 48 contiguous United States via UPS Ground and UPS Hundredweight Service®, and via UPS Standard to Canada and UPS Ground Intra-Alaska and Intra-Oahu services, when properly classified, packaged and marked, provided the shipper has reviewed the required checklist and service restrictions with a UPS representative.   Limited Quantity/ORM-D packages shipped via UPS Air Services and UPS 3 Day Select® within the United States and Puerto Rico are accepted for transportation on a contractual basis only.   Limited Quantity/ORM-D packages containing ammunition are not accepted for shipment internationally.

### 3.11   Hazardous Waste, Mercury, and Mercury-Containing Waste

Packages containing hazardous waste, defined as a solid waste that meets any of the criteria of hazardous waste as described in 40 C.F.R. § 261.3, are not accepted for transportation.

UPS's acceptance for transportation of any elemental mercury, mercury-containing material, or used mercury-containing device (including, but not limited to, medical devices, spent fluorescent lamps, thermostats, or thermometers) is limited, must be prearranged, and will only be provided pursuant to prior written authorization from UPS upon satisfaction of certain requirements including appropriate packaging and financial assurances.

### 3.12   Live Animals

UPS provides service on a limited basis for some types of live animal shipments.   (The term "animal" as used here refers to anything living, except plants.) Live animals may be shipped only pursuant to the restrictions and conditions set forth on ups.com regarding Shipping Live Animals. A live animal shipment will be considered a Perishable Commodity. Access http://www.ups.com/content/us/en/resources/ship/packaging/guidelines/animals.html or contact UPS for information regarding shipping live animals.

### 3.13   Perishable Commodities

UPS does not provide a protective service for the transportation of Perishable Commodities. Such commodities will be accepted for transportation solely at the shipper's risk for any damage arising from the perishable nature of the item.   Shippers shall not file claims for, and UPS shall not be liable to shippers or any third parties for, any damage arising from the transportation of Perishable Commodities, regardless of whether the shipment is delivered pursuant to an applicable UPS Service Guarantee or is delayed in transit.   UPS reserves the right to dispose of any shipment in the UPS system containing a Perishable Commodity that UPS deems in its sole discretion to be of no value, unsafe or unsanitary.

### 3.14   Pharmaceuticals

The shipper shall comply with and shall ensure that each shipment containing pharmaceutical products complies with all applicable federal, state, provincial, and local laws and regulations governing the dispensing, shipment or tender of shipment of pharmaceutical products.

### 3.15   Portable Electronic Devices

UPS transports shipments containing radio frequency identification devices (RFID), ultrawideband devices (UWB), and other portable electronic devices (PED) only when such devices are in an inactivated state or otherwise in compliance with applicable law including 14 C.F.R. § 91.21, 14 C.F.R. § 121.306, or 47 C.F.R. § 15.521(a).

### 3.16   Tobacco Products

Shipments containing tobacco or tobacco products, as those terms are variously defined under applicable state law ("Tobacco Product Shipments"), are accepted for transportation only from shippers who are licensed and authorized to ship tobacco and tobacco products pursuant to applicable laws.  UPS does not provide pick-up service from any person or entity included in the Bureau of Alcohol, Tobacco, Firearms and Explosives PACT Act – Non-Compliant List.  Tobacco Product Shipments shipped to a consumer will only be accepted for transportation as a contractual service.  However, because UPS prohibits shipments of cigarettes to consumers under any circumstances, UPS does not offer a contractual service for the delivery of cigarettes to consumers.  To receive service for Tobacco Product Shipments shipped to a consumer, the shipper must sign and agree to the provisions set forth in an approved UPS agreement for the transportation of tobacco products.  For all other service for Tobacco Product Shipments, the receiver must be licensed and authorized to receive tobacco or tobacco products pursuant to all applicable federal, state, provincial, or local laws or regulations, and the shipment must conform to the terms, conditions, restrictions, and prohibitions set forth at www.ups.com/tobacco at the time of shipping.  It is the responsibility of the shipper to ensure that a shipment tendered to UPS, including a Tobacco Product Shipment, does not violate any federal, state, provincial, or local laws or regulations applicable to the shipment.

UPS reserves the right to refuse to accept, transport, or deliver any Tobacco Product Shipment that UPS, in its sole discretion, determines does not comply with UPS requirements for the shipment or any applicable law or regulation, and to discontinue any or all service to any shipper for, among other reasons, tendering such a shipment.  UPS reserves the right to dispose of any Tobacco Product Shipment that shippers are prohibited from shipping, that UPS is not authorized to accept, that UPS states that it will not accept, or that UPS has a right to refuse.

## 4.   Provisions for Export and Customs Clearance of International Shipments

The shipper (or the party tendering an international shipment to UPS for service, referred to for purposes of this Section 4 as "shipper") is responsible for compliance with all applicable U.S. export control requirements, and must provide UPS with all documentation and information required by the laws of the origin and destination countries for export and import of shipments (i.e., for export and customs clearance).  The shipper is responsible for determining export and import licensing or permitting requirements for a shipment, obtaining any required licenses and permits, and ensuring that the consignee is authorized by the laws of the origin and destination countries to receive the shipment.  The shipper must regularly review its import and export transactions and immediately notify UPS of any incorrect or incomplete information provided, including information filed with, or otherwise transmitted (whether in writing or electronically) to, a U.S. or other governmental agency.  By tendering an international shipment for service and providing UPS with documentation (including any Source Documents), the shipper certifies that the documentation includes all required licenses and permits, that the statements in that documentation and any other information that the shipper provides to UPS relating to exportation and importation are complete, true, correct, and in compliance with the laws of the origin and destination countries, and that the consignee is authorized by the laws of the origin and destination countries to receive the shipment.  Furthermore, the shipper understands that civil and criminal penalties including seizure and forfeiture, may be imposed for failing to provide UPS with all required documentation, licenses, permits, statements, and information, for making inaccurate, false, or fraudulent statements, or for violating U.S. or other country laws regulating exports or imports (see, e.g., 13 U.S.C. § 305; 18 U.S.C. §§ 545, 554 and 1001; 19 U.S.C. §§ 1595a and 1592; 22 U.S.C. § 401; and Subchapter C of 15 C.F.R. (i.e., The Export Administration Regulations)).

11

When an international shipment is tendered to UPS, UPS is thereby appointed as the agent for performance of customs clearance in the destination country to the extent allowed by law.  The shipper shall provide all Powers of Attorney and other authorizations required by applicable law for UPS to serve as the shipper's agent to perform customs clearance in the destination country. UPS is specified as the nominal consignee for the purpose of designating a customs broker to perform customs clearance.  Local authorities may require documentation confirming that UPS has been designated as the nominal consignee.

Fines, penalties, liquidated damages, storage charges, or other expenses incurred as a result of an action by U.S. Customs and Border Protection (or any other U.S. or other country's government agency regulating imports or exports), or as a result of the failure of the shipper or consignee to provide complete, true, and correct documentation, statements, or information required by the laws of the origin and destination countries (including the failure to obtain a required license or permit) will be charged to the shipper or consignee along with any applicable duties, fees, or taxes, and any applicable late payment fees assessed by UPS. Unless a written agreement between UPS and the shipper specifies otherwise, UPS reserves the right in its sole discretion to charge the shipper or consignee for any such fines, penalties, liquidated damages, storage charges, expenses, duties, fees, taxes, or late payment fees. Regardless of any such written agreement specifying otherwise, in the event of non-payment by the consignee, the shipper is liable for all charges.

The shipper agrees to indemnify, defend, and hold harmless UPS, its parent corporation, and affiliated companies, their officers, directors, employees, agents, and their successors and assigns, from any and all claims, demands, expenses, or liabilities including, but not limited to, fines, penalties, liquidated damages, storage charges, duties, fees, taxes, late payment fees, or other money due, arising from the transportation, importation, exportation, or customs clearance of shipments on behalf of the shipper, or arising from the shipper's noncompliance with the laws of the origin and destination countries, or UPS requirements applicable to the shipment.

UPS provides routine customs clearance through UPS Supply Chain Solutions® brokerage offices designated by UPS for handling customs clearance of shipments at no additional charge, except for UPS Standard™ to and from Canada shipments, for which a brokerage service charge applies.  Other UPS Supply Chain Solutions customs brokerage offices charge fees for the clearance of packages and freight.  For UPS Standard to Mexico, customs clearance by UPS Supply Chain Solutions® is required.  Failure to do so will result in packages automatically returned to shipper.

Additional charges may apply for complex customs clearance procedures, which include, but are not limited to, the following:

—Clearance procedures involving a government agency other than U.S. Customs and Border Protection;

—Customs Bonds;

—Drawbacks;

—Formal entries involving more than three tariff lines;

—Live Entries;

—Country of Origin Marking; or

—Temporary Import Bonds (T.I.B.).

12

UPS is under no obligation, unless the customer requests in writing and UPS agrees in writing, to undertake any pre- or post-importation action including, but not limited to, obtaining binding rulings, advising of liquidations, filing protests, or filing petitions for relief.

UPS may prepay duties, fees, or taxes on behalf of the payer. For importation into the United States, a fee will be assessed and billed to the importer. A fee may also apply for shipments to other countries.

For any claims arising from import, export or customs clearance activities, the liability of UPS (including UPS Supply Chain Solutions) shall be limited to the lesser of (i) $50 per entry, filing, or transaction; or (ii) the amount of fees paid to UPS for such entry, filing, or transaction.

### 4.1    Electronic Export Information

If Electronic Export Information (EEI) is required to be filed through the Automated Export System (AES) under the Foreign Trade Regulations of the U.S. Bureau of the Census ("Census") (i.e., Part 30, 15 C.F.R.), and the shipper has not filed the EEI and provided an Internal Transaction Number (ITN) to UPS to confirm that an EEI transaction was submitted to Census by the shipper accepted and is on file in the AES, UPS will electronically file the required EEI on behalf of the shipper, provided that all information required to file the EEI is supplied by the shipper in the UPS Shipping System or other export documentation and UPS has received proper authorization or a Power of Attorney from the shipper to complete and file the EEI. A processing fee will be assessed and billed to the shipper. The shipper is solely responsible for determining whether EEI is required to be filed through the AES for its shipment and for ensuring that the EEI is accurately and timely filed, whether by the shipper or by UPS acting as the filing agent on behalf of the shipper.

### 4.2    Certificate of Origin

UPS may, based solely on information that the shipper furnishes, prepare a Certificate of Origin for goods manufactured and originating within the United States on behalf of the shipper when one is required but not included with the export documents provided by the shipper. When authorizing UPS to prepare a Certificate of Origin, the shipper certifies that the information it provides to UPS is complete, true, and correct and that the completed Certificate of Origin complies with the laws of each country where a claim will be made that the goods are manufactured and originate in the United States. A processing fee will be assessed and billed to the shipper.

### 4.3    UPS Paperless® Invoice Service

A shipper must register with UPS in advance of shipping to use UPS Paperless Invoice service, where such services are available. By using UPS Paperless Invoice service, the shipper authorizes UPS to use the shipper's letterhead and electronic signature to prepare true, correct, and paperless commercial invoices that reflect, in all material respects, the shipper's sale transactions of merchandise to its buyers (i.e., the "Sold To" Parties) necessary to expedite in accordance with law the export and customs clearance of international shipments. The shipper shall provide to UPS in advance all required information including, but not limited to, the true and accurate price at which the merchandise was sold to the "Sold To" Party, any required additions to customs value (e.g., dutiable commissions, royalty/license fees, assists, packing costs, and proceeds of subsequent sales), the currency of the sale, country of origin, terms of sale, the quantities, ultimate consignee, and a complete commercial description of the merchandise. By using the service, shipper represents and certifies that any paperless commercial invoice that UPS prepares is true and accurate, which means that it is, in all material respects, an electronic copy of the same commercial invoice provided to the buyer. The shipper shall have an

affirmative, non-delegable duty to disclose to UPS any and all required commercial invoice information, and to ensure its accuracy and completeness. The shipper must provide timely upload of PLD to use UPS Paperless Invoice service.

### 4.4    Pre-Release Notification for Import Shipments

A shipper or consignee may request that UPS notify the consignee prior to submission of a U.S. import shipment to U.S. Customs and Border Protection so that the importer may validate the classification, valuation, or other import information. An additional fee applies for this service and will be billed to the importer or to the shipper when the shipper is selected as the payer of the duties and taxes for the shipment.

### 4.5    Record-Keeping

The shipper agrees and consents that UPS may preserve a record of the carriage for an international shipment using means other than producing a copy of the air waybill. The shipper has a duty to and is solely liable for maintaining all records as required under the export and customs or other laws of the origin and destination countries, unless otherwise agreed to in writing. UPS assumes no responsibility to act as a record-keeper or record-keeping agent for the shipper.

## 5.    UPS Import Control®

UPS Import Control service allows a shipper to process an import shipment, including commercial invoice. Where available, a shipper may use UPS Import Control service to create a Print Import Label, Electronic Import Label, or Print and Mail Import Label to provide to the sender or party tendering the shipment to UPS, or a shipper may request 1 UPS Pickup Attempt or 3 UPS Pickup Attempts to request that UPS make pickup attempts to retrieve import shipments from a sender's address. 3 UPS Pickup Attempts is not available for UPS Worldwide Express Freight®. UPS Import Control is available only in countries where UPS pickup services are available. An additional charge will be assessed for each UPS Import Control unique label.

Shipments containing certain items are prohibited from being shipped and are not accepted by UPS for UPS Import Control® service including, but not limited to, Hazardous Materials shipments requiring shipping papers, firearms, or shipments requiring Delivery Confirmation Services. C.O.D. service is not available for UPS Import Control shipments.

The maximum actual or declared value for each UPS Import Control shipment is $50,000 per package and $100,000 per pallet, provided that, for any UPS Import Control package or pallet with an actual or declared value in excess of $1000, the shipper must ensure that a UPS high-value shipment summary is generated and signed by the UPS driver upon tender of the shipment to UPS. If no high-value shipment summary is obtained and signed, the maximum actual or declared value of each such package or pallet is limited to $1000.

Notwithstanding anything herein to the contrary, for all UPS Import Control shipments tendered to UPS for export from the U.S., that transit the U.S., or that contain U.S.-origin goods, the sender or tendering party is the exporter for purposes of the Export Administration Regulations ("EAR"), and it shall be responsible for determining licensing authority (license, license exception, or NLR) and obtaining the appropriate license or other authorization as provided in Section 4 (Provisions for Export and Customs Clearance of International Shipments). In no event shall a party arranging for UPS Import Control service provide a writing assuming responsibility for determining licensing requirements and obtaining license authority for any UPS Import Control shipment to the tendering party. UPS does not agree to serve as the exporter for purposes of the EAR.

14

**6.    Right of Inspection**

UPS reserves the right in its sole discretion to open and inspect any shipment tendered to it for transportation, but is not required to do so.

**7.    Refusal of Service**

UPS reserves the right to refuse to provide service, among other reasons, for any shipment which by reason of the dangerous or other character of its contents may, in the sole judgment of UPS, soil, taint or otherwise damage other shipments or UPS's equipment, or which is improperly or insecurely packed or wrapped, as determined by UPS in its sole judgment.

Before accepting any shipment, UPS reserves the right to require sufficient verification, as determined by UPS in its sole discretion, of the shipper's name and address, or any other information necessary to accept the shipment for service. UPS reserves the right to refuse to provide service for any shipment or to or from any location, or to provide alternative service arrangements, or to intercept, hold or return any shipment when, among other reasons, UPS, in its sole discretion, determines that it is unsafe or economically or operationally impracticable to provide service, that its services are being used in violation of federal, state, or local law, or for fraudulent purposes, or when the account of the person or entity responsible for payment is not in good standing.

**8.    Packaging**

It is the responsibility of the shipper to ensure that proper packaging is used and that contents are adequately and securely packed, wrapped, and cushioned for transportation. Shipments must be so packed or wrapped as to meet UPS's published standards related thereto set forth in the Service Guide, or on ups.com, and as to pass tests set forth in the International Safe Transit Association ("ISTA") Procedure 3A, Procedure for Testing Packaged Products, published by ISTA. In addition, any tested product must be free from damage and the packaging must afford reasonable protection as determined by UPS in its sole judgment.

Shipments containing goods of high value or high risk, including without limitation jewelry, pharmaceuticals, computers, hand-held electronic devices, mobile telephones, and electronic components of these, must not have labels, customized shipping labels (including as created in a UPS Automated Shipping System), markings, logos, or other written notice of contents contained within the package.

The use of UPS-provided packaging is not a guarantee that an item is sufficiently packaged for transportation. UPS does not provide special handling for shipments with "Fragile," orientation markings (e.g., "UP" arrows or "This End Up" markings), or any other similar such markings.

When shipping media of any type containing sensitive personal information (such as personal financial or health information), it is recommended that the shipper retain a copy of the data and secure the data on the media through encryption or other technological means. UPS is not liable or responsible for loss of, damage to, or irretrievability of data stored on media of any type, or for loss of information, including without limitation personal, health or financial information. For the shipment of electronic media, or for breakable items, see the packaging guidelines located at ups.com. The guidelines advise against the use of UPS Express® Envelopes, UPS Express® Pak, or Express Pad Paks to ship sensitive personal information or breakable items.

UPS Worldwide Express Freight® shipments must be palletized, stackable, able to be lifted by forklift, and shrink-wrapped or banded to a skid. Shipper must ensure that pallets and packaging comply with all applicable laws and regulations of the origin and destination country.

15

**9.     Use of UPS-Provided Materials and Services**

UPS-provided materials including, but not limited to, packaging materials and supplies, envelopes, labels, label printers, shipping documents, publications and products are provided solely for the use of UPS shippers to obtain UPS services on their behalf and to interact with UPS.  Any other use of such UPS-provided materials is strictly prohibited.

UPS Express® Envelopes, UPS Express® Pak, Express Boxes, Express Tubes, UPS 10 KG Box® and UPS 25 KG Box® may not be used for UPS Ground, UPS Standard™, UPS 3 Day Select®, or UPS Worldwide Expedited® shipments.

Under no circumstances may a shipper sell any UPS-provided materials, products, or services to any third party without prior written authorization from UPS.

A weekly charge applies for use of UPS-provided thermal label printers.

**10.     Use of UPS Electronic Information Systems**

Use of UPS electronic information systems to which shippers are granted access by UPS and which are accessed by means of hardware, software, or internet interfaces, including UPS Shipping Systems, are subject to and will be governed by the terms in effect at the time of shipping for the relevant system, including without limitation, the UPS Technology Agreement, the iShip® Master Enterprise Service Agreement, the ConnectShip® End User License Agreement, or that agreement licensing use of a UPS Ready® solution.

**11.     Timely Upload of PLD**

The shipper must provide Timely Upload of Package Level Detail ("PLD") to UPS.  Timely Upload of PLD as used in these Terms refers to the electronic transmission of all applicable PLD information to UPS at or before the time that shipments are tendered to UPS.  PLD includes, but is not limited to, consignee's full name, complete delivery address, and shipment dimensions and weight.

**12.     ZIP Code™/Postal Code Information**

The receiver's ZIP Code™ is a required part of the address for domestic shipments.  When available, ZIP+4™ should be used.  The receiver's postal code, telephone number, and contact name are required parts of the address for international shipments.

**13.     P.O. Boxes**

UPS does not provide Delivery to a P.O. Box. The shipper must make every effort to obtain a street address.  If the shipper should use a P.O. Box address, the recipient's telephone number must be included.  A package addressed to a P.O. Box may experience delays, is not covered by any UPS Service Guarantee, and is subject to an Address Correction charge.  Army Post Office (APO) and Fleet Post Office (FPO) addresses are not accepted.

**14.     UPS Customer Center and UPS Worldwide Express Freight® Center**

Before accepting a shipment tendered for transportation or releasing any shipment at a UPS Customer Center or a UPS Worldwide Express Freight Center to a consignee or other recipient, UPS reserves the right to require sufficient verification, as determined by UPS in its sole discretion, of the shipper's or recipient's name, address, authorization to ship or receive the shipment, or any other information UPS deems necessary to accept or release the shipment in its sole discretion.  Persons tendering or picking up shipments on behalf of a business may be

16

required to provide identification issued by the business and a government-issued identification. A residential consignee will be required to provide a government-issued identification. UPS reserves the right to require payment to be made at Customer Centers and UPS Worldwide Express Freight Centers by payment card only.

## 15.    Third-Party Retailer

The UPS Store® locations are independently owned and operated by licensed franchisees of The UPS Store, Inc., a subsidiary of United Parcel Service, Inc., and are not agents of UPS. Other Third-Party Retailers are independently owned and operated businesses and are not agents of UPS. UPS assumes no liability other than to the Third-Party Retailer as the shipper of the package, for lost, damaged or delayed packages sent via the Third-Party Retailer. Any such liability to the Third-Party Retailer is subject to the limitations set forth in the Terms. All inquiries regarding packages shipped via any Third-Party Retailer must be directed to the Third-Party Retailer that shipped the package. UPS will deal solely with the Third-Party Retailer in all matters concerning packages shipped via any Third-Party Retailer including, but not limited to: tracking/tracing requests; claims and guarantees; C.O.D. preparation and remittance; return of undeliverable packages; proper packaging and labeling; and billing. Even if UPS responds directly to customers of the Third-Party Retailer regarding tracking requests, UPS will not be liable to those customers. The Third-Party Retailer is solely responsible for the issuance of any refunds and claims to those  who shipped packages via the Third-Party Retailer. For any package shipped via the Third-Party Retailer with a declared value in excess of $1000, the Third-Party Retailer must provide a copy of the high-value control log to UPS at the time of tender of the package. The Third-Party Retailer shall not ship any articles which UPS does not accept for transportation. The Third-Party Retailer shall indemnify and hold harmless UPS in any action against UPS arising from the loss, damage, or delay of a package shipped via the Third-Party Retailer.

## 16.    UPS Access Point™

Packages that may be received for Delivery or tendered for shipment at a UPS Access Point™ are subject to restrictions, including, without limitation, in regard to weight and size and actual and declared value. Before accepting a shipment tendered for transportation or releasing any shipment at a UPS Access Point™ to a consignee or other recipient, a shipper, consignee, or other recipient may be required to produce sufficient verification of the shipper's or recipient's name, address, authorization to ship or receive the shipment, and any other information UPS deems necessary to accept or release the shipment in its sole discretion, including, without limitation, provision of government-issued identification. Any liability of UPS for lost, damaged or delayed packages to a UPS Access Point™ is subject to the limitations set forth in the Terms.

## 17.    Pickup Services–Scheduled

UPS offers the following Scheduled Pickup Services:

–*Daily Pickup*: When Daily Pickup service is selected, UPS will call on shipper's location once each business day to pick up packages.  UPS may not call upon a location on any day in which the account indicates that there are no packages available for pickup.

–*Daily On-Route Pickup*: When Daily On-Route Pickup service is selected, UPS will call at shipper's location each business day to pick up packages while making deliveries in shipper's area.

17

*—Day-Specific Pickup:* When Day-Specific Pickup is selected, UPS will call on shipper's location each business day as preselected by shipper.  Shipper may select up to four business days per week for Day-Specific Pickup.

*—UPS Smart Pickup®:* When UPS Smart Pickup is selected, UPS will call on shipper's location any business day when the shipper transmits PLD using the current version of WorldShip®, UPS CampusShip®, or UPS Internet Shipping by the deadline designated by UPS, or if shipper has scheduled a pickup by telephone or through ups.com prior to the deadline designated by UPS.

For Daily Pickup, Daily On-Route Pickup, and Day-Specific Pickup, a weekly service charge based on the account's weekly billing total, as reflected in the UPS billing system, will be assessed.  The weekly billing total may not necessarily reflect all packages tendered during a calendar week.  For UPS Smart Pickup, a weekly service charge will be assessed.

Scheduled Pickup Services are not available for UPS Worldwide Express Freight® service.

## 18.   UPS On-Call Pickup® Service

When UPS On-Call Pickup service is requested by the shipper, UPS will arrange (where reasonably practicable) a pickup at the shipper's location.  An additional charge for On-Call Pickup service will be assessed.

On-Call Pickup service from a Residential location will be assessed an additional surcharge for residential pickup.  If the Residential location is in a remote or less accessible area as designated by UPS, an additional surcharge for extended area or remote Residential pickup also will apply.

On-Call Pickup service must be requested for each UPS Worldwide Express Freight® shipment pickup or drop-off (for door-to-door and non door-to-door services), and may not be combined with a package pickup.  No additional charge for On-Call Pickup service applies to UPS Worldwide Express Freight service.

## 19.   Saturday Pickup; Processing Fee

UPS offers Saturday pickup of UPS Air Services packages and UPS Hundredweight Air Services shipments for Delivery in the United States and Puerto Rico where such services are available and subject to a per-package processing fee.  The shipper should contact UPS for information regarding UPS's Saturday pickup area.  UPS Air Services shipments picked up on Saturday receive the same delivery commitment as UPS Air Services shipments picked up on Friday. Saturday pickup service is provided by the following methods:

—A shipper may request Saturday pickup via UPS On-Call Pickup® service by contacting UPS on each Saturday, excluding holidays, on which the service is needed.

—At the shipper's option, UPS will call at the shipper's premises every Saturday, excluding holidays, to pick up qualifying shipments.  A minimum processing fee will be assessed if UPS calls at the shipper's premises on Saturday and there are no packages to be picked up on that day.

The processing fee will be assessed for each UPS Air Services package or UPS Hundredweight Air Services shipment processed using a UPS Shipping System, tendered to UPS, or tendered to a Third-Party Retailer on a Saturday, in addition to any applicable UPS On-Call Pickup® charge.

## 20.   Drop Shipment

A unique Drop Shipper account number will be assigned to approved shippers and must be used solely for the origin and destination locations as specified in the UPS Drop Ship Letter of Understanding or as required by UPS.

UPS reserves the right to refuse any Drop Shipment request, in its sole discretion, including, but not limited to, any Drop Shipment that is operationally or economically impracticable to transport. A request for Drop Shipment service is not reasonable unless the shipper makes a prior arrangement with UPS, agreed to in advance by UPS, as to timing, location, and volume of the Drop Shipment.

When a shipper, through prior arrangements with UPS, tenders packages at UPS's receiving stations with a return address requiring a movement greater than a Zone 2 movement from the point of tender, any undelivered packages will be returned automatically and will be charged at the rate applicable between the point of tender and the return address.  The effective UPS Rates for the applicable shipment will apply.

UPS does not accept, and shippers are prohibited from shipping, any package via a Drop Shipment that contains Hazardous Materials, except for Limited Quantity/ORM-D packages that are tendered for UPS Ground service in the 48 contiguous United States.

## 21.   Delivery

UPS does not limit Delivery of a shipment to the person specified as the receiver in the UPS Shipping System.  Unless the shipper uses Delivery Confirmation service requiring a signature, UPS reserves the right, in its sole discretion, to make a Delivery without obtaining a signature.

## 22.   Residential Delivery

If the delivery location could be construed as either residential or commercial, then a Residential Delivery surcharge will apply.  A residential delivery surcharge will apply even if the delivery location is later changed by the shipper or consignee to a commercial location.

## 23.   Delivery Attempts; UPS Access Point™

If UPS is unable to deliver a shipment, a notice will be left at the consignee's address stating that delivery has been attempted.  Thereafter, a second and, if necessary, a third attempt to deliver the shipment may be made without additional charge.  For residential deliveries and where available, UPS may, after the first delivery attempt, deliver a shipment to a UPS Access Point™, where such shipment will be held for pickup.   For UPS Worldwide Express Freight® shipments, only one delivery attempt will be made; subsequent delivery attempts are subject to additional charges which will be charged to the consignee.

## 24.   Hold for Pickup and Hold at Location Services

At the time a shipper tenders a shipment to UPS, the shipper may request that UPS hold a domestic package at a designated UPS Customer Center for pickup by the consignee.  For each such shipment, the shipper will complete an address label showing the words "Hold for Pickup," the consignee's name, telephone number, the name of a contact person, and the full address of the designated UPS Customer Center.  In addition, the shipper will apply a UPS Hold for Pickup label below the address label on the shipment.  Hold for Pickup is not available for international package shipments.

19

For UPS Worldwide Express Freight® shipments, the shipper may request that UPS hold a UPS Worldwide Express Freight shipment at a UPS Worldwide Express Freight Center location for pickup by the consignee.  For each such shipment, the shipper will complete an address label showing the words "Hold for Pickup," the consignee's name, telephone number, the name of a contact person, and the full address of the consignee (designated UPS Worldwide Express Freight Center address not required).

UPS will hold the shipment at the designated UPS Customer Center or UPS Worldwide Express Freight® Center and will attempt to contact the consignee at the telephone number shown on the label.  Shipments not picked up within five (5) business days from the date of arrival will be considered undeliverable.

## 25.    Shipper Release

A shipper may request that UPS release a shipment on the first Delivery attempt. When Shipper Release is selected, UPS will make only one Delivery attempt, a signature will not be obtained upon Delivery, and a UPS delivery record showing a completed Shipper Release delivery shall be conclusive proof that Delivery was completed.  Shipper Release is provided solely at the shipper's risk of loss or damage arising from the release of the shipment by UPS and UPS will not be liable to shippers or third parties for any damages arising from the release of the shipment.

## 26.    UPS carbon neutral

A shipper may request that UPS offset the climate impact of a shipment via UPS carbon neutral service by selecting UPS carbon neutral at the time a shipment is tendered to UPS.  By selecting UPS carbon neutral, UPS will purchase and retire in the appropriate registry a sufficient number of voluntary or regulatory carbon credits as determined by UPS in its sole discretion to offset calculated carbon dioxide emissions. UPS carbon neutral is available only for shipments shipped using a UPS Automated Shipping System.  An additional charge will be assessed for each package or pallet.

## 27.    UPS Delivery Intercept®

After a domestic package has been tendered to UPS but before Delivery, a shipper may request that UPS return a package to the shipper, reroute a package (including a request by shipper to correct an address), hold the package for pickup at a UPS Customer Center, or hold a package for future delivery.  UPS may in its discretion also accept a UPS Delivery Intercept request from a third party when the shipper has requested that the third party's UPS account number be billed for such package.  UPS will honor a UPS Delivery Intercept request in its sole discretion where practicable and where the shipper has guaranteed payment of applicable charges resulting from the change. An additional charge, set forth in the UPS Rates applicable to the shipment in effect at the time of the request will be assessed for each package returned to the shipper, rerouted, or held for future delivery.  If a request to reroute a package requires a package movement from the original receiver address beyond a UPS Zone 2, additional transportation charges also will apply. The transportation charges will be calculated at the applicable rate between the original receiver address and new rerouted address.  For a request to return to shipper, transportation charges as set forth in Section 35 for undeliverable packages will apply and be assessed to the shipper.

## 28.    Delivery Change Requests

After the receiver has received notice from UPS that delivery has been attempted (UPS InfoNotice® or postcard number required), or after the receiver has received notice that delivery will be attempted, the receiver may request, for a package or a pallet, that UPS hold for pickup at

a UPS Customer Center or UPS Worldwide Express Freight® Center.  After the receiver has received notice from UPS that delivery has been attempted (UPS InfoNotice® or postcard number required), the receiver may request, for a package or a pallet, that UPS return to the shipper, hold for future delivery, or reroute a package (but not a pallet) (collectively, "Delivery Change").  Delivery Change Requests to reroute international shipments are not available.  UPS will honor a Delivery Change Request in its sole discretion where practicable and where the receiver has guaranteed payment of any applicable charges resulting from the change.  By requesting a Delivery Change, the receiver acknowledges and agrees that the limitations of liability set forth in the Terms in effect at the time of shipment apply to the shipment subject to the Delivery Change Request and that the value originally declared by the shipper, if any, shall continue to apply throughout the course of transportation pursuant to the Delivery Change Request.  UPS assumes no liability other than to the shipper of the shipment for loss, damage, or delay of any shipment subject to Delivery Change.  An additional charge set forth in the UPS Rates applicable to the shipment in effect at the time of the request will be assessed to the consignee for each package rerouted or held for future delivery by a Delivery Change Request.  If a request to reroute a package requires a package movement from the original receiver address beyond a UPS Zone 2, additional transportation charges also will apply and be assessed to the consignee.  The transportation charges will be calculated at the applicable rate between the original receiver address and new rerouted address.  Delivery Reattempt charges will apply to subsequent attempts to deliver UPS Worldwide Express Freight shipments beyond the first delivery attempt.  For a request to return to shipper, transportation charges as set forth in Section 35 for undeliverable shipments will apply and be assessed to the shipper.

## 29.   Correction of Addresses

If any shipment as addressed by the shipper has an incorrect or incomplete address (examples include, but are not limited to, P.O. Boxes, missing suite, apartment, or unit numbers, old addresses, and missing/incorrect ZIP Codes), UPS will make reasonable efforts, to be determined in its sole discretion, to secure the correct or complete address.  An address validated by UPS may be incorrect or incomplete for purposes of completing Delivery, and may be corrected by UPS.  If the correct or complete address is secured, UPS, at its sole discretion, will attempt delivery, and the shipper, upon request, will be provided with the correct or complete address in order to update its internal records.  UPS may in its sole discretion correct or complete an address based on information obtained from the shipper or consignee. An address correction charge will be assessed to the shipper for an address correction or completion.

## 30.   Saturday Delivery

UPS offers optional Saturday Delivery where such services are available.  A shipper may request Saturday Delivery by indicating the selection in the UPS Shipping System and attaching a Saturday Delivery routing label to each package or pallet.  An additional charge will be assessed for each shipment for Saturday Delivery and will be billed to the payer of the transportation charges.  Contact UPS for UPS's Saturday Delivery area.

## 31.   Delivery Confirmation Services

UPS provides the following Delivery Confirmation Services.  An additional charge applies for each service.  Delivery Confirmation information, including signatures where applicable, is available online or by mail.  Where applicable, only valid UPS accounts will receive responses via mail:

21

### 31.1   Delivery Confirmation (domestic only)

A shipper may request Delivery Confirmation Service by indicating Delivery Confirmation on the UPS Source Document (excluding Air Shipping Documents) or in a UPS Automated Shipping System. Delivery Confirmation information will include the date of delivery and either the name of the recipient or the disposition of the package; or, in the event of a return, the reason for the return and the date processed.

### 31.2   Delivery Confirmation Signature Required (domestic and International)

A shipper may request UPS to obtain the recipient's signature on Delivery. The shipper must use a UPS Automated Shipping System to initiate a request for this service. UPS may obtain, at its discretion, a signature or other electronic acknowledgment of receipt from the recipient when this option is selected.

### 31.3   Delivery Confirmation Adult Signature Required (domestic and International)

A shipper may request UPS to obtain the signature of an adult 21 years of age or older on Delivery. UPS, in its sole discretion, will determine if Delivery can be completed when such a request is made, and may request photo identification indicating the recipient's age, before completing Delivery. The shipper must use a UPS Automated Shipping System to initiate a request for this service. UPS reserves the right to assess the shipper the additional charge for this service when the shipper requests UPS to obtain an adult signature on Delivery and an approved UPS label is not affixed to the package or pallet indicating such request, or, the shipper tenders a package or pallet that, based upon its contents, requires an approved UPS label requesting an adult signature upon Delivery and no such label has been affixed to the package or pallet.

## 32.   UPS Next Day Air® Early A.M.® Verbal Confirmation of Delivery

The shipper may request optional Verbal Confirmation of Delivery when shipping via UPS Next Day Air® Early A.M.® Verbal Confirmation of Delivery is not available in Hawaii and is not available for international shipments. When this service is selected, UPS will call the shipper to confirm Delivery on the day of Delivery. The additional charge for each Verbal Confirmation of Delivery request will be billed to the payer of the transportation charges.

## 33.   Proof of Delivery (P.O.D.)

Upon request, UPS will provide proof of delivery of a shipment via fax transmission, email, or mail. The request must include a fax number, including area code, for an operating fax machine, an email address for email delivery, or an address deliverable by the United States Postal Service for mail.

## 34.   Tracking/Tracing and Refund Request Charge

UPS reserves the right to assess a shipper an additional charge per request for each Tracking/Tracing and Refund Request initiated by or at the request of the shipper. This charge will not be assessed for the first 50 tracking requests per calendar week, or for a quantity of tracking requests equal to or less than 20 percent of the shipper's volume for that week, whichever is greater. This charge will not be assessed for a quantity of tracing requests equal to or less than two percent of the shipper's volume for that week. UPS also reserves the right to assess the shipper a charge set forth in the effective UPS Rates for Service Guarantee refund

requests when the subject shipment was delivered in accordance with the applicable UPS Service Guarantee in the effective Terms.

## 35.   Special Handling of Undeliverable Shipments; Refused Shipments Returned

Shipments refused by the consignee, or which cannot be delivered will be returned to the shipper at shipper's expense, including, but not limited to, forwarding costs, return transportation charges, duties, and taxes. Undeliverable international shipments returned to the shipper also are subject to an undeliverable shipment surcharge set forth in the effective UPS Rates. The UPS Service Guarantee does not apply to undeliverable shipments returned to the shipper.

UPS reserves the right to dispose of a shipment, including salvage (after retention of the shipment for a reasonable period of time as determined by UPS, not to exceed 30 days) if the shipment is refused by the consignee or for any other reason cannot be delivered, and return of the shipment is refused by the shipper or the shipment cannot otherwise be returned to the shipper. The shipper or consignee's sole recourse in such circumstances shall be in accordance with and subject to Sections 50 ("Claims and Legal Actions:  Individual Binding Arbitration of Claims") and 51 ("Responsibility for Loss or Damage").

## 36.   C.O.D. Service

UPS accepts C.O.D. packages for delivery in the United States and Puerto Rico. C.O.D. service is not provided for international shipments except for international shipments originating in Canada for delivery in the United States. C.O.D. service is not available for UPS Worldwide Express Freight Service from any origin.

### 36.1   Preparation and Listing of C.O.D. Packages

Shippers not using a UPS Automated Shipping System must prepare and attach to each C.O.D. package a UPS C.O.D. tag showing the amount to be collected and enter such amount in the space provided for that purpose.

Shippers using a UPS Automated Shipping System will generate, and apply to each C.O.D. package, a system-generated address label with a C.O.D. bar code and the amount to be collected for each individual package. Each C.O.D. package in a UPS Hundredweight Service® or UPS Ground with Freight Pricing C.O.D. shipment must carry a C.O.D. tag or system-generated label for the goods contained in that package.

### 36.2   Responsibility for C.O.D.s

Upon delivery of each C.O.D. package, UPS will attempt to collect the amount shown on the C.O.D. tag or the system-generated label attached to the package and transmit to the shipper the amount so collected (subject to the terms in Section 36.9, "Remittance of C.O.D.s," below), or, if collection cannot be made, will return the package to the shipper. The shipper must notify UPS within 45 days from the date of shipment of a C.O.D. shipment if the shipper has not received payment of the C.O.D. amount, or any claim relating thereto shall be deemed waived. Suits shall be instituted within two years after denial of any portion of the claim.

If collection cannot be made within three delivery attempts, or the consignee refuses delivery, UPS will return the package to the shipper.

### 36.3   Consignee's Checks in Payment of C.O.D.s

Unless instructions to collect a cashier's check or money order only are shown on the C.O.D. tag (in conformity with the instructions on the tag) or system-generated label, UPS will accept a

23

check or other negotiable instrument issued by or on behalf of the consignee.  When instructions to collect a cashier's check or money order only are clearly indicated on the C.O.D. tag or system-generated label, UPS reserves the right to accept a cashier's check, money order, official bank check, or other similar instrument issued by or on behalf of the consignee.

All checks or other negotiable instruments (including cashier's checks, official bank checks, money orders, and other similar instruments) tendered in payment of C.O.D.s will be accepted by UPS based solely upon the shipper assuming all risk relating thereto, including, but not limited to, risk of non-payment, insufficient funds, and forgery, and UPS shall not be liable upon any such instrument.

All checks or other negotiable instruments (including cashier's checks, official bank checks, money orders, and other similar instruments) will be transmitted to the shipper together with UPS's own check if consignee check(s) collected are for less than the C.O.D. amount. Remittances (checks, money orders, etc.) received that are less than the C.O.D. dollar amount indicated by the shipper will be reimbursed for the full amount unless the variance of the amount remitted is less than $1.00.

### 36.4   C.O.D. Package of $10,000 or More

UPS may require payment for any C.O.D. package of $10,000 or more to be received in a single check or other negotiable instrument such as a cashier's check, money order, official bank check, or other similar instrument.

### 36.5   Acceptance of Personal Check

In the event that UPS accepts a personal or company check when a shipper has properly instructed UPS to collect a cashier's check or money order only, UPS reserves the right, in its sole discretion, to deposit into a UPS account the personal or company check collected and to provide the shipper with a check issued by UPS.

### 36.6   C.O.D. Remittance Verification

In the event that a shipper timely notifies UPS that the shipper has not received payment of the C.O.D. amount, if UPS's records show that it collected a C.O.D. payment and the remittance has not been cashed, UPS may, in its sole discretion, provide the shipper with a digital image of the check or money order along with a C.O.D. Remittance Verification in order to assist the shipper in locating the missing C.O.D. payment.  If the shipper is still unable to locate the C.O.D. payment, UPS may, in its sole discretion, provide the shipper with an indemnified C.O.D. check or money order, which is a digital image of the original payment collected by UPS at the time of delivery and can be deposited in a bank, provided that the original check or money order has not previously been deposited or negotiated.  If the indemnified check or money order turns out to be invalid for any reason including, but not limited to, insufficient funds or forgery, UPS shall not be liable upon the instrument.

### 36.7   Restrictions

C.O.D.s are accepted for amounts up to $50,000 per package.

C.O.D. packages with an amount to be collected in excess of $500 are not accepted for transportation via a UPS Drop Box.

Entry of a C.O.D. amount is not a declaration of value for carriage.  Payment of the C.O.D. charge does not constitute payment of the declared value charge.

UPS will not accept currency in any amount for payment of C.O.D. shipments.

### 36.8  Charges for C.O.D. Collections

An additional charge will be assessed for each C.O.D. package tendered to UPS.

### 36.9  Remittance of C.O.D.s

Subject to the following provisions of this section, UPS shall remit C.O.D. collections to the shipper after the date of collection.

The shipper irrevocably authorizes UPS to apply, in its sole discretion and without prior notice to the shipper, any C.O.D. collections to any past due Charges owed by the shipper. To this end, if there are any past due Charges owed by the shipper, the shipper hereby (a) irrevocably assigns and transfers to UPS all of the shipper's right, title and interest in and to each check or other negotiable instrument for payment of a C.O.D. that is received by UPS or its employee or agent, and (b) constitutes and appoints UPS as the shipper's attorney-in-fact and authorizes UPS, in the shipper's name, place, and stead, to endorse any such check or other negotiable instrument with the shipper's name, to deposit the same into any UPS account, and to apply the proceeds of the same against any past due Charges owed by the shipper. The shipper acknowledges and agrees that such appointment of UPS as the shipper's attorney-in-fact is coupled with an interest and is irrevocable. UPS may exercise any of its rights under this section either directly or through any employee or agent.

The shipper relinquishes, waives, and agrees not to assert any claim against UPS or any of its employees or agents, any consignee, any collecting or paying bank, or any other person or entity, that may directly or indirectly arise as a result of UPS's exercise of any of its rights under this section "Remittance of C.O.D.s." Without diminishing any of UPS's rights under the preceding sentence, the shipper agrees that UPS and such other persons or entities shall not be liable to the shipper or any other person or entity for any special, incidental, or consequential damages in any claim made with respect to UPS's exercise of any such rights.

The shipper agrees that, following UPS's application of any C.O.D. collections to any past due Charges owed by the shipper in accordance with this section, the shipper will continue to be fully liable for the payment of all remaining Charges owed by the shipper (including, without limitation, (i) any Charges that are not covered by the application of the C.O.D. collections, and (ii) any Charges relating to a previously applied C.O.D. collection that is reversed by reason of the uncollectibility of the C.O.D. check or other negotiable instrument or otherwise).

Nothing in this section shall constitute an election of remedies by UPS or any other person or entity or a waiver of any of the rights of UPS or any other person or entity under the remaining provisions of the Terms or at law or in equity.

## 37.  UPS Returns® Services

Where available, UPS offers UPS Returns® Services (including Authorized Returns Service (ARS), Print Return Label, Electronic Return Label, Print and Mail Return Label, 1 UPS Pickup Attempt, 3 UPS Pickup Attempts, UPS Returns on the Web, and UPS Returns® Exchange). 3 UPS Pickup Attempts is not available for UPS Worldwide Express Freight®. ARS and UPS Returns Exchange are contractual package services only.

An additional accessorial charge applies to each UPS Returns Services package or pallet and will be assessed when the service is requested. The applicable charges will be those set forth in the UPS Rates in effect at the time the charge is applied. Upon Delivery, a package or pallet

returned will be charged the rate calculated from the pickup location to the destination via the service selected.

Shipments containing certain items are prohibited from being shipped and are not accepted by UPS for UPS Returns Services including, but not limited to, Hazardous Materials shipments requiring shipping papers, firearms, and shipments requiring Delivery Confirmation Services.

C.O.D. (Collect on Delivery) service is not available for UPS Returns Services packages. Third-Party Billing is not available for UPS Returns Services in the United States. Third-Party Billing is available for UPS Returns Service outside the United States.

UPS Returns Services shipments are subject to maximum declared values. See section 51.1, Maximum Declared Values.

## 38.   UPS Rates

The applicable UPS Rates are determined on the basis of shipment and shipper characteristics, including shipment weight and size and origin to destination distance, and are subject to change. Except as otherwise stated in the Terms, all charges, fees, or surcharges shall be those set forth in the UPS Rates in effect at the time of shipping.

To determine the amount of any Charges for UPS service, consult the UPS Rates in effect at the time of shipping. The effective UPS Rates are available at www.ups.com and upon request at the local UPS office.

Shippers are responsible for providing accurate and complete shipment information in the UPS Shipping System used, including service selected, number, weight, and dimensions of shipments. If any aspect of the shipment information is incomplete or incorrect as determined by UPS in its sole discretion, UPS may adjust Charges at any time.

UPS reserves the right in its sole discretion to use any mode of transportation whatsoever to provide the service selected by the shipper. Regardless of the mode of transportation used, the effective UPS Rates for the service selected by the shipper shall apply. If, however, a shipper selects a UPS service to a destination for which only a higher level of service is available, UPS will substitute the next higher level of available service and will charge the corresponding rate for the substituted service.

### 38.1   Daily Rates, Standard List Rates, and Retail Rates

Daily Rates apply to UPS account holders who have a UPS Scheduled Pickup account established prior to January 3, 2011, and to UPS account holders with a customized shipping agreement that provides for Daily Rates.

Standard List Rates apply to UPS account holders who have a UPS Scheduled Pickup account established on or after January 3, 2011, and to UPS account holders with a customized shipping agreement that provides for Standard List Rates. Standard List Rates are also available upon request to UPS account holders who receive Retail Rates and have average shipping revenue of at least $50 per week for a consecutive four-week period, excluding the month of December.

UPS account holders who receive Standard List Rates but no longer meet criteria to qualify for Standard List Rates may be charged Retail Rates without further notice from UPS. UPS account holders receiving Retail Rates who believe they may qualify for Standard List Rates must contact UPS in order to be considered for Standard List Rates. Upon request, UPS will then determine whether the UPS account holder is eligible for Standard List Rates, in UPS's discretion. Any rate changes will be applied prospectively only, and no refunds or credits for charges or rates previously assessed will be issued, regardless of eligibility prior to shipment.

26

Shippers who do not receive Daily Rates or Standard List Rates will be charged Retail Rates.

Retail Rates also apply to shipments processed and paid for at The UPS Store® or UPS Customer Centers.

Shippers who drop off at a location of The UPS Store or a UPS Customer Center packages that have already been processed prior to drop off will receive the rates applicable to the transaction. UPS Worldwide Express Freight® pallets that are processed as door-to-door pallets prior to drop off at a UPS Worldwide Express Freight® Center will receive door-to-door rates.

### 38.2   Letter Rates

Letter Rates for domestic shipments are available only for UPS Express® Envelopes containing correspondence, urgent documents, or electronic media, with an actual weight of eight ounces or less.  UPS Express® Envelopes containing items other than those listed or weighing more than eight ounces will be assessed the corresponding rate for the applicable weight.  For international shipments, UPS Express® Envelopes may be used only for documents of no commercial value (which may include electronic media in some countries), with an actual weight of eight (8) ounces or less.  UPS Express® Envelopes containing other items, or weighing up to two pounds will be assessed the corresponding Pak Rates.

### 38.3   Pak Rates

Pak Rates are available only for UPS Worldwide Express Plus®, UPS Worldwide Express®, and UPS Worldwide Saver® single package U.S. export shipments in UPS Express® Envelopes containing correspondence, urgent documents, or electronic media, with an actual weight of more than eight ounces but less than or equal to two pounds; or when UPS Express® Pak is selected at the time of shipping, the customs value of the package is less than or equal to $100.00, and the weight of the package is two pounds or less.  UPS Express® Pak shipments weighing more than two pounds will be assessed the corresponding applicable UPS Rates for the shipment.

### 38.4   UPS 10 KG Box® and UPS 25 KG Box® Rates

UPS 10 KG Box® and UPS 25 KG Box® Rates apply to UPS Worldwide Express Plus®, UPS Worldwide Express®, and UPS Worldwide Saver single package U.S. export shipments, using UPS 10 KG and 25 KG packaging.  Shipments that exceed 10 KG and 25 KG, respectively, will be assessed the applicable UPS Rates for the actual weight and service selected.

### 38.5   Private Express Statutes

The shipper shall comply with the requirements of the Private Express Statutes when using UPS 2nd Day Air A.M.® and UPS 2nd Day Air® services.

### 38.6   Rates for Large Packages; Large Package Surcharge

A package is considered a "Large Package" when the package measurements exceed 130 inches in length and girth [(2 x width) + (2 x height)] combined.

The rate for a Large Package will be based on the greater of the dimensional weight or the actual weight, and is subject to a minimum billable rate set forth in the UPS Rates applicable to the shipment in effect at the time of the shipping.

A Large Package Surcharge (LPS) will be applied to each Large Package, including any package that exceeds the weight or size restrictions set forth in Section 3.1 ("Items Not Accepted for

27

Transportation"). Each Large Package in a multiple-package shipment may receive an LPS. LPS will not apply to Authorized Return Services UPS Ground packages, or to UPS Worldwide Express Freight® shipments.

### 38.7   Over Maximum Limits Charge

Packages that exceed the weight or size restrictions set forth in Section 3.1 ("Items Not Accepted for Transportation") are subject to one or more of the following additional charges: Over Maximum Weight, Over Maximum Length, or Over Maximum Size. Such charges apply in addition to all other applicable charges, including but not limited to the Large Package Surcharge.

### 38.8   Additional Handling Charge

An Additional Handling charge will be assessed for any package that requires special handling, as determined by UPS in its sole discretion, including, but not limited to:

–Any article that is encased in an outside shipping container made of metal or wood;

–Any cylindrical-like item, such as a barrel, drum, pail, or tire, that is not fully encased in a corrugated cardboard shipping container;

–Any package with the longest side exceeding 60 inches or its second-longest side exceeding 30 inches;

–Any package with an actual weight greater than 70 pounds; and

–Each package in a UPS Hundredweight, UPS Ground with Freight Pricing, UPS Standard™, or international shipment (excluding UPS Worldwide Express Freight® shipments) where the average weight per package is greater than 70 pounds and the weight for each package is not specified in the UPS Shipping System used.

### 38.9   Oversize Pallet Handling Surcharge

An Oversize Pallet Handling Surcharge will apply to UPS Worldwide Express Freight® pallets that are Oversize. A pallet is considered Oversize when its dimensions exceed thresholds that vary by origin and destination as set forth at http://www.ups.com/media/en/oversize_pallet.pdf.

UPS Worldwide Express Freight® pallets are also subject to maximum size restrictions (which vary by origin and destination) as set forth at www.ups.com/palletmaximums. Pallets that exceed these size restrictions are also subject to an Oversize Pallet Handling Surcharge.

## 39.   Fuel Surcharge

UPS reserves the right to institute a fuel surcharge on some or all shipments without prior notice. This surcharge is subject to adjustment monthly. This surcharge may apply to any domestic or international transportation or other charges including, but not limited to, any accessorial charge or surcharge. The current fuel surcharge is described at ups.com.

Regardless of the mode of transportation used, the effective fuel surcharge for the service selected by the shipper shall apply. This surcharge will be applied to such services and for such periods as UPS, in its sole discretion, may determine necessary.

### 40.   Manual Processing Charges

UPS reserves the right to assess a manual processing charge of $0.50 per package or $35 per week (whichever is greater) to shippers who ship packages using a UPS Shipping System that applies outdated UPS Rates until such time as the shipper upgrades the UPS Shipping System to reflect current UPS Rates.

A manual processing service charge will be assessed to each package shipped using a UPS 3 Day Select® or UPS Ground shipping document.

### 41.   Billing Options for Domestic Shipments

Unless otherwise agreed to in writing by UPS, shipping charges will be billed to the shipper.

UPS accepts shipments for Collect billing and Third-Party billing, provided the consignee or third party has a valid UPS account number and has agreed to accept the charges. Regardless of the billing option selected, some charges including, but not limited to, address correction charges, will be billed to the shipper.

### 42.   Billing Options for International Shipments

The amount billed includes, but is not limited to, shipping charges, duties, fees, and taxes, if applicable. Unless otherwise restricted in the origin or destination country, shippers tendering packages using a UPS Shipping System may select the payer of shipping charges, duties, and taxes as Shipper, Receiver, or Third Party. UPS accepts shipments for Receiver or Third Party billing provided the Receiver or Third Party has a valid UPS account number and has agreed to accept the charges. In the event of non-payment by the Receiver or Third Party, the shipper is liable for all charges including, but not limited to, duties, fees, and taxes.

An additional Duty and Tax Forwarding Surcharge will apply if the shipper selects a billing option in which duties and taxes are to be paid outside of the destination country.

UPS reserves the right in its sole discretion to request advance payment of shipping charges for any package sent to or from any international destination or origin.

For all shipments where the shipper is not paying the shipping charges, the shipper must notify the bill payer prior to shipping, and agree to pay all charges in the event of non-payment by the bill-to party. The shipper is liable for payment in the event of non-payment by the consignee (or receiver) or third party. All shipments must have a valid UPS billing option indicated on the UPS Shipping System entry. Regardless of the billing option selected, some charges including, but not limited to, address correction charges, will be billed to the shipper.

### 43.   Bill My Account

UPS may provide in its sole discretion a Bill My Account service to registered shippers to allow the shipper to bill to its own account Charges incurred at UPS Customer Centers and participating Third-Party Retailer locations. A processing fee for using Bill My Account may apply and may vary by shipping location. When using Bill My Account, a shipper with customized contract incentives that may otherwise apply to the account may be limited to certain maximum incentives ("Incentive Caps"). The applicable processing fee and Incentive Caps are subject to change without prior notice and are published at www.ups.com/billmyaccount. Incentive Caps and processing fees in effect at the time of shipping will apply to shipments billed using Bill My Account.

29

**44.   Disbursement Fee**

To expedite customs clearance, UPS may make or process payments of duties and taxes on behalf of the payer as dictated by the billing option selected. An additional fee, set forth in the UPS Rates applicable to the shipment in effect at the time of shipping, will be assessed and billed to the payer.

**45.   Currency Conversion Rate**

Charges to a payer's account in a foreign currency will be converted to the payer's currency using a weekly exchange rate secured through Major Money Center Banks, plus an exchange fee, set forth in the UPS Rates applicable to the shipment in effect at the time of shipping.

**46.   Missing/Invalid Account Number or Refusal Fee**

A processing fee will be charged for a missing or invalid account number when the account number, including the shipper's account number, is missing, the account number is not the correct account number for the bill-to party, the account number is for a receiver or third party who fails to pay the shipping charges, or the package is shipped to an unauthorized consignee. In the event of non-payment by the receiver or third party, the shipper will be billed a refusal fee plus the shipping charges.

**47.   Shipping Charge Corrections; Audit**

UPS reserves the right to bill for Charges based upon the characteristics of, and services requested for, shipments actually tendered to UPS. UPS also reserves the right to audit any package, shipment and/or invoice to verify service selection, dimensions, or weight, and applicability of any Charges. As part of that audit, UPS may weigh and measure any package or shipment tendered to UPS using any method UPS deems appropriate, including but not limited to multidimensional measuring devices. UPS may in its sole discretion increase or adjust Charges based on the results of such audit. In the event that a package's or shipment's dimensions are altered during transit, UPS reserves the right to bill for Charges based on the altered dimensions.

**48.   Payment of Charges**

Except where an alternative payment plan applies, UPS's payment terms require payment in full in advance.

UPS may provide in its sole discretion alternative payment terms to certain of its shippers. UPS, in its sole discretion, shall decide which, if any, of the alternative payment plans described below (see "Alternative Payment Plans") will be made available to the shipper.

A shipper that is not enrolled in any of the Alternative Payment Plans described below shall pay all Charges in advance of shipment, as required by UPS.

Notwithstanding any billing plan that is in effect or payment or billing option selected at the time of shipment, the shipper is ultimately liable for and agrees to pay all Charges, including in the event of insolvency, bankruptcy, non-payment, or refusal to pay by the receiver or third party.

All Charges must be paid in the lawful money of the United States of America.

If a shipper submits shipment information to UPS through a UPS Shipping System and does not subsequently tender such shipment to UPS, it is the shipper's sole responsibility to request an adjustment, as set forth below (see Section 48.1, "Invoice Adjustment"). Shippers who fail to do so will be liable for all applicable Charges.

As an accommodation to the shipper, and in UPS's sole discretion, UPS may render invoices or copies of invoices to a third party at the request of the shipper. The shipper remains responsible for the timely payment in full of all Charges owed by the shipper. By requesting UPS to render invoices or copies of invoices to a third party, the shipper is deemed to authorize the third party to act on behalf of the shipper, and UPS may rely thereon in all respects.

UPS also may in its sole discretion elect to render an invoice that includes amounts owed for services provided by UPS affiliates.

If Charges are paid by payment card or by an electronic payment method, the shipper expressly authorizes UPS to assess any Charges and to obtain payment of the Charges by use of the payment card or electronic payment method. If, for any reason, any such transaction is rejected or declined, the shipper will pay to UPS a declined transaction fee of ten dollars ($10) per incident, in addition to any late payment fees assessed by UPS and any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper. The shipper authorizes UPS to charge the declined transaction fee to the shipper's payment card account or electronic payment account or to collect the fee directly from the shipper, at UPS's sole option.

If, for any reason, a negotiable instrument submitted to UPS as payment for Charges is returned to UPS unpaid, or an electronic request for payment is dishonored, UPS may charge the shipper a dishonored payment fee of twenty dollars ($20) per incident, in addition to any late payment fees assessed by UPS and any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper.

UPS may provide trade credit information on its shippers to commercial reporting agencies.

### 48.1   Invoice Adjustment

Shippers requesting an invoice adjustment (e.g., adjustment of Charges based on an incorrect rate, billable weight, account number, failure to tender a shipment, type of service, shipping charge correction, etc.) or a refund due to a duplicate payment must notify UPS of the request within 180 days of receiving the contested invoice, or any billing dispute is waived. Notification to UPS of a request for an invoice adjustment must be made in writing using one of the following methods:

–Submit a request through UPS's online Billing Center at ups.com/billing;

–Email a request to UPS through ups.com®; or

–Mail a request to United Parcel Service, P.O. Box 7247-0244, Philadelphia, PA 19170-0001;

The notification to UPS must include the date of shipment, the tracking number for each disputed charge, and the reason for the disputed charge. A partial payment against an invoice is not considered a request for an invoice adjustment or notice to UPS of a disputed charge. UPS reserves the right to refuse to issue any invoice adjustment until all outstanding charges owing to UPS have been paid in full.

### 48.2   Alternative Payment Plans

Where UPS elects to make an alternative payment plan available to the shipper, UPS may render an invoice to the shipper on a weekly (i.e., seven days) or a monthly (i.e., four or five calendar weeks) basis. A weekly invoice will include the Charges incurred in the previous week. Notwithstanding that UPS has elected to render an invoice to the shipper on a weekly basis, an invoice may be issued only when the shipper has incurred aggregate Charges in excess of ten dollars ($10), or when five (5) calendar weeks have elapsed from the date of issuance of the last

31

invoice, whichever event occurs first.  A monthly invoice will include the Charges incurred for the four- or five-week period for which the invoice is issued.  In its sole discretion, UPS may offer one or more of the following alternative payment plans for the payment of Charges:

**–Electronic Funds Transfer Plan (Debit EFT)**

By written agreement with UPS, the shipper will provide UPS with the shipper's bank account number and bank routing number to enable UPS to electronically request payment, for all Charges incurred by the shipper, directly from the shipper's bank, on a weekly or monthly basis. The shipper's bank will remit the amount requested to UPS and deduct that amount from the shipper's bank account.  Payments to UPS will be shown on the shipper's bank statements.  The shipper is responsible for payment of any fees imposed by the shipper's bank.  Additionally, the shipper will receive a weekly or monthly invoice, as applicable, except as described above, from UPS listing the services provided for the applicable billing period.  If, for any reason, an electronic request for payment is dishonored, the shipper is responsible for making a timely payment directly to UPS.  Past due balances will be subject to any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper.  No late payment fee shall be assessed with respect to the Electronic Funds Transfer Plan.

**–Monthly Prepayment Plan**

By written agreement with UPS, the shipper will make a prepayment with UPS in an amount equal to four weeks' anticipated Charges as estimated by UPS.  Upon notice to the shipper, the required prepayment amount may be changed by UPS at any time to reflect a revised estimate of four weeks' Charges.  All prepayment amounts will remain on account with UPS.  No interest will be paid or accrued on the prepayment amounts.

The Charges incurred for the applicable month will be totaled and billed to the shipper on a monthly basis.  Payment is due within seven (7) days after receipt of the UPS invoice.  Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper.

**–Weekly Prepayment Plan**

By written agreement with UPS, the shipper will make a prepayment with UPS in an amount equal to four weeks' anticipated Charges as estimated by UPS.  Upon notice to the shipper, the required prepayment amount may be changed by UPS at any time to reflect a revised estimate of four weeks' Charges.  All prepayment amounts will remain on account with UPS.  No interest will be paid or accrued on the prepayment amounts.

Shipper will receive invoices on a weekly basis, except as described above. Each invoice will list the previous period's Charges incurred.  Payment for all accumulated Charges will be due within seven (7) days following the shipper's receipt of every fourth invoice; however, if prior to receiving the fourth invoice the shipper's accumulated Charges should equal or exceed the prepayment amounts on account with UPS, then the accumulated Charges will be due within seven (7) days following the shipper's receipt of the invoice requiring such payment.  Past due balances will be subject to a late payment fee as described below, in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper.

**–Special Payment Plan**

By written agreement with UPS, the shipper may prepay an amount equal to the anticipated Charges for a period of between ten to twenty-six weeks, as estimated by UPS.  The Charges actually incurred by the shipper will be deducted by UPS on a weekly basis from the prepayment amounts on account with UPS.  Weekly invoices marked as paid will be forwarded to the shipper

32

reflecting the balance of the prepayment amount on account with UPS. When the prepayment amount on account with UPS reaches the minimum balance specified in the written agreement, the shipper is required to make another prepayment for an additional period pursuant to the same agreement, or, if the shipper does not do so, the shipper must make another payment arrangement with UPS. All prepayment amounts will remain on account with UPS. No interest will be paid or accrued on the prepayment amounts. If the Charges incurred by the shipper · exceed the remaining balance of the prepayment amounts on account with UPS, the excess Charges will be due within seven (7) days following the shipper's receipt of the invoice requiring such payment. Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper. This payment plan alternative is available only to existing customers already approved for a Special Payment Plan.

## –Credit Extension Plan

By written agreement with UPS, the shipper may elect to pay an annual credit extension fee and thereafter receive invoices for Charges incurred by the shipper on a monthly basis with no prepayment requirement. The invoices will be payable within seven (7) days following receipt by the shipper. The credit extension fee is based upon the shipper's total annual Charges, as estimated by UPS, and is subject to change annually by UPS in its sole discretion. To be eligible for the Credit Extension Plan, the shipper must use UPS's transportation services and the Credit Extension Plan solely for business, commercial, or agricultural purposes. A shipper is not eligible for the Credit Extension Plan if the shipper uses UPS's transportation services and the Credit Extension Plan for any personal, family, or household purposes. By using the Credit Extension Plan (if made available to the shipper), the shipper represents, warrants, certifies, and agrees that it will use UPS's transportation services and the Credit Extension Plan solely for business, commercial or agricultural purposes and not for any personal, family, or household purposes. Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper.

## –Weekly Payment Plan

Each week the shipper will receive an invoice for the previous week's Charges except as described above. The invoice is due within seven (7) days of receipt. No prepayment is required under this plan.

Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the shipper.

## –Credit Card Payment Plan

The shipper may elect to pay the previous week's Charges by credit card. The shipper will receive billing detail itemized on its card statement or a weekly invoice, except as described above, from UPS listing the previous period's Charges incurred. The shipper will provide UPS with the shipper's credit information to enable UPS to process Charges incurred by the shipper on a weekly basis.

Shipper acknowledges and agrees that there may be a delay of two or more days between the date that payments are received by UPS and the date that the payments are posted and credited to the shipper's account with UPS. If a UPS remittance advice is attached to the shipper's payment, the payment will be credited accordingly. If no remittance advice is attached to the shipper's payment, the payment will be credited to the shipper's account.

33

### 48.3   Late Payment Fee

For the Monthly Prepayment Plan, the Weekly Prepayment Plan, the Special Payment Plan, the Credit Extension Plan, and the Weekly Payment Plan, a late payment fee will be assessed if the shipper's payment is not received by UPS within fourteen (14) days of the invoice due date. Except as otherwise stated below, the late payment fee will equal six percent (6%) of the total past due balance of the shipper's invoice (including without limitation any previously assessed but unpaid late payment fees) that is fourteen (14) days past due.

In determining the late payment fee for the Monthly Prepayment Plan and the Weekly Prepayment Plan, UPS will apply the prepayment amounts on account with UPS to reduce the calculated base amount on which the late payment fee is assessed, provided that UPS will so apply the prepayment amounts to the oldest outstanding invoice first, and to each subsequent invoice thereafter, until the prepayment amounts have been fully so applied.  If an invoice 14 days past due is fully so covered by the prepayment amount, no late payment fee will apply.  If an invoice 14 days past due is partially so covered by the prepayment amount, the late payment fee will apply to the portion not so covered by the prepayment amount.

For the Special Payment Plan, a late payment fee will not be assessed if there has been a positive balance in the shipper's prepayment account with UPS at any time during the 27-day period immediately preceding the transmittal of the current invoice to the shipper.  The late payment fee for the Special Payment Plan will be assessed on the "charges this period" of the shipper's invoice (including without limitation any previously assessed but unpaid late payment fees) that is fourteen (14) days past due.

A late payment fee will be assessed only once on each invoice that is fourteen (14) days past due.  Each late payment fee will be due and payable within seven (7) days following the shipper's receipt of the invoice that first reflects the assessment of the late payment fee. The late payment fee is in addition to any collection costs that may be incurred by UPS in the final collection of Charges owed by the shipper.  Neither the assessment nor the payment of a late payment fee will (a) affect the shipper's responsibility to pay all Charges owed, or (b) in any manner preclude UPS from exercising any of its rights or remedies hereunder or under applicable law.

## 49.   UPS Service Guarantee

UPS guarantees on-schedule delivery of shipments shipped via the following services, where available, to all 50 states and Puerto Rico:

–UPS Air Services

–UPS Hundredweight Service[®] Air Services

–UPS 3 Day Select[®]

–UPS Hundredweight Service[®] UPS 3 Day Select[®]

–UPS Ground

–UPS Ground with Freight Pricing

–UPS Hundredweight Service[®] Ground

UPS guarantees on-schedule delivery of shipments shipped via the following services, where available, and provided that customs clearance is performed by UPS Supply Chain Solutions[®] brokerage offices designated by UPS for clearing these shipments:

–UPS Worldwide Express Plus[®]

34

–UPS Worldwide Express NA1®

–UPS Worldwide Express®

–UPS Worldwide Express Freight®

–UPS Worldwide Saver®

–UPS Worldwide Expedited®

–UPS 3 Day Select® from Canada

–UPS Standard™

In the event UPS fails to attempt delivery within the time published on the UPS website, or as provided when 1-800-PICK-UPS® is called, UPS, at its option, will either credit or refund the transportation charges for each such shipment to the payer only, upon request, provided the conditions set forth in the UPS Service Guarantee are met.  Transportation charges do not include other fees or charges that may be assessed by UPS including, but not limited to, fuel surcharges.  This is the sole remedy available under the UPS Service Guarantee.

UPS shall not be liable for any damages whatsoever for delayed delivery, except as specifically provided for shipments made under the UPS Service Guarantee.  Under no circumstances shall UPS be liable for any special, incidental, or consequential damages including, but not limited to, damages arising from delayed delivery or failure to attempt on-schedule delivery.

UPS may cancel or suspend the UPS Service Guarantee for any service(s), and for any period of time, as determined by UPS in its sole discretion, and without prior notice.

### 49.1   Conditions

The UPS Service Guarantee is subject to the following conditions:

–UPS's guaranteed delivery schedule has been obtained by referencing UPS's website or contacting a UPS Customer Service office.  "On-time" or "on-schedule" means, subject to the terms of this UPS Service Guarantee, delivery is attempted within the UPS guaranteed delivery schedule.

–Each package and shipment is properly recorded in a UPS Shipping System.

–Each package and shipment bears the appropriate UPS tracking label and an address label, or a combined label generated by a UPS Automated Shipping System, showing the consignee's correct name, deliverable address (UPS does not provide delivery to a P.O. Box), and ZIP Code (or postal code for international shipments).  In addition, UPS reserves the right, in its sole discretion, to refuse to honor a request for a credit or refund of transportation charges for a package when that package is not accompanied by a UPS Smart Label® and/or Timely Upload of PLD or when the delivery address on any address label or combined label affixed to the package does not match the delivery address on the UPS Smart Label, bar code, or PLD for the package.

–Each package or pallet in a shipment bears a UPS Saturday Delivery routing label when optional Saturday service is requested and available.

–Each shipment is tendered to UPS during UPS's published business hours. Shipments received from or destined to certain locations may require earlier pickup times (available at the UPS website).

–UPS is notified by telephone or through UPS's online Billing Center at ups.com/billing of a service failure within fifteen (15) calendar days of the date of scheduled delivery and is advised

35

of the consignee's name and address, date of shipment, shipment weight, and UPS tracking number.

–For UPS Worldwide Expedited® shipments, the guarantee shall apply only to shipments with a U.S. origin or destination and when the billed party is resident in the United States and is responsible for all shipping charges.

–For UPS Worldwide Express Freight® shipments, the guarantee shall apply to a shipment in excess of 4400 pounds only if the shipper obtained confirmation of eligibility for the UPS Service Guarantee, prior to tender of the shipment to UPS for service.

UPS reserves the right to refuse any request for a credit or refund when such request is either (a) made by, or (b) based on information obtained by, a party other than the payer of the shipping charges.

### 49.2 Exclusions

The UPS Service Guarantee does not apply to:

–UPS 2nd Day Air A.M.® packages for Residential deliveries.

–Shipments tendered pursuant to Drop Shipments, special operating plans, or customized handling or processing arrangements, or tendered under an account number on which Service Guarantee claims are addressed by a special agreement.

–Shipments processed using a UPS Automated Shipping System that is not located at the pickup address assigned to the UPS account number on which the shipment was made.

–UPS Ground Returns Service packages.

–Packages subject to a Large Package Surcharge or Additional Handling Fee, packages that exceed maximum size or weight limits, or to shipments containing any package or pallet subject to a Large Package Surcharge, Additional Handling Fee, Oversize Pallet Handling Surcharge, or that exceed maximum size or weight limits.

–Shipments made using a Call Tag.

–Shipments subject to a Delivery Intercept, Delivery Change Request, or a UPS My Choice® request.

Shipments that are delayed due to causes beyond UPS's control including, but not limited to: the unavailability or refusal of a person to accept delivery of the shipment, acts of God, natural disasters, war risks, acts of terrorism, acts of public authorities acting with actual or apparent authority, acts or omissions of customs or similar authorities, authority of law, insufficient information provided by a customer, Hazardous Materials packages improperly offered for transport, the application of security regulations imposed by the government, or otherwise applicable to the shipment, riots, strikes or other labor disputes, civil unrest, disruptions in national or local air or ground transportation networks (including, but not limited to, UPS's transportation network), disruption or failure of communication and information systems, and adverse weather conditions.

–International shipments for which the shipper has selected the Receiver or Third Party as the payer of any applicable duties and taxes and delivery is delayed until payment arrangements are made.

–UPS Import Control® shipments for which the shipper has selected commercial invoice removal.

36

~UPS Ground shipments or UPS Standard™ shipments that are picked up or scheduled to be delivered during the fourteen calendar days before December 25.

## 50.   Claims and Legal Actions: Individual Binding Arbitration of Claims

Time Limits and Pleading Requirements for Claims/No Right to Set Off

Claims against UPS must be made within strict time limits, including as set forth in Section 48.1 ("Invoice Adjustment") regarding invoice adjustments or billing disputes; Section 50.3 ("Time Limit For Filing Claims For Loss Or Damage To Property") regarding claims for loss or damage to property; and pursuant to Section 49, UPS's Service Guarantee .

"Claimant" is the person asserting the claim or seeking recourse arising out of or related to the provision of services by UPS.

All claims against UPS arising out of or related to the provision of services by UPS, including, but not limited to, demands for damages, refunds, credits, and any legal or equitable relief whatsoever, shall be extinguished unless the Claimant (1) timely and completely complies with all applicable notice and claims periods set forth in the Terms and in the Service Guide, including as to claims for loss or damage to property under Section 50.3, claims under Section 49, UPS's Service Guarantee, claims for invoice adjustments under Section 48.1, or claims for breach of contract or any other cause of action; and (2) pleads on the face of any complaint filed in court against UPS or states in its submission of its claim in arbitration against UPS, as the case may be, satisfaction and compliance with those notice and claims periods as a contractual condition precedent to recovery.  Claimants may not deduct the amounts of pending claims from any charges owed to UPS, and the shipper waives any and all rights, including any statutory or common law rights, to set off the amount of any claim against charges owed to UPS.

Agreement to Arbitrate Claims

**Claimant and UPS agree that, except for disputes that qualify for state courts of limited jurisdiction (such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits on their jurisdictions over civil disputes), any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration.**

Arbitration is the submission of a dispute to a neutral arbitrator, instead of a judge or jury, for a final and binding decision, known as an "award."  Arbitration provides for more limited discovery than in court, and is subject to limited review by courts.  Each party has an opportunity to present evidence to the arbitrator in writing or through witnesses.  An arbitrator can only award the same damages and relief that a court can award under the law and must honor the terms and conditions in the Terms.

Claimant and UPS agree that their sole relationship is a contractual one governed by the Service Guide and Terms.  Any controversy or claim arising out of or related to the provision of services by UPS shall be resolved solely based on the agreements set forth in the Service Guide and Terms.

Institutional Arbitration

The arbitration shall be conducted by the American Arbitration Association (AAA) in accordance with its Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes (the "Rules"), and judgment on the award may be entered in any court of competent jurisdiction.  The Rules, including instructions for how to initiate arbitration, are available at

37

http://www.adr.org or by calling the AAA at 1-800-778-7879. The arbitrator shall decide all issues of the case on the basis of the applicable law, not equity. If you initiate arbitration, you must serve UPS's registered agent for service of process, Corporation Service Company, which has locations in every state. Information also can be found on the website of your local Secretary of State.

**Any arbitration under this Agreement will take place on an individual basis; class, mass, consolidated or combined actions or arbitrations or proceeding as a private attorney general are not permitted. Claimant and UPS are each waiving the right to trial by jury. Claimants and UPS are further giving up the ability to participate in a class, mass, consolidated or combined action or arbitration.**

Place of Arbitration/Number of Arbitrators/Costs of Arbitration/Governing Law/Survival

Any arbitration will take place in the county where Claimant resides and will be determined by a single arbitrator.

Any filing fee or administrative fee required of Claimant by the AAA Rules shall be paid by Claimant to the extent such fee does not exceed the amount of the fee required to commence a similar action in a court that otherwise would have jurisdiction. For all non frivolous complaints, UPS will pay the amount of such fee in excess of that amount. The arbitrator will allocate the administrative costs and arbitral fees consistent with the applicable rules of the American Arbitration Association. Reasonable attorney's fees and expenses will be allocated or awarded only to the extent such allocation or award is available under applicable law.

All issues are for the arbitrator to decide, except that issues relating to the scope, application, and enforceability of the arbitration provision are for a court to decide. The Federal Arbitration Act governs the interpretation and enforcement of this provision. This agreement to arbitrate shall survive termination of the Terms.

Severability

Notwithstanding anything to the contrary in the AAA Rules, if any part of this arbitration provision is deemed invalid or ineffective for any reason, this shall not affect the validity or enforceability of the remainder of this arbitration provision, and the arbitrator shall have the authority to amend any provisions deemed invalid or ineffective to make the same valid and enforceable.

Desk Arbitration

For all disputes concerning an amount less than fifteen thousand dollars ($15,000.00), the parties shall submit their arguments and evidence to the arbitrator in writing and the arbitrator shall make an award based only on the documents; no hearing will be held unless the arbitrator in his or her discretion, and upon request of a party, decides it is a necessity to require an in-person hearing. For a dispute governed by the AAA Consumer-Related Disputes Supplementary Procedures, and concerning an award between fifteen thousand dollars ($15,000.00) and fifty thousand dollars ($50,000.00), inclusive, UPS shall pay Claimant's filing fee under the AAA Rules, provided that Claimant agrees that both parties shall submit their arguments and evidence to the arbitrator in writing and that the arbitrator shall make an award based only on the documents, without a hearing being held. Notwithstanding this provision, the parties may agree to proceed with desk arbitration at any time.

Access to Small Claims Courts

All parties shall retain the right to seek adjudication in a state court of limited jurisdiction, such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits on

their jurisdiction over civil disputes, for individual disputes within the scope of such court's jurisdiction.

Acknowledgements

Claimant and UPS acknowledge and agree that pursuant to these Terms:

-CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;

-CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A COURT, OTHER THAN A STATE COURT OF LIMITED JURISDICTION AS DEFINED ABOVE, RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;

-CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A COURT REVIEW ANY DECISION OR AWARD OF AN ARBITRATOR, WHETHER INTERIM OR FINAL, EXCEPT FOR APPEALS BASED ON THOSE GROUNDS FOR VACATUR EXPRESSLY SET FORTH IN SECTION 10 OF THE FEDERAL ARBITRATION ACT.

-CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, JOIN AS A CLASS MEMBER, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY CLASS, MASS, CONSOLIDATED OR COMBINED ACTION OR ARBITRATION FILED AGAINST CLAIMANT, UPS AND/OR RELATED THIRD PARTIES.

Award

The arbitrator may award money or equitable relief in favor of only the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. Similarly, an arbitration award and any judgment confirming it apply only to that specific case; it cannot be used in any other case except to enforce the award itself.  To reduce the time and expense of the arbitration, the arbitrator will not provide a statement of reasons for his or her award unless a brief explanation of the reasons is requested by one of the parties.  Unless both Claimant and UPS agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative, private attorney general or class proceeding.

Confidentiality of Arbitration

Notwithstanding anything to the contrary in the AAA Rules, UPS and Claimant agree that the filing of arbitration, the arbitration proceeding, any documents exchanged or produced during the arbitration proceeding, any briefs or other documents prepared for the arbitration, and the arbitral award shall all be kept fully confidential and shall not be disclosed to any other party, except to the extent necessary to enforce this arbitration provision, arbitral award or other rights of the parties, or as required by law or court order.  This confidentiality provision does not foreclose the American Arbitration Association from reporting certain consumer arbitration case information as required by state law.

### 50.1   Filing of Claims for Loss or Damage to Property

All claims for loss of or damage to property transported or accepted for transportation must:  (1) be in writing (or an electronic communication) and must include reference to the Source

39

Document or pickup record number and date of shipment or copies of other documents sufficient to identify the shipment involved, and the declared value; (2) assert the liability of UPS for alleged loss or damage; (3) make claim for payment of a specified or determinable amount of money; and (4) be accompanied by a copy of the original invoice or, if no invoice was issued, other proof, certified to in writing, as to the purchase price paid by the consignee (where the property involved has been sold to the consignee), actual cost or replacement cost of the property, or extent of the damage to the property.

A request for proof of delivery or damage inspection does not constitute the filing of a claim.

No claims will be voluntarily paid unless filed in writing or transmitted electronically by or on behalf of the shipper in accordance with these provisions.

### 50.2   Acknowledgment of Claims for Loss or Damage to Property

After receiving a proper written or electronic transmission of a claim in the manner and form and with the supporting documents described in Section 50.1 ("Filing of Claims for Loss or Damage to Property") and Section 50.4 ("Investigation of Claims for Loss or Damage to Property") herein, UPS or its designee will acknowledge the receipt of such claim in writing or electronically to the claimant within 30 days after the date of receipt, unless such claim has already been paid or denied in writing or electronically. UPS will at the time each claim is received create a separate file and assign thereto a successive claim file number and note that number on all documents filed in support of the claim and all records and correspondence with respect to the claim, including the written acknowledgment of receipt and, if in its possession, the Source Document and delivery receipts, if any, covering the shipment involved. At the time such claim is received, UPS will cause the date of receipt to be recorded on the face of the claim document, and the date of receipt will also appear on the acknowledgment of receipt sent to the claimant.

### 50.3   Time Limit for Filing Claims for Loss or Damage to Property

As a condition precedent to recovery, all claims for loss or damage to property must be filed in writing or electronically with UPS within the following time limits:

--For domestic shipments, claims must be filed within nine months after delivery of the package or, in case of failure to make delivery, within nine months after a reasonable time for delivery has elapsed.

--For international shipments, claims must be filed within sixty days after delivery of the package or pallet or, in the case of non-delivery, within sixty days after a reasonable time for delivery has elapsed.

-Suits shall be instituted within two years after denial of any portion of the claim. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, such claims shall be deemed waived and will not be paid.

### 50.4   Investigation of Claims for Loss or Damage to Property

--**Prompt Investigation**. Each claim for loss or damage to a package or shipment filed in the manner prescribed herein will be promptly and thoroughly investigated, if investigation has not already been made prior to receipt of the claim.

--**Supporting Documents**. Each claim must be supported by the following: (1) evidence of payment of the shipping and any declared value charges; and (2) either the original invoice or a photocopy, exact copy, or extract of, the original invoice, a certification of prices or costs, with trade or other discounts, allowance, or deductions of any nature whatsoever and the terms

thereof, or depreciation reflected thereon.  Where the property involved in a claim has not been invoiced to the consignee shown on the bill of lading or receipt, where an invoice does not show price or cost, where the property involved has not been sold, or where the property has been transferred at bookkeeping values only, UPS will, before paying a claim, require the claimant to establish the value in the quantity shipped, transported, or involved.  UPS reserves the right to request the original shipping record or Source Document.

For an asserted claim of $1000 or more for a package processed through a UPS Shipping System and tendered to a UPS driver, a copy of the signed high-value shipment summary applicable to the shipment obtained by the shipper and signed by the UPS driver at the time of tender may be required to support the claim.  UPS reserves the right to refuse to pay any claim if, having requested such a signed high-value shipment summary, no such summary is provided.

For an asserted claim of $1000 or more for an international UPS Returns® or a UPS Import Control® package or pallet, the signed UPS high-value shipment summary applicable to the shipment must be submitted in support of the claim.

By filing a claim and supporting documents to UPS, the claimant certifies that the claim, amount of claim, and supporting documents are true and correct.

–**Original Packaging Materials**. In the event that a claim is made for damage to a shipment, the original packaging materials must be made available to UPS or its designee for inspection prior to reshipment.

–**Verification of Loss**. When an asserted claim for loss of an entire package or pallet or an entire shipment cannot be otherwise authenticated upon investigation, UPS will obtain from the consignee of the shipment involved a certified statement in writing that the property for which the claim is filed has not been received from UPS or from any other source.  UPS reserves the right to require verification by the filing of a police report and providing a copy of the filed report to UPS in support of the claim.

### 50.5   Salvage

When UPS pays the actual cost, the purchase price, or the replacement cost of the property, all rights, title to, and interest in the property shall thereupon pass to UPS, and UPS reserves the right to obtain the property for salvage.  Payment of a claim in such circumstances shall be contingent on UPS's receipt of the damaged property in the same condition as on the date the damage was incurred.

### 50.6   Disposition of Claims for Loss or Damage to Property

UPS or its designee, after receiving a written claim for property transported, will pay, decline, or make a firm compromise settlement offer in writing to the claimant within 120 days after UPS receives the claim; provided, however, that if the claim cannot be processed and disposed of within 120 days after receipt, UPS or its designee will at that time and at the expiration of each succeeding 60-day period while the claim remains pending, advise the claimant in writing of the status of the claim and the reason for the delay in making final disposition thereof and shall retain a copy of such notice to the claimant in its claim file.

No claim for loss or damage shall be paid unless a valid claim has been filed in accordance with terms set forth herein (in Section 50.1, "Filing of Claims for Loss or Damage to Property," Section 50.3, "Time Limit for Filing Claims for Loss or Damage to Property" and Section 50.4, "Investigation of Claims for Loss or Damage to Property").  UPS reserves the right to refuse to pay any claim for loss or damage to property until all outstanding charges owing to UPS have

been paid in full.  UPS reserves the right to refuse to pay any claim for loss of property if, having requested a detailed description of the property, no such description is provided.

## 51.    Responsibility for Loss or Damage

UPS's liability for loss or damage to each UPS domestic package or international shipment, or to each pallet in a UPS Worldwide Express Freight® shipment, is limited to a value of $100, except as set forth below.  Unless a greater value is recorded in the declared value field of the UPS Source Document or the UPS Automated Shipping System used, the shipper agrees that the released value of each domestic package or international shipment, or pallet is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation, and that UPS shall not be liable for more than $100 for each domestic package or international shipment or pallet.

To increase UPS's limit of liability for loss or damage above $100, the shipper must declare a value in excess of $100 for each package or pallet in the declared value field of the UPS Source Document or the UPS Automated Shipping System used and pay an additional charge.  The shipper cannot declare a value in excess of the maximum allowable limits set forth below.  UPS shall not be liable under any circumstances for an amount in excess of the declared value of a domestic package or international shipment, or pallet.  When a shipper declares a value in excess of $100, it does not receive any form of insurance.  Shippers desiring cargo insurance, all risk insurance, or another form of insurance should purchase such insurance from a third party.

The rules relating to liability established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw, Poland, on October 12, 1929, that convention as amended, or the Convention for the Unification of Certain Rules for International Carriage by Air (Montreal, 28 May 1999), shall apply to the international carriage of any shipment insofar as the same is governed thereby.  There are no stopping places which are agreed upon at the time of tender of the shipment, and UPS reserves the right to route the shipment in any way UPS deems appropriate.

### 51.1   Maximum Declared Values

The maximum declared value is $50,000 per package and $100,000 per pallet, except for the following for which the maximum declared value may not exceed:

–$1000 per package for packages shipped by a Third-Party Retailer if no high-value control log was provided to UPS on tender of the package;

–$1000 per package for a package previously manifested in a UPS Shipping System and tendered to a UPS driver, unless a UPS high-value shipment summary is obtained by the shipper or person tendering the package and signed by the driver upon tender of the package;

–$5000 per package for a package shipped to a UPS Access Point™.

–$500 per package for a package shipped via a UPS Drop Box;

–$1000 per package for a package shipped via a Third-Party Retailer or UPS Access Point™ if such package was previously manifested in a UPS Shipping System, prior to drop off at the Third-Party Retailer or UPS Access Point™ or billed using Bill My Account;

–$500 per package or pallet for international shipments containing jewelry (not including costume jewelry);

–$1000 per package for domestic packages returned via UPS Print Return Label, UPS Print and Mail Return Label, Electronic Return Label, or 1 UPS Pickup Attempt Return Services, (including via UPS Returns® on the Web), and UPS Returns® Flexible Access;

–$1000 per package or pallet for international shipments returned via UPS Print Return Label, UPS Print and Mail Return Label, Electronic Return Label, 1 UPS Pickup Attempt, or 3 UPS Pickup Attempts Return Services (including via UPS Returns on the Web) unless a UPS high-value shipment summary is obtained by the shipper or person tendering the package or pallet and signed by the driver upon tender of the shipment;

–$1000 per package or pallet for international UPS Import Control® shipments unless a UPS high-value shipment summary is obtained by the shipper or person tendering the package or pallet and signed by the driver upon tender of the shipment;

–$999 per package for packages shipped via Shipper Release service;

Shippers cannot declare a value for UPS Prepaid Letters.

Declaring a value in the declared value field of the UPS Source Document or UPS Automated Shipping System used does not increase UPS's limitations of liability for, and shippers may not declare a value for, damages related to providing or failure to provide C.O.D. service, including, but not limited to: failure to collect the C.O.D. amount; failure to collect the specified form of payment; collection of an instrument in the wrong amount; failure or delay in delivering the collected instrument to the shipper; or collection of forged, insufficient funds, or otherwise invalid instruments.

Any declared value in excess of the maximums allowed in the applicable Terms or Service Guide is null and void. Acceptance for carriage of any package or shipment bearing a declared value in excess of the allowed maximums does not constitute a waiver of any provisions of the Terms or Service Guide limiting UPS's liability or responsibility for any such package or shipment.

### 51.2   Liability Limits

UPS's maximum liability for loss or damage to each UPS domestic package or international shipment, or to each pallet in a UPS Worldwide Express Freight® shipment, shall not exceed the lesser of:

–$100, when no value in excess of $100 is declared on the Source Document or UPS Automated Shipping System used (or when a value in excess of $100 is declared, but the applicable declared value charges are not paid);

–the declared value on the Source Document or UPS Automated Shipping System used when a value in excess of $100 is declared and the applicable declared value charges paid;

–the purchase price paid by the consignee (where the shipped property has been sold to the consignee);

–the actual cost of the damaged or lost property;

–the replacement cost of the property at the time and place of loss or damage; or

–the cost of repairing the damaged property.

UPS's liability for shipments containing the following commodities shall be limited as follows:

43

**–Checks.** UPS's liability for a shipment containing a check or checks is limited to the cost of stopping payment on and reissuing the check(s), not to exceed $100 per package or pallet.  In no event shall UPS be liable for the face value of the check(s).

**–Phone Cards, Tickets, Gift Cards, and similar.** UPS's liability for a shipment containing a phone card, ticket (such as event or airline ticket), gift certificate, gift card, coupon, or other similar printed matter with an exchange value is limited to the cost (which shall not include any amount of the value attached to the card, certificate, or coupon, or similar printed matter) of replacing the physical card(s), certificate(s), or printed matter, not to exceed $100 per package or per pallet.  In no event shall UPS be liable for the face value of any phone card, ticket, gift certificate, gift card, coupon, or similar printed matter.

**–Media.** UPS's liability for a shipment containing documents, film, photographs (including negatives), slides, transparencies, videotapes, compact discs, laser discs, computer tapes, and media of similar nature is limited to the replacement cost of the media on which the content is recorded.

**–Pairs, Parts.** In the event of loss of or damage to a pair or set of articles, UPS's liability is limited to the value of that part of the pair or set which is lost or damaged, and UPS shall not be liable for the value of the whole pair or set.  In the event of loss of or damage to any part of property (including any part of a machine) which, when complete for sale or use, consists of several parts, UPS shall be liable only for the value of the part lost or damaged, not to exceed the declared value of the part lost or damaged.  In no event shall UPS be liable for the value of the complete item.

In the event of partial loss or damage to a pallet in UPS Worldwide Express Freight® service, UPS shall be liable only for the value of the contents of the pallet lost or damaged, and not the value of the full pallet.

### 51.3  Exclusions from Liability

UPS shall not be liable or responsible for:

–loss or damage to articles of unusual value (as defined in these Terms);

–loss or damage to Prepaid Letters;

–loss or damage resulting from insects, moths, vermin, inherent vice, deterioration, dampness of atmosphere, extreme of temperature, ordinary wear and tear, or that which occurred or arose prior to or after the course of transportation by UPS;

–loss or damage resulting from improper, inadequate or unsafe packaging or wrapping that fails to meet UPS's published standards related thereto set forth in the Terms or at ups.com;

–loss or damage to Perishable Commodities to the extent the loss or damage results from exposure to heat or cold or the perishable nature of the item;

–loss or damage to human remains, fetal remains, human body parts, or components thereof;

–loss or damage to fluorescent tubes or bulbs;

–loss of, damage to, or irretrievability of data stored on any type of media, or of information including without limitation personal, health or financial information;

–loss or damage due to acts of God, natural disasters, war risks, acts of terrorism, nuclear damage, acts of public authorities acting with actual or apparent authority, acts or omissions of

customs or similar authorities, authority of law, the application of security regulations imposed by the government or otherwise applicable to the shipment, riots, strikes or other labor disputes, civil unrest, disruptions in national or local air or ground transportation networks (including, but not limited to, UPS's transportation network), disruption or failure of communication and information systems, or adverse weather conditions;

–loss or damage to any package or shipment for which UPS has no scan or other record reflecting that the package or shipment was tendered to UPS by the shipper; or

–loss or damage to any shipment containing articles that shippers are prohibited from shipping, that UPS does not or is not authorized to accept for transportation, that UPS states that it will not accept, or that UPS has a right to refuse.

UPS shall not be liable for any loss or damage arising from providing service to, or on behalf of, a person or entity that obtains such services, including the delivery of property, by trick, false pretense, or other fraudulent scheme.

UPS shall not be liable for any damages arising from UPS's inability, failure, or refusal to comply with a request to stop, return, or re-route shipment of a package after tender to UPS.

UPS shall not be liable for any interruption of service due to causes beyond UPS's control including, but not limited to: the unavailability or refusal of a person to accept delivery of the shipment, acts of God, natural disasters, war risks, acts of terrorism, acts of public authorities acting with actual or apparent authority, acts or omissions of customs or similar authorities, authority of law, insufficient information provided by a customer, Hazardous Materials packages improperly offered for transport, the application of security regulations imposed by the government or otherwise applicable to the shipment, riots, a government agency hold, strikes or other labor disputes, civil unrest, disruptions of any kind in national or local air or ground transportation networks (including, but not limited to, UPS's transportation network), disruption or failure of communication and information systems, and adverse weather conditions.

UNDER NO CIRCUMSTANCES SHALL UPS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM LOSS, MISDELIVERY OF, OR DAMAGE TO PROPERTY, DELAYED DELIVERY, OR FAILURE TO ATTEMPT DELIVERY IN ACCORDANCE WITH THE UPS SERVICE GUARANTEE, WHETHER OR NOT UPS HAD KNOWLEDGE SUCH DAMAGES MIGHT BE INCURRED. UNDER NO CIRCUMSTANCES SHALL UPS BE LIABLE FOR ANY DAMAGES WHATSOEVER FOR DELAYED DELIVERY, EXCEPT AS SPECIFICALLY PROVIDED FOR SHIPMENTS MADE UNDER THE UPS SERVICE GUARANTEE.

Acceptance for carriage of any shipment containing articles that shippers are prohibited from shipping, that UPS does not or is not authorized to accept for transportation, that UPS states it will not accept, or that UPS has a right to refuse, does not constitute a waiver of any provisions of the Terms or Service Guide limiting UPS's liability or responsibility for any such package or shipment.

## 52.   Shipper Indemnification

The shipper agrees to indemnify, defend, and hold harmless UPS, its parent corporation, and affiliated companies, their officers, directors, employees, agents, and their successors and assigns, from all claims, demands, expenses, liabilities, causes of action, enforcement procedures, and suits of any kind or nature brought by a governmental agency, or any other person or entity, arising from or relating to the shipper's noncompliance with governmental laws or regulations applicable to the shipment or UPS requirements applicable to the shipment, from

45

shipper's tendering any prohibited item for shipment, or from shipper's failure to comply with the Terms.

## 53.  Data Protection

The shipper agrees that UPS and other companies in the UPS group of companies worldwide, including companies in countries that may not have the same level of data protection as the country where the shipment is tendered for service, may use any data provided by the shipper to UPS for the purposes set forth in and subject to the UPS Privacy Notice published on UPS's website at http://www.ups.com/content/us/en/resources/ship/terms/privacy.html, which is incorporated here by this reference. The shipper has certain rights under the law (exercisable by contacting UPS) to have access to, rectify, object to the use for direct marketing of, or delete personal data held by UPS about it.

## 54.   Incorporation of Terms; Waiver; Future Changes

All shipments are subject to the terms and conditions contained in the Terms.

UPS may engage subcontractors to perform transportation and incidental services.  UPS contracts on its own behalf and on behalf of its servants, agents, and subcontractors, each of whom shall have the benefit of these Terms.  No such party has authority to waive or vary these Terms.

The effective Service Guide, and any modifications or amendments of them, are hereby incorporated by reference in these Terms. In the event of a conflict or inconsistency between the Terms and the effective Service Guide, the Terms shall control. The Terms and the UPS Source Document for each shipment together comprise the complete and exclusive agreement of the parties, except as modified by any existing or future written agreement between the parties, and may not be contradicted or modified by any oral agreement.

UPS reserves the right to unilaterally modify or amend any portion of the Service Guide or the Terms at any time without prior notice.

Any failure to enforce or apply a term or provision of the Service Guide or the Terms shall not constitute a waiver of that term or provision by UPS, and shall not diminish or impair UPS's right to enforce such term or provision in the future.  If one or more provisions of the Terms shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not be so affected or impaired.

46

# EXHIBIT B

# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: Louisiana, Mississippi, Texas**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JaikutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Oklahoma, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Directors

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, HI, ID, MT, NM, NV, OR, UT, WA**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Harry Hernandez
Director
Phone: 972.702.8222
Email: HernandezH@adr.org
**Administers cases in: AR, CO, IA, IL, KS, LA, MN, MO, MS, ND, NE, OK, SD, TX, WI, WY**

Yvonne Baglini
Director
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice ................................................................7
Introduction ...................................................................7
Standard Arbitration Clause .....................................................8
Administrative Fees.............................................................8
Mediation .....................................................................8
Large, Complex Cases ..........................................................9

Commercial Arbitration Rules ...................................................10
   R-1. Agreement of Parties........................................................10
   R-2. AAA and Delegation of Duties..............................................11
   R-3. National Roster of Arbitrators...............................................11
   R-4. Filing Requirements........................................................11
   R-5. Answers and Counterclaims ................................................12
   R-6. Changes of Claim ........................................................13
   R-7. Jurisdiction..............................................................13
   R-8. Interpretation and Application of Rules.......................................14
   R-9. Mediation..............................................................14
   R-10. Administrative Conference .................................................14
   R-11. Fixing of Locale ........................................................14
   R-12. Appointment from National Roster ..........................................15
   R-13. Direct Appointment by a Party..............................................16
   R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties.........16
   R-15. Nationality of Arbitrator ..................................................17
   R-16. Number of Arbitrators.....................................................17
   R-17. Disclosure.............................................................17
   R-18. Disqualification of Arbitrator ..............................................18
   R-19. Communication with Arbitrator .............................................18
   R-20. Vacancies ............................................................19
   R-21. Preliminary Hearing......................................................19
   R-22. Pre-Hearing Exchange and Production of Information ..........................19
   R-23. Enforcement Powers of the Arbitrator........................................20
   R-24. Date, Time, and Place of Hearing ...........................................20
   R-25. Attendance at Hearings ...................................................21
   R-26. Representation..........................................................21
   R-27. Oaths ................................................................21

R-28. Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-29. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-30. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-31. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . 22

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-37. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-38. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-39. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-40. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-41. Waiver of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-42. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-43. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-44. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-45. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-46. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-47. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-48. Award Upon Settlement—Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-49. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-50. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-51. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 29

R-52. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . 29

R-53. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-54. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

R-55. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-56. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-57. Remedies for Nonpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

R-58. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   P-1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
   E-1. Limitation on Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
   E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
   E-3. Serving of Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
   E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . 34
   E-5. Exchange of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
   E-6. Proceedings on Documents and Procedures for the Resolution of Disputes
   Through Document Submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
   E-7. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
   E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
   E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
   E-10. Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Procedures for Large, Complex Commercial Disputes . . . . . . . . . . . . . . . . . . . 37
   L-1. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
   L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
   L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Administrative Fee Schedules (Standard and Flexible Fees) . . . . . . . . . . . . . . . 38

Commercial Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
   M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
   M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
   M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
   M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
   M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . 40
   M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
   M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . 41
   M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
   M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
   M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
   M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-12. Termination of Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-13. Exclusion of Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-15. Deposits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

M-17. Cost of the Mediation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at **www.adr.org.**

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $75,000, the rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in

reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs. The key features of these procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

## Commercial Arbitration Rules

### R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.

Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000 or more, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-3 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures, the Procedures for Large, Complex Commercial Disputes, or the Procedures for the Resolution of Disputes through Document Submission (Rule E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Sections R-1 through R-58 of these rules.

* *A dispute arising out of an employer promulgated plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures.*

R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

R-4. Filing Requirements

**(a)** Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.

**(b)** Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

   **i.** The filing party shall include a copy of the court order.

   **ii.** The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

   **iii.** The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to R-32.

**(c)** It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination.

**(d)** Parties to any existing dispute who have not previously agreed to use these rules may commence an arbitration under these rules by filing a written submission agreement and the administrative filing fee. To the extent that the parties' submission agreement contains any variances from these rules, such variances should be clearly stated in the Submission Agreement.

**(e)** Information to be included with any arbitration filing includes:

    **i.** the name of each party;

    **ii.** the address for each party, including telephone and fax numbers and e-mail addresses;

    **iii.** if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party;

    **iv.** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

    **v.** the locale requested if the arbitration agreement does not specify one.

**(f)** The initiating party may file or submit a dispute to the AAA in the following manner:

    **i.** through AAA WebFile, located at **www.adr.org;** or

    **ii.** by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing.

**(g)** The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

**(h)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

**(i)** If the filing does not satisfy the filing requirements set forth above, the AAA shall acknowledge to all named parties receipt of the incomplete filing and inform the parties of the filing deficiencies. If the deficiencies are not cured by the date specified by the AAA, the filing may be returned to the initiating party.

## R-5. Answers and Counterclaims

**(a)** A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

R-8. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

R-9. Mediation

In all cases where a claim or counterclaim exceeds $75,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally opt out of this rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

R-10. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

R-11. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

(a) When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of

arbitration, subject to the power of the arbitrator after appointment, to make a final determination on the locale.

**(b)** When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator upon appointment that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

**(c)** If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

R-12. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

**(a)** The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**(b)** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

R-13. Direct Appointment by a Party

**(a)** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**(b)** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-18 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-18(b) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

**(c)** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**(d)** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 14 calendar days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

**(a)** If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

**(b)** If no period of time is specified for appointment of the chairperson, and the party-appointed arbitrators or the parties do not make the appointment within 14 calendar days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**(c)** If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

R-15. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

R-16. Number of Arbitrators

**(a)** If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

**(b)** Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the R-6 required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make that determination.

R-17. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-41.

**(b)** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**(c)** Disclosure of information pursuant to this Section R-17 is not an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

R-18. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

    **i.** partiality or lack of independence,

    **ii.** inability or refusal to perform his or her duties with diligence and in good faith, and

    **iii.** any grounds for disqualification provided by applicable law.

**(b)** The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be non-neutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

R-19. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate ex *parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex *parte* with a candidate for direct appointment pursuant to R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Section R-19(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-18(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-18(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-19(a) should nonetheless apply prospectively.

**(c)** In the course of administering an arbitration, the AAA may initiate communications with each party or anyone acting on behalf of the parties either jointly or individually.

**(d)** As set forth in R-43, unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

R-20. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

R-21. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Sections P-1 and P-2 of these rules address the issues to be considered at the preliminary hearing.

R-22. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

    **i.** require the parties to exchange documents in their possession or custody on which they intend to rely;

    **ii.** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

    **iii.** require the parties, in response to reasonable document requests, to make available to the other party documents, in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

iv.   require the parties, when documents to be exchanged or produced are
maintained in electronic form, to make such documents available in the form
most convenient and economical for the party in possession of such
documents, unless the arbitrator determines that there is good cause for
requiring the documents to be produced in a different form. The parties
should attempt to agree in advance upon, and the arbitrator may determine,
reasonable search parameters to balance the need for production of
electronically stored documents relevant and material to the outcome of
disputed issues against the cost of locating and producing them.

## R-23. Enforcement Powers of the Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce
the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and
economical resolution of the case, including, without limitation:

**(a)** conditioning any exchange or production of confidential documents and
information, and the admission of confidential evidence at the hearing, on
appropriate orders to preserve such confidentiality;

**(b)** imposing reasonable search parameters for electronic and other documents if the
parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically stored
documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator,
drawing adverse inferences, excluding evidence and other submissions, and/or
making special allocations of costs or an interim award of costs arising from such
non-compliance; and

**(e)** issuing any other enforcement orders which the arbitrator is empowered to issue
under applicable law.

## R-24. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties
shall respond to requests for hearing dates in a timely manner, be cooperative in
scheduling the earliest practicable date, and adhere to the established hearing
schedule. The AAA shall send a notice of hearing to the parties at least 10 calendar
days in advance of the hearing date, unless otherwise agreed by the parties.

R-25. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

R-26. Representation

Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, unless such choice is prohibited by applicable law. A party intending to be so represented shall notify the other party and the AAA of the name, telephone number and address, and email address if available, of the representative at least seven calendar days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

R-27. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

R-28. Stenographic Record

(a) Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three calendar days in advance of the hearing. The requesting party or parties shall pay the cost of the record.

(b) No other means of recording the proceedings will be permitted absent the agreement of the parties or per the direction of the arbitrator.

(c) If the transcript or any other recording is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

(d) The arbitrator may resolve any disputes with regard to apportionment of the costs of the stenographic record or other recording.

R-29. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

R-30. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

R-31. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

R-32. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation. Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.

(d) The parties may agree to waive oral hearings in any case and may also agree to utilize the Procedures for Resolution of Disputes Through Document Submission, found in Rule E-6.

R 33. Dispositive Motions

The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.

R-34. Evidence

**(a)** The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

**(c)** The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or Other Evidence

**(a)** At a date agreed upon by the parties or ordered by the arbitrator, the parties shall give written notice for any witness or expert witness who has provided a written witness statement to appear in person at the arbitration hearing for examination. If such notice is given, and the witness fails to appear, the arbitrator may disregard the written witness statement and/or expert report of the witness or make such other order as the arbitrator may consider to be just and reasonable.

**(b)** If a witness whose testimony is represented by a party to be essential is unable or unwilling to testify at the hearing, either in person or through electronic or other means, either party may request that the arbitrator order the witness to appear in person for examination before the arbitrator at a time and location where the witness is willing and able to appear voluntarily or can legally be compelled to do so. Any such order may be conditioned upon payment by the requesting party of all reasonable costs associated with such examination.

**(c)** If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

R-36. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

R-37. Interim Measures

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

R-38. Emergency Measures of Protection

(a) Unless the parties agree otherwise, the provisions of this rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013.

(b) A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or e-mail or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

(c) Within one business day of receipt of notice as provided in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

**(d)** The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38.

**(e)** If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

**(f)** Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

**(g)** Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

**(h)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this rule and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

**(i)** The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

## R-39. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-35, or if briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If no documents, responses, or briefs are to be filed, the arbitrator shall declare the hearings closed as of the date of the last hearing (including telephonic hearings). If the case was heard without any oral hearings, the arbitrator shall close the hearings upon the due date established for receipt of the final submission.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.

R-40. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties , the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award (14 calendar days if the case is governed by the Expedited Procedures).

R-41. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

R-42. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

R-43. Serving of Notice and Communications

**(a)** Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), or electronic (e-mail) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by e-mail or other methods of communication.

**(c)** Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**(d)** Unless otherwise instructed by the AAA or by the arbitrator, all written communications made by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**(e)** Failure to provide the other party with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained therein.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or their representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

## R-44. Majority Decision

**(a)** When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement or section (b) of this rule, a majority of the arbitrators must make all decisions.

**(b)** Where there is a panel of three arbitrators, absent an objection of a party or another member of the panel, the chairperson of the panel is authorized to resolve any disputes related to the exchange of information or procedural matters without the need to consult the full panel.

## R-45. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

## R-46. Form of Award

**(a)** Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the form and manner required by law.

**(b)** The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

R 47. Scope of Award

**(a)** The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

**(c)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

**(d)** The award of the arbitrator(s) may include:

    **i.**  interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

    **ii.**  an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

R-48. Award Upon Settlement—Consent Award

**(a)** If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

**(b)** The consent award shall not be released to the parties until all administrative fees and all arbitrator compensation have been paid in full.

R-49. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-50. Modification of Award

Within 20 calendar days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other

parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

### R-51. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party to the arbitration, furnish to the party, at its expense, copies or certified copies of any papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

### R-52. Applications to Court and Exclusion of Liability

**(a)** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

### R-53. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

### R-54. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and

the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

## R-55. Neutral Arbitrator's Compensation

**(a)** Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

**(b)** If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

**(c)** Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

## R-56. Deposits

**(a)** The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

**(b)** Other than in cases where the arbitrator serves for a flat fee, deposit amounts requested will be based on estimates provided by the arbitrator. The arbitrator will determine the estimated amount of deposits using the information provided by the parties with respect to the complexity of each case.

**(c)** Upon the request of any party, the AAA shall request from the arbitrator an itemization or explanation for the arbitrator's request for deposits.

## R-57. Remedies for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment.

**(a)** Upon receipt of information from the AAA that payment for administrative charges or deposits for arbitrator compensation have not been paid in full, to the extent the law allows, a party may request that the arbitrator take specific measures relating to a party's non-payment.

**(b)** Such measures may include, but are not limited to, limiting a party's ability to assert or pursue their claim. In no event, however, shall a party be precluded from defending a claim or counterclaim.

**(c)** The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any ruling regarding the same.

**(d)** In the event that the arbitrator grants any request for relief which limits any party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments to submit such evidence as the arbitrator may require for the making of an award.

**(e)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(f)** If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full deposits requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.

R-58. Sanctions

**(a)** The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

**(b)** The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

# Preliminary Hearing Procedures

## P-1. General

**(a)** In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

**(b)** Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

## P-2. Checklist

**(a)** The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

    **(i)** the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to R-9;

    **(ii)** whether all necessary or appropriate parties are included in the arbitration;

    **(iii)** whether a party will seek a more detailed statement of claims, counterclaims or defenses;

    **(iv)** whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

    **(v)** which

        **(a)** arbitration rules;

        **(b)** procedural law; and

        **(c)** substantive law govern the arbitration;

    **(vi)** whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation,

        **(a)** any preconditions that must be satisfied before proceeding with the arbitration;

        **(b)** whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

        **(c)** consolidation of the claims or counterclaims with another arbitration; or

        **(d)** bifurcation of the proceeding.

(vii)   whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

(viii)  whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

(ix)    how costs of any searches for requested information or documents that would result in substantial costs should be borne;

(x)     whether any measures are required to protect confidential information;

(xi)    whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

(xii)   whether, according to a schedule set by the arbitrator, the parties will

    (a) identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

    (b) exchange and pre-mark documents that each party intends to submit; and

    (c) exchange pre-hearing submissions, including exhibits;

(xiii)  the date, time and place of the arbitration hearing;

(xiv)   whether, at the arbitration hearing,

    (a) testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means;

    (b) there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

(xv)    whether any procedure needs to be established for the issuance of subpoenas;

(xvi)   the identification of any ongoing, related litigation or arbitration;

(xvii)  whether post-hearing submissions will be filed;

(xviii) the form of the arbitration award; and

(xix)   any other matter the arbitrator considers appropriate or a party wishes to raise.

(b) The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

## Expedited Procedures

### E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the Demand for Arbitration or counterclaim as provided in Section R-5.

### E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

### E-3. Serving of Notices

In addition to notice provided by Section R-43, the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

### E-4. Appointment and Qualifications of Arbitrator

**(a)** The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

**(b)** The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

**(c)** The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-18. The parties shall notify the AAA within seven calendar days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission

Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. Where cases are resolved by submission of documents, the following procedures may be utilized at the agreement of the parties or the discretion of the arbitrator:

**(a)** Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator may convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

**(b)** The arbitrator has the discretion to remove the case from the documents-only process if the arbitrator determines that an in-person hearing is necessary.

**(c)** If the parties agree to in-person hearings after a previous agreement to proceed under this rule, the arbitrator shall conduct such hearings. If a party seeks to have in-person hearings after agreeing to this rule, but there is not agreement among the parties to proceed with in-person hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

**(d)** The arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence.

**(e)** Unless the parties have agreed to a form of award other than that set forth in rule R-46, when the parties have agreed to resolve their dispute by this rule, the arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(f)** If the parties agree to a form of award other than that described in rule R-46, the arbitrator shall have 30 calendar days from the date the hearing is declared closed in which to render the award.

**(g)** The award is subject to all other provisions of the Regular Track of these rules which pertain to awards.

E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 calendar days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

E-8. The Hearing

**(a)** Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two business days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

**(b)** Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-28.

E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 calendar days from the date of the closing of the hearing or, if oral hearings have been waived, from the due date established for the receipt of the parties' final statements and proofs.

E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

## Procedures for Large, Complex Commercial Disputes

### L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 calendar days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

**(a)** to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

**(b)** to discuss the views of the parties about the technical and other qualifications of the arbitrators;

**(c)** to obtain conflicts statements from the parties; and

**(d)** to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

### L-2. Arbitrators

**(a)** Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

**(b)** In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, irrespective of the size of the claim involved in the dispute.

**(c)** The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

L 3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with sections P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator(s) determines otherwise.

**(d)** The parties and the arbitrator(s) shall address issues pertaining to the pre-hearing exchange and production of information in accordance with rule R-22 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within the Scheduling and Procedure Order.

**(e)** The arbitrator, or any single member of the arbitration tribunal, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within his discretion, including, without limitation, the issuance of orders set forth in rules R-22 and R-23 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

## Administrative Fee Schedules (Standard and Flexible Fees)

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* **www.adr.org/feeschedule.**

## Commercial Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via WebFile at **www.adr.org.**

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

- **(i)** A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.
- **(ii)** The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.
- **(iii)** A brief statement of the nature of the dispute and the relief requested.
- **(iv)** Any specific qualifications the mediator should possess.

### M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

M-4. Appointment of the Mediator

If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

(i) Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

(ii) If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

(iii) If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

## M-7. Duties and Responsibilities of the Mediator

**(i)** The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

**(ii)** The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

**(iii)** The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

**(iv)** The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

**(v)** In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

**(vi)** The mediator is not a legal representative of any party and has no fiduciary duty to any party.

M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

(i) Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

(ii) Admissions made by a party or other participant in the course of the mediation proceedings;

(iii) Proposals made or views expressed by the mediator; or

(iv) The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

M-12. Termination of Mediation

The mediation shall be terminated:

    **(i)** By the execution of a settlement agreement by the parties; or

    **(ii)** By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

    **(iii)** By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

    **(iv)** When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

M-17. Cost of the Mediation

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* **www.adr.org/feeschedule.**

© 2015 American Arbitration Association, Inc. All rights reserved. These rules are the copyrighted property of the
American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.
Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.
Please contact 800.778.7879 or websitemail@adr.org for additional information.

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: Louisiana, Mississippi, Texas**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Oklahoma, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Directors

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, HI, ID, MT, NM, NV, OR, UT, WA**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Harry Hernandez
Director
Phone: 972.702.8222
Email: HernandezH@adr.org
**Administers cases in: AR, CO, IA, IL, KS, LA, MN, MO, MS, ND, NE, OK, SD, TX, WI, WY**

Yvonne Baglini
Director
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

 AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT C

**James Rose**

| | |
|---|---|
| **From:** | Richard Collier <RCollier@cwclaw.com> |
| **Sent:** | Friday, April 10, 2015 8:23 AM |
| **To:** | jamesroselaw@sbcglobal.net; BJO@diepenbrockcotter.com |
| **Cc:** | AAA Terri Martinez |
| **Subject:** | Case No. 01-14-0001-1154 |

With apologies for the late notice, I need to postpone the hearing set for 10:30 this morning.  There are two reasons.  First, I have been recovering from surgery on my spine, and while the recovery is going well, I am on a high antibiotic regime that every now and again gets out of whack.  That happened late yesterday.  I won't get into details, but I cannot get into my office today (I have read everything, but I don't have it here) and I am not sure I have the stamina for a hearing on such an important motion.

Second, I have an additional disclosure to make, and I want to give the attorneys and the AAA time to consider it.  After my appointment, and after the initial briefing, I learned that Mr. Rose had been associated in as counsel in a disputed estate proceeding pending in Marin County in which I and my firm represent a party.  We represent the surviving spouse, Linda McKenzie George, of the decedent, Frank George.  Mr. Rose is now co-counsel for Mr. George's three adult children from a prior marriage. While the parties are attempting to work cooperatively, it is difficult at this time to predict how things will develop.  While I am confident in my ability to keep the matters separate, I think whether I continue to serve as the arbitrator needs your consideration.

Let me suggest that counsel inform Ms. Martinez by 5:00 p.m. Tuesday April 14th whether there is an objection to my continuing.  If there is, the AAA will address it.  If there isn't, I will contact counsel through Ms. Martinez to reschedule the hearing.

Thank you.

# EXHIBIT D

**Gleffe, Jolene**

| | |
|---|---|
| **From:** | Richard Collier <RCollier@cwclaw.com> |
| **Sent:** | Monday, August 31, 2015 12:50 PM |
| **To:** | Rose, James R. |
| **Subject:** | Estate of George |

I write to you in great consternation. Linda called me yesterday evening to report that she had been called by a friend in Marin, someone who knows Victoria, who said that Victoria has been going around telling people two stories that are false. First, Victoria was repeating the allegation in your mediation statement that Frank signed the life insurance beneficiary designation forms when he was in hospital and highly medicated. I hope Martin Quinn explained to the people in your room, as we had asked him to do, that Frank's office calendar shows that he was working on March 12th, attending an IME in Palo Alto and going to an appointment with his optician in San Francisco. He was functioning at quite a high level. Second, Victoria was making the accusation that Linda signed the deeds for Toyon Drive using the Power of Attorney knowing that that was inappropriate. Again, I hope Martin explained, as we demonstrated to him, that Linda did what she did on the instruction of her attorney, the one who prepared all the deeds and the power of attorney itself! The accusation is simply groundless.

We did not include a non-disparagement clause or a confidentiality provision in the Settlement Agreement because we thought all the parties were adult and discrete enough not to make baseless accusations in public or otherwise share family and mediation confidences . It seems we were wrong, and those provisions will be included in the long-form agreement. In the meantime, I would appreciate your advising your clients to comport themselves as if those two provisions were already in effect.

Linda agreed to a generous allocation of estate assets in order to avoid a battle in court which would have embroiled her family and Frank's friends. Linda is also extremely mindful of Frank's words to her about his decision not to put his daughters through a court battle when they went with their mother to Arizona. Linda even showed great kindness in agreeing to share Frank's ashes to which she is without question entitled. Linda was willing to concede on money, but she and we will not tolerate the continued defamation of her character now that the clear facts are on the table. Again, I would appreciate your sending this email to your clients and cautioning them appropriately.

Thank you.

Richard J. Collier
Cooper, White & Cooper LLP
Direct Dial: 415-765-6220

# EXHIBIT E



AMERICAN
ARBITRATION
ASSOCIATION

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION

Western Case Management Center
Jeffrey Garcia
Vice President
45 E River Park Place West, Suite 308
Fresno, CA 93720
Telephone: (877) 528-0880
Fax: (855) 433-3046

August 31, 2015

James R. Rose, Esq.
BuchalterNemer
1500 Railroad Avenue
St. Helena, CA 94574
Via Fax to: (707)963-0771

Brian J. O'Connor, Esq.
Diepenbrock & Cotter, LLP
1545 River Park Dr.
Suite 201
Sacramento , CA 95815
Via Email to: BJO@diepenbrockcotter.com

Case Number: 01-14-0001-1154

Bryant Family Vineyard
-vs-
United Parcel Service (UPS)

Dear Parties:

By direction of the arbitrator we herewith transmit to you the duly executed Award in the above matter. This
serves as a reminder that there is to be no direct communication with the arbitrator. All communication shall be
directed to the AAA.

At this time we have verified with the arbitrators that they have submitted all requests for compensation and
expenses in this matter. Accordingly, we have conducted a final reconciliation of the. If a party had any unused
compensation deposits, we have issued a refund check that should arrive in the mail shortly.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding.
Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and
will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances
the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and
payable to the AAA even after the final award is issued, and regardless of the arbitrator's apportionment of
these costs between the parties in the award.

Please note, in the normal course of our administration, the AAA may maintain certain documents in our
electronic records system. Such electronic records are not routinely destroyed and do not constitute a complete
case file.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

/s/
Virginia J Amaro
Manager of ADR Services
Direct Dial: (559) 490-1872
Email: VirginiaAmaro@adr.org
Fax: (855) 433-3046

cc:
Jody Gleffe
Katharine Falace
Robert Hoyland, Esq.

Arbitrator, Richard J. Collier, Esq.

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

---

**01-14-0001-1154**

**In the Matter of the Arbitration between**

**Bryant Family Vineyard,**
**Claimant**

**and**

**United Parcel Service,**
**Respondent.**

---

## AWARD

Having been designated in accordance with the arbitration agreement between the parties, the Arbitrator, Richard J. Collier, now finds and awards as follows:

A hearing was held before the Arbitrator on July 21, 2015. Claimant was represented by James Rose, Esq.; Respondent was represented by Robert Hoyland, Esq. and by Brian J. O'Connor, Esq. Having heard the testimony of witnesses called by Claimant and Respondent and reviewed the extensive Exhibits admitted into evidence, including deposition transcripts, I now make the following Final Award.

### Summary of Claims and Responses

On November 4, 2013, Respondent UPS picked up from Claimant Bryant Family Vineyard a large, pre-scheduled shipment of wine. At issue in this proceeding are 51 boxes of wine, out of more than 600, which never reached their shipping destinations. Claimant asserts that the 51 boxes were lost by or stolen from UPS during shipment. Respondent asserts that the 51 boxes were not included in the shipment.

In the course of this proceeding, Claimant asserted several claims under California law based on its allegations concerning the incident: breach of contract

and negligence for UPS' failure to scan the boxes when they were picked up from the winery, and conversion of the wine.  In response, Respondent averred that all the claims were preempted by federal law (and therefore should be dismissed) and that the damages sought by Claimant are limited by the UPS Tariff applicable to this shipment.

### Discussion

### 1.    The Claims Are Not Preempted

For purposes of this proceeding, I find that the claims asserted are not preempted by federal law.  The missing boxes were primarily for shipment within California, and the Carmack Amendment to the Interstate Commerce Act does not apply to intrastate shipments.  Moreover, the Federal Aviation Administrative Act of 1994 does not apply because, notwithstanding the broad scope of the Act, the claims in this proceeding do not relate to Respondent's "price, route or service."

### 2.    The Claims Are Subject to the UPS Tariff

For purposes of this proceeding, I find that Bryant Family Vineyard's claims, if proved, are subject to the UPS Tariff (Respondent's Exhibit A).  If federal law applies, the cases cited by Respondent in its Trial Brief at Section III (page 7) control to make the Tariff enforceable.  If California law controls, Civil Code section 2174 makes the Tariff enforceable as a "special  contract".

Claimant argues that Respondent's conversion of the missing wine makes the Tariff unenforceable.  I find that Claimant has failed to carry its burden of proof in establishing that UPS converted the wine.  Neither side in fact came close to showing, much less proving, what happened to the 51 boxes.  The Shipper Manifest Records (Respondent's Exhibit C) appear to indicate that 51 boxes were "scrubbed" from the shipment, but that raises as many questions about where the boxes ended up as the testimony and documents left me with.  The evidence certainly does not support that there was willful or intentional misconduct on the part of UPS with respect to the missing boxes of wine.

### 3.    Claimant Has Failed to Prove its Claims for Breach of Contract and Negligence

Joe Welch, the Facilities Manager for Bryant Family Vineyard, testified that UPS had picked up shipments in March and April of 2013 from Claimant, that on those occasions UPS had not scanned the boxes to be shipped (unlike FedEx which

Claimant had had handle its shipments before switching to UPS), and that he had not expected UPS to scan the November shipment.

If this testimony does not estop Claimant from asserting claims based on UPS' alleged failure to scan the boxes to be shipped, it certainly undercuts a claim that that failure breached a contract with Claimant or a duty to Claimant.

### Conclusion

I find that Claimant has failed to prove its claims and therefore award $0 to Claimant.

The Administrative fees of the AAA totaling $2,600.00 are to be borne equally. The Compensation of Arbitrator totaling $12,820.50 is to be borne equally. Therefore, United Parcel Service shall pay to Bryant Family Vineyard an amount of $1,300.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Bryant Family Vineyard.

This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are denied.


Dated: August 28, 2015               Richard J. Collier, Arbitrator
                                      Richard J. Collier, Arbitrator